# EXHIBIT A

# (Exhibits A-1 & A-2)

# EXHIBIT A-1

Rev. 641        FIELD OPERATIONS HANDBOOK – 6/30/2000

## CHAPTER 30

### RECORDS, MINIMUM WAGE, AND PAYMENT OF WAGES

### TABLE OF CONTENTS

**30a**   **RECORDS**

| | |
|---|---|
| 30a00 | Statutory basis. |
| 30a01 | Microfilms and data processing tapes. |
| 30a02 | Recording working time. |
| 30a03 | "Long-punching" of hours. |
| 30a04 | "Boosted hours". |
| 30a05 | Items available by extension, recomputation or transcription. |
| 30a06 | Posting requirements. |
| 30a07 | Photographically reproduced posters. |
| 30a08 | Modification of FLSA poster. |
| 30a09 | Joint employers of an employee. |

**30b**   **MINIMUM WAGE**

| | |
|---|---|
| 30b00 | FLSA MW. |
| 30b01 | Monthly salary equivalents. |
| 30b02 | Minimum rate of pay for non-OT weeks. |
| 30b03 | Regular rate of pay for OT weeks. |
| 30b04 | Time of payment. |
| 30b05 | Employee compensated on a commission basis. |
| 30b06 | Payment of MW to seamen on American vessels. |
| 30b07 | Crediting a bonus or other payments to a MW deficiency. |
| 30b08 | Certain subsistence allowances not to be considered wages. |
| 30b09 | Reserved. |
| 30b10 | State or Territorial MW higher than Federal MW. |
| 30b11 | PCA MW. |
| 30b12 | Annual salary earned in shorter period – MW. |
| 30b13 | MW rate applicable to public agency employees. |
| 30b14 | Minimum rates due domestic service employees. |
| 30b15 | MW under Sec 7(k) –work period. |

**30c**   **PAYMENT OF WAGES**

| | |
|---|---|
| 30c00 | Method of payment. |
| 30c01 | "Facilities" furnished under Sec 3(m). |
| 30c02 | Customarily furnished. |
| 30c03 | Primarily for the benefit of employee. |

Rev. 641                FIELD OPERATIONS HANDBOOK – 6/30/2000

CHAPTER 30

TABLE OF CONTENTS – PAGE 2

| | | |
|---|---|---|
| | 30c04 | Primarily for the benefit of the employer. |
| | 30c05 | Reasonable cost of facilities. |
| | 30c06 | Examples of determining reasonable cost. |
| | 30c07 | Fair value of facilities. |
| | 30c08 | Formal determinations of "reasonable cost" and "fair value of facilities. |
| | 30c09 | Facilities – voluntary and uncoerced. |
| | 30c10 | Voluntary assignment of wages, loans, and advances. |
| | 30c11 | Demonstrators – automobile salespersons. |
| | 30c12 | Cost of furnishing and maintaining uniforms. |
| | 30c13 | Deductions from wages of migrant and seasonal agricultural workers. |
| | 30c14 | Employees' taxes paid by employer may constitute "wages". |
| | 30c15 | Car expenses – employee's use of personal car on employer's business. |
| | 30c16 | Deductions in non-overtime weeks. |
| **30d** | **TIPS AND TIPPED EMPLOYEES** | |
| | 30d00 | General. |
| | 30d01 | Retention of tips by employee. |
| | 30d02 | Tips credit – SMW. |
| | 30d03 | Service charges. |
| | 30d04 | Tip pooling. |
| | 30d05 | Tips charged on credit cards. |
| | 30d06 | Comparison of State and Federal tip credit provisions. |
| | 30d07 | Changing amount of tip credit in OT hours. |
| | 30d08 | Tips in excess of statutory tip credit may not be credited against uniform purchase and maintenance costs. |
| | 30d09 | IRS tip allocation rules. |
| **30e** | **FLSA SEC 6(e)(1) – CONTRACT SERVICES OTHER THAN LINEN SUPPLY** | |
| | 30e00 | General provisions – Sec 6(e)(1), contract services (other than linen supply services). |
| | 30e01 | Application of Sec 6(e)(1) - establishment basis. |
| | 30e02 | Application of Sec 6(e)(1) – w/w basis. |
| | 30e03 | Application of Sec 6(e)(1) – contract services. |
| | 30e04 | OT and Sec 6(e)(1). |

Rev. 563          FIELD OPERATIONS HANDBOOK – 6/30/2000

## CHAPTER 30

### TABLE OF CONTENTS – PAGE 3

**30f     FLSA SEC 6(e)(2) – GOVERNMENT CONTRACT LINEN SUPPLY SERVICES**

30f00     General provision – Sec 6(e)(2), government contract linen
              services.
30f01     Linen supply services.
30f02     Application of Sec 6(e)(2) – establishment basis.
30f03     Application of Sec 6(e)(2) – w/w basis.
30f04     Application of Sec 6(e)(2) – linen supply services.
30f05     OT and Sec 6(e)(2).

## Chapter 30

### RECORDS, MINIMUM WAGE, AND PAYMENT OF WAGES

**30a     RECORDS**

**30a00     Statutory basis.**

Certain of the laws enforced by WH provide for R/K regulations.  Section 11(c) of FLSA requires the S/L to issue regulations (Reg 516) prescribing R/K requirements.

**30a01     Microfilms and data processing tapes.**

(a)   The preservation of microfilms for the periods required by Reg 516 will satisfy the requirements relating to preservation of records, provided that adequate projection or other viewing equipment is available for inspecting the microfilms, and provided the employer is prepared to make any extensions, recomputations, or transcriptions which may be requested regarding the information contained on the microfilms.  The employer should insure that the microfilms are clear reproductions of the original records, are identifiable as to dates or pay periods, and are chronologically arranged before the original records are destroyed.

(b)   Situations may be encountered where the original basic source document on which time records are maintained is an automatic word or data processing memory.  The preservation of this data base for the periods required will satisfy Reg 516, provided the employer is able to convert the data, or any part of it, into a form which is suitable for inspection.

**30a02     Recording working time.**

(a)   In recording working time, insubstantial or insignificant periods of time outside the scheduled working hours may be disregarded.  The courts have held that such trifles are de minimis.  This rule applies only where a few seconds or minutes of work are involved and where the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to pay for any part, however small, of the employee's fixed or regular working time.

(b)   It has been found that in some industries, particularly where time clocks are used, there has been the practice of recording the employee's starting and stopping time to the nearest five minutes, or to the nearest one-tenth or quarter of an hour.  For enforcement purposes, this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in the failure to compensate the employees properly for all hours they have actually worked.

(c)  If a record is kept with respect to each employee employed on a weekly or
monthly basis in an establishment or department thereof operating on a fixed
schedule, indicating the exact schedule of hours per day and hours per week
which that employee is normally expected to work, and if the payroll (or
other) records maintained by the employer indicate for each worker or for
each group of workers that such scheduled hours were, in fact, adhered to,
this will be considered compliance with Reg 516.  When fewer or more hours
than those fixed by the schedule are worked, the employer must supplement
this record by showing the exact number of hours worked on the day and week
involved.

(d)  The records must also contain a statement made each pay period that, except
where otherwise recorded, the employees worked neither more nor less than
the scheduled hours.  This policy is applicable only where hours of work are
actually fixed and it is unusual for the employee(s) to work either more or
less than the scheduled hours.

30a03   "Long-punching" of hours.

(a)  Where time records show elapsed time greater than the hours actually worked
because of reasons such as employees choosing to enter their work places
before actual starting time or to remain after their actual quitting time,
the CO shall determine whether any time is actually worked in these
intervals.  If an employee came in early for personal convenience and did no
work prior to the scheduled beginning time, a recording of the fact that the
employee worked, for example, 8 hours that day is all that is required.

(b)  The CO may suggest to the employer, but not require, that the punch-time be
kept as close to the work-time as possible to avoid any question that work
was performed during such intervals.

30a04   "Boosted hours".

COs may find in the payroll records a single figure (either daily or weekly)
which represents the total hours actually worked plus one-half of the OT
hours, in lieu of separate entries for straight-time and OT hours of work.
This is particularly so where machine posting methods are used.  For
example, if an employee works 50 hours in the workweek and is entitled to OT
pay after 40 hours, the "boosted hour" posting will be 55 hours.  The
recordkeeping requirements are met in the case of hourly rate employees by
an entry showing "boosted hours", provided the payroll or other records
contain sufficient information so that it is possible, with a reasonable
amount of recomputation, to ascertain weekly straight-time earnings and
weekly compensation for OT.  Such information includes:

   (1) actual hours worked,

   (2) regular hourly rate of pay,

   (3) additions to or deductions from wages, and

   (4) total wages paid.

30a05    Items available by extension, recomputation, or transcription.

  (a)   No R/K violation shall be charged where the employer is maintaining records in such detail as to be able to ascertain the information in the required individual items in the various sections of the Reg either upon direct review or through extension, recomputation, or transcription, and the employer is preserving the data for the periods specified. The use of symbols (such as checkmarks to indicate a regular day's work) in lieu of showing the hours worked as numerals is acceptable, provided there is a key to the symbols which will permit a determination of the time actually recorded as hours worked.

  (b)   The CO may require an employer to make extensions, recomputations, or transcriptions of records as provided in Reg 516.8 if determination of the employer's compliance status through direct review of the records is impracticable. Great care must be exercised to avoid making unreasonable demands under the regulations.

30a06    Posting requirements.

    The R/K regulations under FLSA, MSPA, and the government contracts programs require the posting of a poster at the establishment or jobsite which summarizes the laws' basic requirements. If such a poster is not in place, the CO shall charge a recordkeeping violation and instruct the employer to correct the situation.

30a07    Photographically reproduced posters.

  (a)   An ARA may approve a request from an employer to post posters photo-graphically reproduced in a reasonable and moderate size, provided there is no attempt to evade the posting requirements and the reproductions are of such size and so placed as to be read easily by the employees.

  (b)   If there is doubt as to whether a particular photographic reproduction of a particular poster meets the foregoing requirements, the ARA shall submit the reproduction to the NO for advice.

30a08   Modification of FLSA poster.

Any employer of employees to whom section 7 of FLSA does not apply because of a total establishment exemption from that section may alter or modify the FLSA poster so as to show that the OT provisions do not apply to employees in the establishment. This may be done by appending a note to that effect or by superimposing such a notation by a stamp or other means across that part of the poster which pertains to the statutory OT requirements.

For example, in the case of railroad employees, the notation may be worded as follows:

"OVERTIME PROVISION NOT APPLICABLE TO RAILROAD EMPLOYEES"(Sec 13(b)(2).)"

30a09   Joint employers of an employee

In cases where two or more employers are joint employers of an employee, the employer who actually pays the employee the monies intended as compensation for hours of employment is considered responsible for the keeping of records required by the Reg,. and is treated as the one who has the primary duty of compliance as to such hours of employment.  Where each employer makes direct payment to the employee, the employer being investigated may be deemed to be the one having the primary duty of compliance.

30b     MINIMUM WAGE

30b00   FLSA MW.

  (a)   The FLSA MW rate is $3.35 per hour, effective 1/1/81.

30b01   Monthly salary equivalents.

  (a)   Since the number of regularly scheduled work hours may be greater in long
        months than in short months, the strict allocation of a regular monthly
        salary to the hours worked within each month may result in a technical MW
        violation in the longer months.  However, for enforcement purposes, a
        regular monthly salary of $580.67 shall be considered as equivalent to a
        weekly wage of $134.00 and accepted as compliance with the $3.35 MW
        requirement if it is compensation for 40 hours of work or less in the w/w.
        If the employer rounds out this amount to not more than $585.00 per month,
        this will not affect the regular rate (i.e., $3.35) for OT purposes.

  (b)   Where an employee is paid a salary for a period in excess of a w/w (for
        example, on a monthly or semi-monthly basis) and works an alternating
        schedule of fixed w/w's, and an equal allocation of the salary would result
        in payment of less than the MW for the long w/w's, there will be compliance
        with the MW provisions of FLSA provided:

        (1)   the salary is sufficient to meet the MW requirements for all hours
              worked during the pay period; and

        (2)   there is an agreement or understanding between the parties that a
              larger portion of the salary is to be allocated to the longer w/w's.
              The employer shall be advised that the firm's records should properly
              reflect the allocation of the salary on a w/w basis.

30b02   Minimum rate of pay for non-OT weeks.

        In non-OT w/w's or in w/w's in which the OT provisions do not apply, an
        employee subject to section 6 of FLSA is considered to be paid in compliance
        if the overall earnings for the w/w equal or exceed the amount due at the
        applicable MW.  This is true regardless of whether the employee is paid on
        the basis of a single hourly rate, different hourly rates, commissions,
        certain bonuses, or some combination of these methods.  In other words, if
        the employee's total earnings for the w/w (including certain bonuses such as
        a production bonus - see FOH 30b07) divided by compensable hours equals or
        exceeds the applicable MW, the employee has been paid in compliance with Sec
        6.  These principles will also apply where an employee is not compensated
        for time which is compensable under FLSA.  For example, if an employee
        subject to the $3.35 MW during a w/w is paid for 32 hours at $5.50 per hour
        and is paid at a lesser rate or nothing at all for 8 or fewer additional
        hours worked, this individual is considered to have been paid in compliance
        with Sec 6.  The WH position regarding proper payment in w/w's where OT is
        due is set out in 32j02.

30b03   <u>Regular rate of pay for OT weeks</u>.

   (a)   The principles in FOH 32j02 shall be followed in determining compensation
         due employees in OT w/w's.

30b04   <u>Time of payment</u>.

         Payment of both MW and OT compensation due an employee must ordinarily be
         made at the regular payday for the w/w or, when the pay period covers more
         than a single week, at the regular payday for the period in which the
         particular w/w ends.  However, when it is not possible, prior to preparing
         the payroll, to ascertain the number of OT hours worked by an employee in
         the last w/w of the pay period, the requirements of FLSA/PCA/SCA/CWHSSA will
         be satisfied if the employer pays the OT compensation as soon after the
         regular payday as is practicable.  Such a payment should not be delayed for
         a period longer than is reasonably necessary for the employer to compute and
         arrange for the payment of the amounts due, but, in any event, not later
         than the next payday after such computation can be made.

30b05   <u>Employee compensated on a commission basis</u>.

   (a)   Many employers, especially in retail enterprises, compensate certain
         employees wholly or in part on a commission basis.  The methods of
         computation and payment involving commissions vary widely (<u>see</u> IB 779.413)
         and the determination of MW/OT compliance must be made on the facts of each
         case.  The general principles (except in circumstances where Sec 7(i) is
         applicable) are as follows:

   (b)   If an employee paid wholly or in part on a commission basis is subject to
         OT, the principles set out in IB 778.117 - 778.122 shall be followed.

   (c)   If an employee paid on a commission basis is exempt from OT, such as
         salespersons referred to in Sec 13(b)(10) of FLSA, the following shall be
         used in determining whether the employee is paid in compliance with MW
         requirements:

         (1)   There is no requirement that wages be paid weekly, as long as some
               regular pay period (such as biweekly or monthly) is established by the
               employer.  The only requirement is that employees receive "prompt
               payment" of the MW covering all hours worked during the pay period.

         (2)   A "settlement period" does not have to coincide with the regular pay
               period.  However, in the absence of strong evidence to the contrary, it
               must be assumed that an employer intended that a settlement period for
               commissions represents the pay period for the affected employees.
               Where a pay (settlement) period exceeds one month, the facts should be
               developed and the issue submitted to the NO (Attn: AA/OPO) since the
               bona fides of the pay (settlement) period raise serious questions as to
               the validity of the pay arrangement.

(3) Periodic draws against commission earnings within the pay (settlement) period need not equal the MW. Employers may credit these draw or guarantee payments against their MW obligation when settling out the amount due employees at the end of the pay (settlement) period. The following examples illustrate this principle. Assume a 4-week month and that a commission salesperson exempt from OT works 50 hours a week (50 x $3.35 = $167.50):

a. The employer has established payment of a weekly draw against commissions and a monthly pay (settlement) period. The salesperson draws $125 a week against earned commissions. By the pay (settlement) date, the commission salesperson has earned $950 in commissions. The employer pays the salesperson $450 ($950 - $500 previously paid by weekly draw). This commission salesperson has been paid in compliance with the monetary requirements of FLSA by being paid at least the MW for all hours of work during the pay (settlement) period.

b. The circumstances are the same as in a. above, but the employer only pays the salesperson $170 at the end of the pay (settlement) period in order to bring the individual up to the MW and carries the balance of $280 over, to be paid on the next pay (settlement) period, thus crediting it toward the MW obligation for that subsequent pay (settlement) period. This salesperson has also been paid in compliance with FLSA. Commissions earned but not paid on the next pay (settlement) date which are in excess of the amount required to satisfy MW requirements may be carried forward and applied to the MW on subsequent pay (settlement) dates.

c. The circumstances are the same as in a. above, except that the salesperson has earned only $500 in commissions and is paid an additional $170 at the end of the pay (settlement) period to meet the total MW ($3.35 x 200 = $670) due for the hours worked during that month or pay period. At the end of the following month, the salesperson has earned $1,000 in commissions. The employer deducts from this amount the $170 that was paid the previous month to bring the employee up to the MW. The employer pays the salesperson $670 ($3.35 x 200) and carries the remaining $160 into the next month. This salesperson has also been paid in compliance with FLSA. If the employer pays an additional amount ($170 the first month) to satisfy the MW, this amount may be recovered from excess commissions earned but not paid in subsequent pay (settlement) periods. Similarly, commissions earned but not paid in a given pay (settlement) period which are in excess of the amount required to satisfy MW requirements may be carried forward and applied to the MW on subsequent pay (settlement) dates.

d. A salesperson is paid four weekly draws of $150 each for a total of $600 for the monthly pay (settlement) period. At the end of the month, the salesperson's commission earnings total $1,000. The employer deducts the $600 in draws from this amount and pays the remainder (or excess) of $400 to the salesperson. The following month, the salesperson is paid $600 in draws and earns no commissions. To meet the MW obligation for the salesperson, the employer applies $70 from the $400 excess earned and paid the previous month. This practice is not in compliance with the requirements of FLSA. Any part of a commission that is actually paid to the employee may not be carried forward as a credit into subsequent pay (settlement) periods.

e. Assume the same 50-hour week and that the employer has definitely established a weekly pay period and has a monthly settlement period. The salesperson draws $150 a week against earned commissions. This salesperson has not been paid in compliance with FLSA since this individual is not receiving the MW for all hours worked in the pay period (50 x $3.35 = $167.50).

(Note: In example "e", the pay period is one week; in example "a", the pay period is one month.)

30b06   Payment of MW to seamen on American vessels.

(a) Section 6(a)(4) of FLSA permits an employer to calculate wages for seamen on the basis of a period longer than a w/w. For example, wages for such employees may be calculated over a longer period, such as for the entire voyage, on a monthly basis, or, in appropriate cases, on a yearly basis. In those cases where wages are calculated on other than a weekly basis, it is the responsibility of the employer to demonstrate that a pay period of such duration is in accordance with the established custom of the industry. In addition, the employee must receive wages at not less than a rate which will provide, for the period covered by the wage payments, wages equal to the MW for all hours during such period when the employee is on duty. Thus, if a seaman is paid a monthly salary, the total hours worked in the month, divided into the salary, must yield at least the MW, regardless of the varying number of hours worked during the weeks in the month. The same principle would apply if the wages were computed on the basis of an entire voyage or on a yearly basis.

(b) It is the custom of some employers in the maritime industry to pay by the month or by the voyage but, for the convenience of the employees, to make two or more partial payments rather than a single payment covering the period involved. For example, monthly compensation may be disbursed in two partial payments (semi-monthly), or partial payments may be made weekly on the basis of 1/52nd of the annual pay derived by multiplying 12 times the monthly salary. Such arrangements do not affect the principles stated in (a) above.

30b07  <u>Crediting a bonus or other payments to a MW deficiency</u>.

(a)  A bonus or other payment which would not be considered a part of the regular rate <u>may not</u> be offset against the MW due under FLSA. However, where such payments would be considered a part of the regular rate, they are included with other wages for purposes of determining compliance with the MW provisions of FLSA. (See IB 778.208 - 209.)

(b)  Situations may be encountered where the wages paid on the regular payday are not sufficient to satisfy the MW, but the employee at some subsequent date is paid additional wages (for example, a production bonus) for those w/w's included in the bonus payment period. When the additional wages are added to the wages paid on the regular payday, the results are either that the employee has received not less than the MW for each hour worked during that week or that the amount of the MW deficiency has been reduced. In such situations, a monetary violation of the MW provisions exists since payment of not less than the MW required by FLSA must be made on the regular payday for each w/w (<u>see</u> FOH 30b04). However, where the additional wages for a particular w/w have actually been paid prior to the investigation, and they are sufficient to bring the employee's wages up to the MW for each hour worked during that week, no MW violation shall be reported for that w/w. If such additional wages paid prior to the investigation are not sufficient to bring the employee's earnings up to the MW for each hour worked during that week, the amount of the <u>remaining</u> MW deficiency shall be computed and reported. The employer shall be advised that no less than the MW must be paid on each regular payday and the employer's assurance of future compliance shall be obtained.

30b08  <u>Certain subsistence allowances not to be considered wages</u>.

(a)  Governmental subsistence allowances to veterans for vocational training or to disabled handicapped veterans, as well as allowances furnished by a State to civilians for rehabilitation, are not considered wages and may not be used by the employer to offset wages which the employee is entitled to receive under the law.

(b)  No part of a veteran's basic pension award or other grants made by the Veterans Administration during a veteran's training period may be considered as wages paid by the employer.

30b09  (Reserved.)

30b10  <u>State or Territorial MW higher than Federal MW</u>.

(a)  If no OT has been worked in a w/w, no attempt shall be made to enforce a State or Territorial minimum wage which is in excess of that provided in Acts enforced by WH. However, the appropriate authorities shall be notified of the underpayment.

(b)  Should OT have been worked, the regular rate of pay cannot be lower than the applicable State, Territorial, or Federal minimum, whichever is higher. (See FOH 32j01.)

30b11  PCA MW.

All covered employees performing work on a contract which is subject to PCA must be paid the MW of at least $3.35 per hour for all hours spent in such contract work.  (See Reg 41 CFR Part 50-202.2.)

30b12  Annual salary earned in shorter period - MW.

Certain employment, such as that in schools, does not normally constitute 12 months of actual work each year.  For the convenience of the employee, the annual salary earned during the duty months is often paid in equal monthly installments throughout the entire year.  In determining whether the statutory MW has been paid in such cases, the annual salary is considered in relation to the duty months rather than in relation to the entire year. Thus, for example, a school bus driver may receive an annual salary of $6,000 for 10 months' duty but be paid twelve equal monthly installments of $500 each. In such case, the employee is considered as being paid at the salary rate of $600 per month or $138.46 per week.  Compliance with the statutory MW is determined in the usual manner based on this weekly salary. (See FOH 22b11 and 32b08.)

30b13  MW rate applicable to public agency employees.

Individuals employed by a public agency are subject to the FLSA MW standard, including Federal non-appropriated fund employees who are subject to Sec 6(a)(1) pursuant to Sec 18 of FLSA.  WH has no authority under FLSA for the enforcement of the provisions of Sec 18; such matters are within the authority of the Office of Personnel Management.  Section 5341 of Title 5 of the U.S Code requires the Sec 6(a)(1) rate for prevailing rate system (so called "blue collar" or Wage Board) Federal employees.

30b14  Minimum rates due domestic service employees.

(a)  Domestic service employees are within FLSA coverage by virtue of Sec 6(f).

(b)  Under Sec 6(f)(1), an employee must receive cash wages of at least $50 in a calendar quarter from a single employer; for purposes of this test only, cash wages received from a single employer are counted.

(c)  Pursuant to Sec 3(m) and Reg 531, the reasonable cost to an employer of board, lodging, or other facilities customarily furnished to employees is considered part of wages for purposes of FLSA.

(d)   Employers are responsible for determining whether persons they employ in domestic service are covered under FLSA, that is, whether they work more than 8 hours per week in the aggregate for one or more employers, or whether they have sufficient earnings to qualify.  This may require asking the employee about domestic service with other employers.

30b15   <u>MW under Sec 7(k) - work period</u>.

The work period chosen pursuant to Sec 7(k) (see Reg 553.230), rather than the w/w, is to be treated as the unit for MW purposes.  The employee's total compensation for the work period is divided by the total number of hours worked in the work period to determine compliance with the MW provisions of FLSA, notwithstanding that in particular days or weeks within the work period the employee's earnings do not yield the MW for such shorter periods.

30c    PAYMENT OF WAGES

30c00    Method of payment.

    (a)    Wages may take the form of cash or facilities as defined in Reg 531.  An employer who claims furnished facilities (meals, lodging, or other) as wages must maintain the records required in Reg 516.27.

    (b)    The payment of wages through direct deposit into an employee's bank account is an acceptable method of payment, provided employees have the option of receiving payment by cash or check directly from the employer.  As an alternative, the employer may make arrangements for employees to cash a check drawn against the employer's payroll deposit account, if it is at a place convenient to their employment and without charge to them.

30c01    "Facilities" furnished under Sec 3(m).

    (a)    Section 3(m) of FLSA permits an employer, under conditions specified in Reg 531, to count toward its MW obligation, the "reasonable cost" of furnishing board, lodging, or other facilities which are customarily furnished to employees.  Sec 3(m) also authorizes the Secretary to determine the "fair value" of the board, lodging, or other facilities based upon average cost to the employer or to groups of employers similarly situated, or on the average value to groups of employees. Where "reasonable cost" under Sec 3(m) has been established by an employer and appears to be excessive in relation to the facilities furnished, it will be necessary to ascertain whether the "fair value" of the facilities in question is lower than the "reasonable cost".  If so , the employer must use the "fair value" rather than the "reasonable cost" in determining its wage obligation.  In no case will the "fair value" be utilized where it is greater than the "reasonable cost".

    (b)    The cost of board, lodging, or other facilities shall not be included as wages to the extent excluded therefrom under the terms of a bona fide collective bargaining agreement applicable to the particular employee.  In most cases, a determination whether such an exclusion exists will be based upon the written provisions of the collective bargaining agreement.

    (c)    Employees must receive the benefit of the facility for which the employer is taking a wage credit.  Moreover, the reasonable cost to the employer of furnishing board, lodging, or other facilities  (or the fair value thereof) must be included in the employee's R/R of pay for the purpose of computing OT pay.

30c02    Customarily furnished.

    (a)    The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where "customarily furnished" to the employee.  This requirement is satisfied if either the facilities are furnished regularly by the employer to its employees or if

the same or similar facilities are customarily furnished by other employers engaged in the same or similar trade, business, or occupation in the same or similar communities.  However, "customarily furnished" does not require establishing an industry-wide practice with regard to charges being made for facilities furnished to employees.

(b)  Facilities furnished in violation of any Federal, State, or local law, ordinance, or prohibition will not be considered facilities customarily furnished, (e.g. housing that has been denied an occupancy permit, or which, after inspection, results in MSPA/CMPs).  Any question as to whether facilities are furnished in violation of any law should be referred to the AA/OPO for resolution.  Any such referral should include a detailed discussion of the facts and a copy of the applicable law.

30c03   Primarily for the benefit of the employee.

(a)  The crediting by an employer of facilities furnished to employees as wages will depend on whether such facilities are furnished primarily for the benefit or convenience of the employee, as determined by WH.  Where the primary benefit of such facilities is to the employer's business interest, credit will be denied.  The following are commonly viewed as furnished primarily for the benefit or convenience of employees:

(1)  Meals

Meals furnished by the employer are regarded as primarily for the benefit and convenience of the employees.  This rule does not apply, however, to the meal expenses incurred by an employee while traveling away from home on the employer's business.  (See IB 778.217(b)(3).)

(2)  Lodging

Lodging, like meals, is ordinarily considered for the benefit and convenience of the employee.  Circumstances may exist, however, where housing is of little benefit to employees, as where an employer requires an employee to live on the employer's premises to meet some need of the employer, or where the employee must travel away from home to further the employer's business.  In such circumstances, the housing will be considered as primarily benefiting the employer.  (Note: while it may be to the employer's advantage to provide such facilities at or near the worksite, courts have consistently taken the view that the employer may take a wage credit when the facilities are primarily for the benefit or convenience of the employee.)

(3) Transportation

    a. Transportation furnished employees between their homes and work
(i.e. normal, daily home-to-work travel) where the travel time does
not constitute hours worked is generally an "other facility."
However, transportation which is an incident of or necessary to the
employment is not an "other facility."  (See FOH 30c13 regarding
transportation of migrant and seasonal agricultural workers.)

    b. Transportation furnished for normal home to work travel from a
voluntary assembly point to a job site and vice versa where the time
does not constitute hours of work and the transportation is
primarily for the benefit of the employees is an "other facility."
In contrast, travel to distant or remote job sites is normally for
the employer's benefit and does not qualify as an "other facility."

    c. Cars furnished by an employer to employees primarily for the
personal transportation use of the employees and not primarily for
company business are "facilities" for which a wage credit may be
claimed by the employer.  (See FOH 30c11 regarding demonstrators
used by automobile salespersons.)

(4) Merchandise

Goods or merchandise, such as clothing and appliances, may be
considered "other facilities" under Sec 3(m) and Reg 531. Only the
actual cost to the employer (not necessarily the retail cost) may be
taken as a wage credit.

(5) Tuition expenses

Tuition furnished to an employee for courses or training for the
individual's own personal benefit is a bona fide "facility" for which a
wage credit may be taken, unless the training is related to employment
or is required to retain employment.

(6) Child care

Child care facilities which are furnished by an employer are bona fide
"facilities" for which a wage credit may be taken.

30c04   Primarily for the benefit of the employer.

The following are examples of items not considered bona fide "other facilities" under Sec 3(m) and Reg 531, because they are provided primarily for the benefit or convenience of the employer:

1.  Electric power used for commercial production in the interest of the employer.

2.  Telephones used for business purposes.

3.  Taxes and insurance on the employer's building which is not used as lodging furnished to the employees.

4.  Medical services and hospitalization which the employer is obligated to furnish under workers' compensation laws or similar Federal, State or local laws.

5.  Rental of uniforms where the wearing of a uniform is required by law, the employer, or by the nature of the work.

6.  Business-related travel expenses. (See IB 778.217.)

7.  Necessary tools or uniforms used in the employee's work.

30c05   Reasonable cost of facilities.

(a)  "Reasonable cost" cannot exceed the actual cost to the employer.  In deciding whether wage credits for facilities are in amounts permissible under Sec 3(m) and Reg 531, experience and judgment must be used by COs and ADs.  It should be kept in mind that the test in Reg 531.3 is "reasonable cost" rather than market value or comparable prices.  "Reasonable cost" does not include a profit to the employer.  The cost of furnishing lodging and/or other facilities must be established based upon available records.  The employer has the burden of establishing such cost and must maintain adequate records to support a determination, as required by Reg 516.27.  Bills, purchase orders, and cash register tapes may be appropriate for such purpose. A comparison of wage credits for comparable facilities furnished by other employers in the area may also provide guidance.

(b)  The method used by an employer for determining "reasonable cost" must be based on good accounting practices.  Good accounting practices do not include accounting practices which are not accepted by the Internal Revenue Service.

(c)  Furthermore, an employer may not take a credit where no cost is incurred. For example, when a meal is made available to an employee, but is not consumed, and subsequently is retained in the employer's inventory for service to customers, no credit may be taken.

30c06   Examples of determining reasonable cost.

(a)   Meals - Food service establishments

   (1)   The "reasonable cost" of meals furnished by a food service
         establishment to its employees includes only the actual cost to the
         employer of the food, its preparation, and related supplies.  Salary or
         wage costs, as distinguished from material or supply costs, may be
         claimed only to the extent that such salary or wage costs are shown to
         be directly attributable to the cost of providing meals to employees.
         If food preparation/serving employees of a food service establishment
         would be paid the same rate of pay even if meals were not provided to
         the employees of the establishment, their wage costs cannot be included
         in determining reasonable cost.  Conversely, if it were necessary to
         hire extra personnel or pay higher wages to existing employees in order
         for them to assist in furnishing meals to employees, such extra expense
         would be a legitimate cost which could be included in determining the
         "reasonable cost" of meals.

   (2)   Costs which a food service employer incurs regardless of whether the
         employees were furnished meals may not be included in determining the
         "reasonable cost."  In a food service establishment, items such as
         employee insurance, payroll taxes, menus, decorations, other operating
         supplies, laundry, telephone, maintenance services, advertising and
         promotion, building and equipment rental, licenses and taxes, insurance
         and depreciation, franchise cost, and general administrative costs are
         a part of the overall cost of the operation of the employer's business
         establishment which may not be charged to the reasonable cost of
         employees' meals.

(b)   Meals - Non food service establishments

      Determination of the "reasonable cost" of meals furnished to employees of an
      establishment which is not a food service establishment involve different
      criteria for expenses for which an employer may take credit.  For example,
      where meals are provided to employees of a non food-service establishment by
      a catering service and there are no special facilities wherein meals are
      consumed, the actual cost of the catering service, assuming no rebate to the
      employer, would be the "reasonable cost."  In more complex situations where
      dining areas are provided, the factors discussed in (a) above must be
      considered in making a determination of the "reasonable cost" of meals
      furnished to employees of a non food-service establishment.

(c)   Lodging

      Employers taking credit for housing as part of wages must show that the
      amounts charged are not more than the actual cost to the employer.  (See Reg
      531.3(a).)  However, if the actual cost of providing lodging is more than
      its established rental value, the rental value shall be deemed to be
      the reasonable cost of lodging. (See FOH 30c07.) The actual cost to the
      employer generally involves the following factors:

(1)  Adequate Depreciation.

Reg 531.3(c) allows an employer to include "adequate depreciation" as
an element of cost.  Depreciation is a concept primarily used in and
extensively regulated under the tax laws.  Depreciation is applicable
to certain capital goods (e.g. buildings, vehicles, machines, etc.).
It is never applicable to land.  For purposes of Reg 531 "adequate
depreciation" is not more than the amount of depreciation actually
claimed and allowed under the tax laws for the property in question for
the period in question.  It should be noted that the amount of
depreciation allowable on any property may vary from year to year.  If
the employer declines to provide tax returns or similar evidence as to
the claim and allowance of depreciation under the tax laws, no
allowance will be made under Reg 531.3(c).

a.  For tax purposes, depreciation might be claimed under several line
    items for property involved in the furnishing of a facility.  For
    example, an employer furnishing lodging might properly claim the
    depreciation of the building at one place;  the depreciation of the
    beds at another; and the depreciation of linens at another.  The
    addition of several such items of depreciation could be appropriate.
    Similarly, an employer might claim, in a single line item,
    depreciation on a greater piece of property than is involved in
    furnishing the facility in question.  For example, the owner of a 20
    unit motel who furnishes one unit for the lodging of an employee
    might claim depreciation on the entire motel building as a single
    line item.  Under these circumstances, pro rata allocation of the
    claimed depreciation would be required.  In the example, assuming no
    complications (e.g. no part of building used for other proposes; all
    units equal size, etc.), the allowable depreciation would be 1/20 =
    5 percent of the total depreciation taken.

b.  For tax purposes, depreciation is claimed by the year and can be
    prorated as appropriate.

(2)  Capital Invested.

The computation of "a reasonable allowance (not more than 5 1/2
percent) for interest on the depreciated amount of capital invested by
the employer" (as referred to in Reg 531.3(c)) is made as follows:

Step 1:  An amount, V, represents the total depreciable value of the
         property to the employer.  (See (1) above.  This number is not
         derived from or necessarily related to "fair market value".)
         Ordinarily, this will be the purchase price plus the cost of
         capital improvements.  It should be noted that no part of the
         cost of land is included.

<u>Step 2</u>: Compute the amount, A, by which the depreciable value, V, exceeds the depreciation already taken (or which might have been taken) as a tax deduction (i.e., subtract total allowable depreciation to date from V, the result is A.)  This number is required to be reported on the employer's tax returns.  If the employer declines to make tax returns available for verification, then A shall be deemed to be zero.  If A = 0, no further computation is required; the allowance for this part is zero.

<u>Step 3</u>: Determine the amount, E, of the employer's equity in V.  This would ordinarily be the sum of the down payment, portions of mortgage payments applied toward principal, and the cash contribution toward any capital improvements included in V.

<u>Step 4</u>: Compute (E/V) times (A).  Conceptually, this is the portion of the equity which has not been "returned" to the employer through depreciation.  A "reasonable allowance", i.e., a "return on investment" of up to 5 1/2 percent of this number, may be included in the employer's cost.

(d)   <u>Cost of operation</u>

(1)  Annual costs of operation incurred in furnishing lodging facilities must be considered in making "reasonable cost" determinations: these include interest on loans to purchase, maintain, or improve the lodging facility, taxes, repairs and maintenance, insurance, and utilities (electricity, water, sewers, garbage collection, fuel oil, and so forth.)  Repair and maintenance expenses refer to the costs which are not included under capital improvements.  Only the portion of those costs which are directly related to the lodging facility used by the employee(s) may be taken into account in determining the actual cost of providing the lodging.  As an example, the cost of property insurance should be prorated in proportion to the space of the lodging actually used by the employee(s).

(2)  When the employer leases a property from another person, the amount of rent paid by the employer to the other person is considered part of the "reasonable cost" provided that the rent charged provides no profit for the employer, directly or indirectly.  As an example, if an employer pays a higher rental charge with the promise of a rebate from the property owner as an encouragement to lease certain lodging facilities, such higher rent payment may not be used as a component of the "reasonable cost" for leasing the lodging facilities.  The allowable "reasonable cost" amount would be the rent paid by the employer minus the amount of rebate promised and received by the employer from the property owner.

(3) When determining the weekly "reasonable cost" of a lodging facility which may be claimed as a wage credit, the sum of the annual costs (as determined in (1) and (2) above) is divided by the number of weeks during which the lodging facility is used for occupancy.  Where the facility is used for other purposes, in addition to lodging, the annual cost is first prorated among the uses.  Once the weekly "reasonable cost" amount has been determined, it should be divided by the <u>actual number</u> of occupants in the lodging facility where each is provided an equal amount of living area.  However, if the living areas within the lodging facility are not equal in size, the weekly "reasonable cost" amount should be divided by the square feet of the dwelling.  The wage credit which may be claimed per employee in such cases shall be based upon the number of square feet occupied by the employee and /or that individual's family.

30c07   <u>Fair value of facilities</u>.

In those cases where cost to the employer is not a true measure of the value of the facilities to the employees, it may be appropriate to apply the "fair value" provisions of Sec 3(m).  "Fair value" is not synonymous with "reasonable cost."  The "fair value" of a facility allowable under Sec 3(m) as wages may be utilized in lieu of the actual measure of cost in determining the wages paid to any employee.  Such a determination is authorized for defined classes of employees and in defined areas based on average cost or average value.  To obtain a determination of "fair value", the facts specified in Reg 531.4 and 531.5 should be obtained and the issues submitted to the AA/OPO.

30c08   <u>Formal determinations of "reasonable cost" and "fair value" of facilities</u>.

Regs 531.4 and 531.5 set forth the procedures to be followed in making a formal determination of "reasonable cost" or "fair value" as these terms are used in Sec 3(m), whether initiated by the Adm or any interested person.  When such a request is made, the petitioner should be informed of the procedures and instructed to forward the request and required information to the Adm.

30c09   <u>Facilities - voluntary and uncoerced</u>.

(a) An employer may credit against cash wages owed employees the lesser of "reasonable cost" or "fair value", in accordance with Reg 531 and the principles in FOH 30c01 - 30c08, of facilities regularly provided to employees.

(b) Reg 531.30 provides that an employee's acceptance of facilities must be "voluntary and uncoerced." The "voluntary and uncoerced" provision has been rejected in several court of appeals and district court decisions regarding <u>meals</u> provided to employees. WH no longer enforces the "voluntary" provision with respect to <u>meals</u>. Therefore, where an employee is required to accept a meal provided by the employer as a condition of employment, WH will take no enforcement action, provided that the employer takes credit for no more than the actual cost incurred. (See FOH 30c05 and 30c06).

30c10   <u>Voluntary assignment of wages, loans, and advances.</u>

(a) Although sums paid by an employer under voluntary assignment of an employee to a third party for the benefit of the employee are not bona fide "facilities", they may be deducted from the employee's wages provided the employer does not directly or indirectly benefit. Deductions for "administrative" or "bookkeeping expenses" incurred by the employer in connection with such payments, however, are illegal to the extent that they cut into the MW or OT pay due under FLSA.

(b) While loans and cash advances made by an employer are not "facilities" the principal may be deducted from the employee's wages even where such a deduction cuts into the MW or OT due under FLSA. Deductions for interest or administrative costs on the loan or advance are illegal to the extent that they cut into the MW or OT pay. The existence of the loan or advance shall be verified to the extent possible.

(c) In the situation where an employee is granted vacation pay prior to that individual's anniversary date, or the established date of entitlement, with the understanding that such pay constitutes an advance of pay and the employee quits or is terminated before the entitlement date, the employer may recoup the advanced vacation pay, even where such recoupment cuts into the MW or OT pay required under FLSA.

30c11   <u>Demonstrators - automobile salespersons.</u>

Transportation which the employer provides to an employee is <u>not</u> furnished as a "facility" for purposes of Sec 3(m) if it is an incident of and necessary to the employment or if the transportation is furnished for travel by the employee which constitutes hours worked compensable under FLSA (Reg 531.32(a) and (c).) Demonstrators which are provided to automobile salespersons for their personal use as a form of advertising are not primarily for the benefit of employees and do not constitute wages under FLSA. This is true notwithstanding the fact that IRS may require employers to treat as taxable income any portion of the benefit received by the employee.

30c12   Cost of furnishing and maintaining uniforms.

(a)   Where uniforms are required by law, employer, or type of work

If the wearing of clean uniforms is required by law, by the employer, or by the nature of the work, the financial burden of furnishing or maintaining these clean uniforms may not be imposed upon the employees if to do so would reduce their wages below the MW (see Reg 531.3(d)(2), 531.32(c) and 531.35).

(b)   Cost of and time spent in maintaining uniforms

(1)   Where employee uniforms require ironing, drycleaning, daily washing, commercial laundering, or other special treatment, because of heavy soiling in work usage or in order to meet cleanliness or appearance standards set by law, by an employer, or by the nature of the work, the employees must, absent documentation of the greater or lesser cost, be reimbursed for uniform maintenance costs which reduce their wages below the MW in accordance with the amounts set forth in (b)(3) below.

(2)   However, in those instances where uniforms are (a) made of "wash and wear" materials, (b) may be routinely washed and dried with other personal garments, and (c) do not require ironing or any other special treatment such as drycleaning, daily washing, or commercial laundering, WH will not require that employees be reimbursed for uniform maintenance costs.  This position is not applicable where daily washing is required and the employer furnishes or reimburses the employee for a single uniform.

(3)   For enforcement purposes, WH will accept the payment to the employee of $3.35 per week or 67 cents per day as satisfying this requirement.

(4)   Since  the uniform cost would presumably be the same for any day, regardless of the number of hours worked, allocating this cost on an hourly basis should be avoided except as in (d)(2) below.  However, if an employer pays on a "cents-per-hour" basis, no monetary violation will exist if the employees receive the full daily and/or weekly amounts in each w/w as indicated in (3) above.

(5)   Where this enforcement position is followed, the time spent in washing uniforms will not be considered hours worked for either MW or OT pay purposes.

(6)   Employers or employees are free to establish actual costs, as indicated in (d) below.

Case 5:16-cv-00849-OLG-RBF   Document 25-1   Filed 06/14/17   Page 27 of 85

(c)   <u>Employee chooses not to use employer's free laundry service</u>

Where an employer gives notice to employees that the employer will launder or clean all uniforms required to be worn by employees, free of any charge, and all or some employees elect not to avail themselves of such service, the employer will not be required to reimburse the employees for expenses incurred by them for laundering or cleaning their uniforms on their own.

(d)   <u>Other standards for determination of cost</u>

(1)   The enforcement position in (b)(3) above does not prohibit the determination of the cost of laundering or maintaining uniforms from being made on some other basis, so long as the actual cost does not cut into required MW or OT compensation. For example, where an employer contracts with a laundry or rental service and in turn charges the employees or requires the employees to bear the cost directly, the actual cost may be used if reasonable.

(2)   Similarly, where a specific amount has been negotiated under a bona fide collective bargaining agreement (e.g., 5c for each hour worked), this amount may be used, if reasonable.

(3)   Where the employer does not use the flat daily or weekly basis set forth in subsec (b)(3) above, it is essential that the CO determine and document in the case file the actual cost incurred by the employee.

(4)   In preparing a case for settlement or for litigation, the enforcement position in subsec (b)(3) cannot be relied upon as a basis for action where the employer uses another basis for reimbursing employees for uniform maintenance expenses.

(e)   <u>Cost of purchasing and repurchasing uniforms</u>

(1)   When an employee is required to purchase a uniform, the employee must be reimbursed for the cost of the uniform to the extent that the expense cuts into the MW or OT compensation required by FLSA/PCA/SCA/CWHSSA.

(2)   This reimbursement must be made promptly on the regular payday for the w/w in which the expense was incurred and may not be spread over the life of the garment.

(3)   Further, employers may not avoid such costs by requiring employees to obtain uniforms before starting the job.  In such a case, the cost of the uniform is, in effect, an advance of an expense that must be borne by the employer.

(4) On the other hand, where an employee already has a uniform which has been paid for by the firm, and the employee is paid at least the MW and proper OT and there is a clear understanding between the employer and the employee that so much per hour will be paid in addition to the MW for the sole purpose of replacing an existing uniform, and, in fact, the amount so paid is sufficient to purchase replacement uniforms when worn out or no longer serviceable, no violation would occur.

(f)  Definition of "uniforms"

(1) Although there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms for purposes of Sec 3(m), the following principles are applicable:

a. If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress, the garments chosen by the employees would not be considered to be uniforms.

b. On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g. where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.

c. Other examples would include uniforms required to be worn by guards, cleaning and culinary personnel, and hospital and nursing home personnel.

(g)  Employee elects to buy additional uniforms, in excess of number required

Where an employer supplies, free of charge, or reimburses the employees for a sufficient number of uniforms required to be worn, and all or some employees elect to purchase additional uniforms in excess of the number required, the employer will not be required to reimburse the employees for costs incurred in purchasing uniforms in excess of the required number.

(h)  For the application of these principles on uniforms under SCA, see FOH 14f01 and Reg 4.168(b).

30c13   <u>Deductions from wages of migrant and seasonal agricultural workers</u>.

(a)   The reasonable cost or fair value of facilities furnished a migrant or
      seasonal agricultural worker are generally creditable as wages.  (However,
      see FOH 30c03.)   Examples of facilities for which deductions or credits are
      generally permissible include:

      (1)   Meals and beverages actually furnished to the worker.

      (2)   Off-the-job insurance authorized by the worker.

      (3)   Canteen articles purchased by the worker, but not cigarettes or
            alcoholic beverages sold to the worker, if such sales are determined to
            be unlawful by appropriate local law enforcement authorities.  Apparent
            violations of State or local licensing laws should be referred promptly
            to the appropriate enforcement authority.  (See FOH 52a09, 53g03 and
            54: WH-124.)  Prior to disallowing a deduction or wage credit based
            upon action by a State or local authority concerning illegal sales, the
            matter should be discussed through JRC procedures.

      (4)   Lodging used by a worker, including utility costs, unless required to
            be provided free of charge pursuant to the employment contract or
            applicable law.  However, no credit may be taken nor may any charge be
            made where:

            a.   workers are required to live on the premises as a condition of
                 employment or where for other reasons the housing primarily benefits
                 the employer rather than the employee, or

            b.   the housing has been denied an occupancy permit because of failure
                 to meet substantive S & H standards as determined by an inspection
                 by any agency, or

            c.   S & H violations have been found for which MSPA CMPs are being
                 assessed or violations of substantive S & H standards have been
                 found by OSHA, a State, or county agency.  If the violations are
                 corrected, a charge may be made or a credit taken for such lodging
                 only during the period of compliance.

(b)   ETA regulations require that workers placed pursuant to a Job Service
      clearance order who are unable to return daily to their permanent residence
      must receive housing as a term and condition of their employment.  Such
      workers (and accompanying family members) must receive housing at no cost or
      public housing which meets the Federal and State standards (20 CFR
      653.501(d)(2)(xv)).  Where it appears that a deduction has been made or a
      wage credit taken in apparent violation of ETA regulations, the matter
      should be reviewed through JRC before disallowing the deduction or wage
      credit.

(c) An employer who makes deductions from the wages of workers for board, lodging or other facilities or who furnishes such facilities to workers as additions to wages is required to maintain records substantiating the cost of such facilities in accordance with Reg 516.27.

(d) In Marshall v. Glassboro Service Association, Inc., the Third Circuit affirmed the district court's judgment that money advanced to farm workers for transportation costs from Puerto Rico to the mainland was primarily for the benefit of the employer and therefore could not be deducted from the workers' wages to the extent it reduced the wages below the statutory minimum.  The court similarly upheld the district court's conclusion that FLSA prohibits the employer from taking a wage credit for facilities excluded from wages by the terms of a labor agreement which is the functional equivalent of a collective-bargaining agreement.  The U.S. Supreme Court denied review.  The Court of Appeals also ruled that, regardless of the manner or method by which the employer sought to pass on to its employees certain transportation costs, where the effect was to bring the wage rate below the statutory minimum, such practice was unlawful.

(e) It is the WH position that no deduction that cuts into the MW may be made for transportation of migrant workers from the point of hire and return to that point.  This is so since in virtually all situations the transportation is primarily for the benefit of the employer and transportation costs are an incident of and necessary to the employment of migrant workers.  Where an employer advances money to migrant workers to cover transportation expenses from the point of hire to a worksite, the employer may not recoup such advances when to do so results in a worker receiving less than the statutory MW.  Such remains the case even though the transportation costs so recovered are accumulated and subsequently returned to the worker at some specified time during the season or upon the worker's return to the point of hire, after the individual has worked a full season or specified portion thereof.  Further, such transportation costs may not be included as part of an employer's cost of furnishing board, lodging, or other facilities.

(f) Farm labor contractors and agricultural associations often provide daily transportation to both migrant and seasonal farmworkers as an integral part of their business of supplying agricultural workers to those who use their farm labor contracting services.  Agricultural employers also transport their own workers under similar circumstances.  Such daily transportation is provided to assure that sufficient workers will be available at the required time and place since the workers being transported are needed to work upon perishable commodities.  Their availability for employment often depends upon being provided transportation.  Where alternative transportation is readily available which the workers are permitted to use (i.e., personal auto or carpool arrangements) and where they know the location of the place where they are to work, the reasonable cost to an employer (or fair value, whichever is less) in providing transportation may be creditable towards wages.

In contrast, where furnishing transportation to workers is primarily for the benefit and convenience of the employer, and is necessary to and an incident of the employment, it is not considered a facility within the meaning of section 3(m).  (See Reg 531.32(a) and (c).)  Accordingly, it is the WH position that:

(1) Where the transportation is an incident of and necessary to the employment, it is for the benefit of the employer and no deduction may be made for the transportation of migrant or seasonal farmworkers that cuts into the MW.  For example, transportation of migrant or seasonal farmworkers from the pickup point and return to that point, or from the temporary labor camp to the fields or for the return trip is transportation that is an incident of and necessary to the employment.

(2) Where the transportation is not incidental to the employment, it is for the worker's benefit and deductions may be made which cut into the MW, provided that if such transportation is subject to MSPA it must be furnished in vehicles which meet all substantive Federal and State motor vehicle safety and insurance standards.  Transportation which is not incidental to the employment (and thus deductible) includes:

   a. the transportation of migrant workers to conduct personal business, such as trips from the rural temporary labor camp to a laundry, post office, and grocery store, and

   b. the daily transportation of migrant and seasonal farmworkers, where alternative transportation is readily available, which the workers have the option to use, and they know where to report to work but choose to use the employer's transportation, provided that the transportation is not required to be furnished by law or regulation.

30c14   <u>Employees' taxes paid by employer may constitute "wages".</u>

(a) Pursuant to Reg 531.38, taxes which are assessed against an employee and which are collected by the employer and paid to the appropriate government agency may constitute "wages".

(b) The same principle applies to taxes which, although owed by the employee, are paid by the employer.  Thus, an employer may pay an employee's share of social security (FICA) taxes.  Such payment constitutes "wages" and may therefore be credited toward the MW and OT requirements.

   (1) Where an employee receives the MW of $3.35, the employer and the employee must each make an FICA contribution of 24 cents an hour ($3.35 x .0715 = .2395).  (7.15 percent is the current FICA rate which is, of course, subject to change.)

Example:

| | | |
|---|---|---|
| Employer pays employee | $3.11 | |
| Employee pays FICA | .24 | |
| | | 3.35 |

Payroll Costs

| | |
|---|---|
| Employer pays employee | $3.11 |
| Employee pays FICA | .24 |
| Employer pays FICA | .24 |
| Total payroll costs | 3.59 |

(2) Where the employer pays the employee's FICA contribution , a smaller direct wage payment to the employee would normally be made. Because the amount of the direct payment to the employee is reduced, the employer's FICA obligation, which is a percentage of that amount, would also be reduced. Since the employee and the employer contribute an equal percentage of FICA, the employee's obligation (which the employer is assuming) has also been reduced. By reducing FICA expenses, this practice permits an employer to reduce payroll costs without reducing an employee's net "post-FICA" wages.

a. An employer may pay an employee $3.13 in direct wages and still meet the MW obligation ($3.35 = $3.13)
$$\frac{\$3.35 = \$3.13}{1.0715}$$

Example:

| | | |
|---|---|---|
| Employer pays employee | $3.13 | |
| Employer pays FICA for employee | .22 | |
| Total wages | | 3.35 |

Payroll Costs

| | | |
|---|---|---|
| Employer pays employee | | $3.13 |
| Employer pays FICA for employee | .22 | |
| Employer pays own FICA | | .22 |
| Total payroll costs | | 3.57 |

b. Where this practice is utilized, the employee's direct wages and the FICA contribution paid on behalf of the employee by the employer must meet the statutory MW.

c. The same principle is applied when crediting the FICA contributions to OT compensation due. However, FICA contributions paid on the employee's behalf by the employer must be included in the regular rate of pay for OT purposes.

30c15  <u>Car expenses – employee's use personal car on employer's business.</u>

In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine MW compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

(a)  <u>As an enforcement policy</u>, the Internal Revenue Service (IRS) <u>standard business mileage rate</u> found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis.

(b)  The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes <u>whether or not</u> the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

30c16  <u>Deductions in non-overtime weeks.</u>

Deductions for articles that do not qualify as "board, lodging, or other facilities" under FLSA section 3(m), such as tools, equipment, cash register shortages, and other similar items, may be made in non-OT workweeks (*i.e.*, weeks of 40 hours or less, and weeks in which statutory OT does not apply) *provided* the employee continues to receive, after the deductions are made, any required MW, free and clear, for all compensable hours worked in the week (*i.e.*, average hourly earnings for the workweek after the deductions are not less than the highest applicable MW enforced by WH). (<u>See</u> Regs 531.35 and 531.36.) Deductions for non-3(m) items that cut into the highest applicable MW enforced by WH are illegal in a non-OT workweek unless the law establishing that MW (*e.g.*, DBRA, SCA, H-2A, H-1B, *etc.*) allows the particular deduction from wages. **NOTE:** If a MSPA contract specifically discloses that the employer will make certain particularized deductions not otherwise prohibited by other law, those deductions would be permitted. For example, if a MSPA-covered employer disclosed a wage rate of $8.00/hour and fully disclosed in writing at the time of recruitment that $1.50/hour would be deducted for non-3(m) items, and the deductions are otherwise legal and not prohibited by other applicable laws, then those fully-disclosed deductions are permitted to reduce the hourly wage rate to below the $8.00/hour contracted "promised wage" (*i.e.*, to $6.50/hour). Furthermore, various other Federal, State and local laws regulate payment of wages, prohibit or restrict payment of wages in services or facilities, outlaw "kickbacks," restrain assignments, and otherwise govern the calculation of wages and the frequency and manner of paying them. Nothing in the FLSA or other WH-administered statutes, regulations, or

interpretations overrides or nullifies any higher standards or more-stringent provisions of these other laws.  (See Reg 531.26.)  (WH enforcement in *non*-OT workweeks is limited to the highest applicable MW enforced by WH, which includes WH-enforced prevailing wages when they apply (*e.g.*, DBRA, SCA, H-1B, *etc.*).)  If no OT has been worked in a particular week, WH will not enforce any other State or local MW higher than the highest MW applicable under the laws enforced by WH; the Inv will advise the employer of the apparent violation of such other higher MW standards and notify the appropriate authorities of the employer's deduction policies and possible underpayments that may have occurred.  (See FOH 30b10.)  Permissible deductions in an OT week are discussed in FOH 32j08.

30d     TIPS AND TIPPED EMPLOYEES

30d00   General.

   (a)   A "tipped employee",as defined in section 3(t) of FLSA, is any employee
         engaged in an occupation in which the individual customarily and regularly
         receives more than $30.00 a month in tips.

   (b)   Section 3(m) of FLSA makes clear the intent of Congress to place on the
         employer the burden of proving the amount of tips received by "tipped
         employees", and the amount of tip credit, if any, which the employer may
         claim.  Since Sec 3(m) is not an exemption from the MW, but merely allows
         the employer to claim up to 40 percent of the MW as tip credit, the employer
         is responsible for ascertaining that the MW provisions are complied with in
         compensating "tipped employees".

   (c)   (1)   The tip provision applies on an individual employee basis.  Thus, an
               employer may claim the tip credit for some employees even though the
               employer cannot meet the requirements for others.

         (2)   In establishments where employees perform a variety of different jobs,
               an employee's status as one who "customarily and regularly receives
               tips" will depend on the total fact situation and will be determined on
               the basis of such employee's activities over the entire w/w.

   (d)   When an individual is employed in a tipped occupation and a non-tipped
         occupation (dual jobs), the tip credit is available only for the hours spent
         in the tipped occupation.  Also, such employee must customarily and
         regularly receive at least $30 a month in tips.

   (e)   Reg 531.56(e) permits the taking of the tip credit for time spent in duties
         related to the tipped occupation, even though such duties are not by
         themselves directed toward producing tips (i.e. maintenance and preparatory
         or closing activities).  For example a waiter/waitress, who spends some time
         cleaning and setting tables, making coffee, and occasionally washing dishes
         or glasses may continue to be engaged in a tipped occupation even though
         these duties are not tip producing, provided such duties are incidental to
         the regular duties of the server (waiter/waitress) and are generally
         assigned to the servers.  However, where the facts indicate that specific
         employees are routinely assigned to maintenance, or that tipped employees
         spend a substantial amount of time (in excess of 20 percent) performing
         general preparation work or maintenance, no tip credit may be taken for the
         time spent in such duties.

30d01   Retention of tips by employee.

   (a)   Pursuant to Sec 3(m), all tips received (i.e., given to or designated for
         the employee by a patron) by a "tipped employee" must be retained by the
         employee except to the extent that there is a valid pooling arrangement.

Thus, the effect of the language of Sec 3(m) precludes an agreement between an employer and a "tipped employee" that any part of tips received by such employee belongs to the employer and must be turned over to the employer. Further, the specific language added to Sec 3(m) reinforces the intent of Congress that an employee who receives $30 per month in tips is a tipped employee and that the employer and employee cannot agree to remove the employee from that status or agree to waive such employee's right to retain all tips received. Such an employee must retain all tips received from customers, whether in cash or through allocation by credit card charges, and in addition must receive remuneration from the employer for at least 60 percent of the applicable MW in the w/w.

(b) Where an employer does not strictly observe the provisions of Sec 3(m), no tip credit may be claimed and the employees are entitled to receive the full cash MW, in addition to any tips they may have received. For example, where an employer does not inform employees of the statutory provision, or pays no wages to employees who receive tips, the full MW in cash is due and no tip credit will be allowed.

(1) Several courts have held that an employer who did not comply with the tip credit provisions of Sec 3(m) was not entitled to take a tip credit on a retroactive basis. For example, an employer who paid no wages (i.e., employees received only tips) was required to pay the full MW to achieve retroactive compliance rather than simply pay 60 percent of the MW as BWs. Similarly, employers who acquired all or a portion of employees' tips were not permitted to take the tip credit and, in addition, were required to restore the tips to the employees.

(2) In the past, in the administrative settlement of investigations which disclosed violations of the tip credit provisions of Sec 3(m), WH permitted employers to achieve retroactive compliance (for example, by restoring tips) and allowed employers to retroactively claim the tip credit. In view of the court decisions, WH will not allow an employer to claim the tip credit on a retroactive basis unless all aspects of Sec 3(m) have been met. (Also see FOH 52n00.)

30d02   Tip credit - SMW.

Special minimum wages authorized under section 14 of FLSA are considered to be the "applicable minimum wage" in determining amounts creditable toward the MW for tips for purposes of Sec 3(m). Thus, for example where an employee is subject to a SMW of $2.85 per hour, the maximum amount creditable on account of tips would be $1.14 per hour (40 percent).

30d03   Service charges.

A compulsory service charge (generally noted on the menu) which is added to a customer's bill is not part of the server's (waiters/waitresses) tip income but, rather, is included with the employer's gross receipts. Therefore, the employer has complete discretion in choosing the manner in which the compulsory service charge is used, which would include using it to pay servers and/or server helpers (busboys/busgirls).  Where service charges are imposed and the employees receive no tips, the employer must pay the entire MW and OT required by FLSA.  If, in addition to service charge income, the servers receive tips from customers, such tip income may be credited toward the MW in the usual manner.

30d04   Tip pooling.

(a)   The requirement that an employee must retain all tips does not preclude tip-splitting or pooling arrangements among employees who customarily and regularly receive tips.  The following occupations have been recognized as falling within the eligible category:

(1) waiters/waitresses        (3) counter personnel who serve customers
(2) bellhops                  (4) busboys/girls (server helpers)
                              (5) service bartenders

It is not required that all employees who share in tips must themselves receive tips from customers.  The amounts retained by the employees who actually receive the tips, and those given to other pool participants are considered the tips of the individuals who retain them, in applying the provisions of sections 3(m) and 3(t).

(b)   A valid tip-pooling arrangement cannot require employees who actually receive tips to contribute a greater percentage of their tips than is customary and reasonable.  For enforcement purposes, WH will not question contributions to a pool where the net amount of tips contributed (after return of any tips from the pool) does not exceed 15 percent of the employee's tips.  However, only those tips that are in excess of tips used for tip credit (e.g. where the maximum tip credit is taken, those in excess of 40 percent of the MW) may be taken for a pool.  If such requirements are met, it is not necessary that the pooling be voluntarily consented to by the employees involved (notwithstanding Reg 531.54).

(c)   Tipped employees may not be required to share their tips with employees who have not customarily and regularly participated in tip pooling arrangements. The following employee occupations would therefore not be eligible to participate:

(1) Janitors        (3) Chefs or cooks
(2) Dishwashers     (4) Laundry room attendants

However, it does not appear that the Congress, even in requiring as a general principle that tipped employees retain all their tips, intended to prevent tipped employees from deciding, free from any coercion whatever and outside of any formalized arrangement or as a condition of employment, what to do with their tips, including sharing them with whichever co-workers they please.  Tips given to such co-workers as are listed in this subsection may not, however, be used as a tip credit.

(d)   Questions regarding eligibility of employees to share in tip pooling arrangements, and the percentage of tips that the eligible employees are required to contribute to a pool which cannot be answered on the basis of these guidelines should be submitted thru channels to the AA/OPO for resolution.  In the case of host/hostesses, head waiters or seater/greeters and other employees not referred to above, facts should be developed showing the practices regarding their sharing of tips in the locality and type of establishment involved.

30d05   <u>Tips charged on credit cards</u>.

(a)   Where tips are charged on credit cards, WH will not question the reduction of the credit card tips paid over to the employee if the amount deducted is no greater than the percentage charged by the credit card company.  For example, where a credit card company charges an employer 5 percent on all sales charged to its credit service, the employer may pay the employee 95 percent of the tips without violating FLSA.

(b)   Payment of both MW and OT compensation, including the charged tips, due a "tipped employee" must ordinarily be made at the regular payday for the w/w, or when the pay period covers more than a single w/w, at the regular payday for the period in which the particular w/w ends (<u>see</u> FOH 30b04).  The procedures required to process charges made by customers through credit cards may delay actual receipt of the funds by the employer for one or two months.  Nevertheless, the employer is required to pay over the charged tips to the employee on the employee's next regular payday.

(c)   In some situations, a credit card transaction is not collected from a credit card company.  In such cases, the employer is not required to pay a tipped employee the amount of tips specified on the credit card slip.  Of course, this assumes the inability to collect is not a result of the employer's failure to submit the slip for reimbursement, etc.

(d)   The employer may recover from a tipped employee the tip amount stated on the uncollected credit card slip if the tip amount has been paid to the tipped employee.  This may be accomplished either by payroll deduction or by out-of-pocket reimbursement by the employee to the employer.  Regardless of how effectuated, the recovery of the tips should be accurately documented by the employer.  However, the amount of uncollected credit card tips which are recovered by the employer must not reduce the tips retained by the tipped employee for the earlier w/w below the claimed tip credit.  The amount of tips to be recovered which would cut into the claimed tip credit is unrecoverable by the employer.

(e) Where there are tip pools, tip pool recipients are responsible for reimbursing the employer for the share of tips from an uncollected credit card transaction which was allocated into the tip pool. The tipped employee who contributed to the tip pool cannot be held accountable for tips which are not in the individual's possession.

30d06   Comparison of State and Federal tip credit provisions.

(a) Where FLSA and a State law regulating the amount of tip credit that may be taken by an employer are concurrently applicable, neither law preempts the other. Each law must be applied separately and the provision of the law which requires the higher cash wage payment is the standard that must be complied with in order to determine the legal tip credit that may be taken by the employer. In the following example, the FLSA MW of not less than $3.35 per hour is controlling and the State cash wage requirement of $2.25 per hour must be complied with.

|  | State | Federal |
|---|---|---|
| Minimum wage | $3.00 | $3.35 |
| Tip credit allowable | x .25 | x .40 |
| Tip credit | $0.75 | $1.34* |
| | | |
| Minimum wage | $3.00 | $3.35 |
| Less: tip credit | - .75 | -1.34 |
| Cash wage required | $2.25 | $2.01 |

* Section 3(m) limits the tip credit to no more than 40 percent of the FLSA MW.

(b) The difference between the FLSA MW and the cash wage payment required by State law of $1.10 per hour ($3.35 - $2.25) may be credited toward the tip credit allowed under Federal law , provided that the employee earns not less than $1.10 per hour in tips.

(c) In a situation where a State law requires a MW of $2.50 per hour and forbids any tip credit and the Federal MW is $3.35 per hour, the employer may take a tip credit of 85 cents per hour ($3.35 - $2.50) where the employee earns not less than 85 cents per hour in tips.

(d) In a situation where a State MW is greater than the Federal MW, the tip credit allowable under Sec 3(m) is limited to a maximum of 40 percent of the Federal MW, i.e., $1.34 per hour.

30d07   Changing amount of tip credit in OT hours.

(a) An employer may not take a different tip credit during OT hours than is taken during non-OT hours. To so allow would conflict with the purposes of the OT provisions of FLSA.

(b) For example, in the case of an employee paid the MW, if an employer took no tip credit during the first 40 hours in the w/w but took a full tip credit for the OT hours, the actual cash wage paid by the employer would be $3.69 for the OT hours and would not constitute compliance. This is illustrated by the following example:

| Non-OT Hours | OT Hrs. | Actual OT due |
|---|---|---|
| $3.35 cash | $3.35 (MW) | $3.35 |
| 0.00 tip credit | -1.34 (tip credit) | 1.68 (1/2x3.35) |
| $3.35 | $2.01 (cash wage) | $5.03 |
| | +1.68 (1/2 T) | |
| | $3.69 | |

(c) Where an employer pays a cash wage to a tipped employee in excess of the amount required by Sec 3(m) and also wishes to claim the full tip credit amount, the employee's regular rate of pay for OT purposes is the sum of the cash wage paid and the tip credit amount claimed. For example, where an employer pays a cash wage of $2.50 per hour and claims a tip credit of $1.34 per hour (40 percent of $3.35) the employee's regular rate of pay is $3.84 per hour and the employee would be due $5.76 per hour for each OT hour worked.

| Non-OT Hours | OT hours |
|---|---|
| $2.50 cash wage paid | $2.50 cash wage paid |
| 1.34 tip credit claimed | 1.34 tip credit claimed |
| $3.84 | 3.84 reg. rate |
| | 1.92 additional cash due for OT |
| | $5.76 OT rate of pay |

30d08 <u>Tips in excess of statutory tip credit may not be credited against uniform purchase and maintenance costs.</u>

(a) Where, for example, the employer pays $2.01 per hour in cash wages and employees earn $2.00 per hour in tips, then the maximum tip credit is $1.34 per hour (<u>see</u> footnote in FOH 30d06(a)) and, therefore, the employees' R/R is $3.35. Accordingly, the employer may not make any deductions for uniform purchases or maintenance, etc., since tips received by an employee in excess of $1.34 per hour (40 percent of the MW) are not deemed wages for purposes of FLSA.

(b)   On the other hand, where the employer pays $2.50 per hour in cash wages and claims a tip credit of $1.34 per hour and the employees receive not less than $1.34 per hour in tips, the employees' R/R is $3.84 per hour.  In such cases, deductions of up to 49 cents per hour ($3.84 - $3.35) may be made for such things as uniform purchases and maintenance without cutting into the required MW.  (The employees would still be due $5.76 per hour for each OT hour worked ($3.84 x 1 1/2) (See 30d07(c).)

30d09    IRS tip allocation rules.

Where an employer withholds taxes from a tipped employee based upon a percentage of sales, rather than on reported tips, a reduction in an individual employee's net pay may result, but this is not an FLSA violation. Employees who contact WH alleging over-withholding should be referred to the nearest IRS office.

30e     FLSA SEC 6(e)(1) - CONTRACT SERVICES OTHER THAN LINEN SUPPLY

30e00   General provisions -Sec 6(e)(1), contract services (other than linen supply services).

        Section 6(e)(1) of FLSA provides:  "Notwithstanding the provisions of
        section 13 of this Act (except subsections (a)(1) and (f) thereof), every
        employer providing any contract services (other than linen supply services)
        under a contract with the United States or any subcontract thereunder shall
        pay to each of his employees whose rate of pay is not governed by the
        Service Contract Act of 1965 (41 U.S.C. 351-357) or to whom subsection
        (a)(1) of this section is not applicable, wages at rates not less than the
        rates provided for in subsection (b) of this section".  (Effective 12/31/77,
        subsec (b) provided for payment of wage rates not less than those provided
        in subsec (a)(1).)

30e01   Application of Sec 6(e)(1) - establishment basis .

        As an enforcement policy, the MW standard provided by Sec 6(e)(1) of FLSA
        will be applied only within an establishment in which work is performed on a
        government service contract.  Thus, where an employer operated more than one
        establishment but performs on government service contracts in only certain
        of these establishments,  WH will not assert application of Sec 6(e)(1) to
        those establishments which do not perform on government service contracts.

30e02   Application of Sec 6(e)(1) - w/w basis.

        The application of Sec 6(e)(1) of FLSA depends on the performance of
        contract services and not on the coverage or exemption status of the
        establishment under the Act.  Thus, during any w/w in which the
        establishment is engaged in the performance of contract services, the wage
        rate provided in Sec 6(b) of FLSA would be applicable to all employees of
        the establishment other than those specifically exempt under Sec 13(a)(1) of
        FLSA or those subject to a higher wage rate pursuant to SCA.

30e03   Application of Sec 6(e)(1) - contract services.

        Section 6(e)(1) of FLSA applies to every employer providing any contract
        service (other than linen supply services) under a contract with the United
        States or any subcontractor thereunder.  It is not necessary that the
        contract be subject to SCA.

30e04   OT and Sec 6(e)(1).

        Section 6(e)(1) of FLSA contains no reference to OT standards and Sec 7
        makes no provision for OT for employees covered by Sec 6(e).  OT compensation
        for employees covered on a traditional or enterprise basis may be required
        under section 7(a) of FLSA or under CWHSSA.

30f      FLSA SEC 6(e)(2) - GOVERNMENT CONTRACT LINEN SUPPLY SERVICES

30f00    General provision - Sec 6(e)(2), government contract linen supply services.

Section 6(e)(2) of FLSA provides: "Notwithstanding the provisions of section 13 of this Act (except subsections (a)(1) and (f) thereof) and the provisions of the Service Contract Act of 1965, every employer in an establishment providing linen supply services to the United States under a contract with the United States or any subcontract thereunder shall pay to each of his employees in such establishment wages at rates not less than those prescribed in subsection (b), except that if more than 50 per centum of the gross annual dollar volume of sales made or business done by such establishment is derived from providing such linen supply services under any such contracts or subcontracts, such employer shall pay to each of his employees in such establishment wages at rates not less than those prescribed in subsection (a)(1) of this section". (Effective 12/31/77, subsec (b) provided for payment of wage rates not less than those provided in subsec (a)(1).)

30f01    Linen supply services

(a)   The application of section 6(e)(2) of FLSA is determined by the type of service contracted for and not by the type of establishment performing the service. Thus, for example, a laundry may provide linen supply service within the meaning of Sec 6(e)(2).

(b)   The term linen supply services as used in section 6(e)(2) of FLSA refers to the supplying of various items to the Government on a rental basis by a contractor who owns the item being supplied. On the other hand, the mere laundering of items which are owned by the Government is a laundering service and is not a "linen supply service" within the meaning of Sec 6(e)(2).

(c)   The term "linen supply services", in addition to including such services as the rental of tablecloths, sheets, and pillowcases, would also include contracts for such items as dresses, uniforms, other wearing apparel, bibs aprons, etc., of the type used by barbers, doctors, waitresses, waiters, nurses, food workers, beauticians, etc. It would not include services for such items as diapers, laundry, or dry cleaning (family or commercial), nor services for such items as industrial wiping towels, safety equipment and salvage, dust control -- including treated dust tool covers and cloths, treated dust mops or rugs, or for industrial work uniforms, such as those worn by mechanics and production workers in heavy industry, machine shops, garages, service stations and the like.

30f02   Application of Sec 6(e)(2) - establishment basis.

The MW standard provided by section 6(e)(2) of FLSA applies only within an establishment in which work is performed on a government linen supply contract. Thus, where an employer operates more than one establishment but performs on government linen supply contracts in only certain of the establishments, WH will not assert application of Sec 6(e)(2) to the establishments which do not perform on government linen supply contracts.

30f03   Application of Sec 6(e)(2) - w/w basis.

The application of section 6(e)(2) of FLSA depends on the performance of linen supply services to the government and not on the coverage or exemption status of the establishment under the Act. Thus, during any w/w in which the establishment is engaged in the performance of linen supply services, the wage rate provided in Sec 6(b) of FLSA would be applicable to all employees of the establishment other than those specifically exempt under Sec 13(a)(1) of FLSA or those subject to a higher wage rate pursuant to SCA.

30f04   Application of Sec 6(e)(2) - linen supply services.

Section 6(e)(2) of FLSA applies to every employer providing linen supply services under a contract with the United States or any subcontract thereunder. It is not necessary that the contract be subject to SCA.

30f05   OT and Sec 6(e)(2).

Section 6(e)(2) of FLSA contains no reference to OT standards and Sec 7 makes no provision for OT for employees covered by Sec 6(e). OT compensation for employees covered on a traditional or enterprise basis may be required under section 7(a) of FLSA or under CWHSSA.

# EXHIBIT A-2

## Chapter 30

## RECORDS, MINIMUM WAGE, AND PAYMENT OF WAGES

**Source: FOH Modernization revision 728, published 11/17/2016. Substantive revisions made *after* 11/17/2016 are noted at the end of affected provisions below. Historical information on revisions published *prior to* 11/17/2016 can be found at the link beside this chapter at www.dol.gov/whd/foh/.**

## Table of Contents

**30a      RECORDS**

30a00      Statutory basis.
30a01      Microfilms and data processing tapes.
30a02      Recording working time.
30a03      Long-punching of hours.
30a04      Boosted hours.
30a05      Items available by extension, re-computation, or transcription.
30a06      Posting requirements.
30a07      Photographically reproduced posters.
30a08      Modification of FLSA poster.
30a09      Joint employers of an employee.

**30b      MINIMUM WAGE**

30b00      FLSA minimum wage.
30b01      Monthly salary equivalents.
30b02      Minimum rate of pay for non-overtime weeks.
30b03      Regular rate of pay for overtime weeks.
30b04      Time of payment.
30b05      Employee compensated on a commission basis.
30b06      Payment of minimum wage to seamen on American vessels.
30b07      Crediting a bonus or other payments to a minimum wage deficiency.
30b08      Certain subsistence allowances not to be considered wages.
30b09      (Reserved.)
30b10      State or territorial minimum wage higher than federal minimum wage.
30b11      PCA minimum wage.
30b12      Annual salary earned in shorter period: minimum wage.
30b13      Minimum wage rate applicable to public agency employees.
30b14      Minimum rates due domestic service employees.
30b15      Minimum wage under section 7(k): work period.

**30c      PAYMENT OF WAGES**

30c00      Method of payment.
30c01      Facilities furnished under section 3(m).
30c02      Customarily furnished.
30c03      Primarily for the benefit of the employee.
30c04      Primarily for the benefit of the employer.

**CHAPTER 30 TABLE OF CONTENTS**

| 30c05 | Reasonable cost of facilities. |
|---|---|
| 30c06 | Examples of determining reasonable cost. |
| 30c07 | Fair value of facilities. |
| 30c08 | Formal determinations of reasonable cost and fair value of facilities. |
| 30c09 | Facilities: voluntary and un-coerced. |
| 30c10 | Voluntary assignment of wages, loans, and advances. |
| 30c11 | Demonstrators - automobile salespersons. |
| 30c12 | Cost of furnishing and maintaining uniforms. |
| 30c13 | Deductions from wages of migrant and seasonal agricultural workers. |
| 30c14 | Employees' taxes paid by employer may constitute "wages." |
| 30c15 | Car expenses: employee's use of personal car on employer's business. |
| 30c16 | Deductions in non-overtime weeks. |

**30d**      **TIPS AND TIPPED EMPLOYEES**

| 30d00 | General. |
|---|---|
| 30d01 | Retention of tips by employee. |
| 30d02 | Tip credits in subminimum wage situations. |
| 30d03 | Service charges. |
| 30d04 | Tip pooling. |
| 30d05 | Tips charged on credit cards. |
| 30d06 | Determining the tip credit an employer may claim against its minimum wage obligations. |
| 30d07 | FLSA 3(m) tip credit in overtime hours. |
| 30d08 | IRS tip allocation rules. |

**30e**      **FLSA SECTION 6(e)(1): CONTRACT SERVICES OTHER THAN LINEN SUPPLY**

| 30e00 | General provisions: section 6(e)(1), contract services (other-than-linen supply services). |
|---|---|
| 30e01 | Application of section 6(e)(1): establishment basis. |
| 30e02 | Application of section 6(e)(1): workweek basis. |
| 30e03 | Application of section 6(e)(1): contract services. |
| 30e04 | Overtime and section 6(e)(1). |

**30f**      **FLSA SECTION 6(e)(2): GOVERNMENT CONTRACT LINEN SUPPLY SERVICES**

| 30f00 | General provision: section 6(e)(2), government contract linen services. |
|---|---|
| 30f01 | Linen supply services. |
| 30f02 | Application of section 6(e)(2): establishment basis. |
| 30f03 | Application of section 6(e)(2): workweek basis. |
| 30f04 | Application of section 6(e)(2): linen supply services. |
| 30f05 | Overtime and section 6(e)(2). |

**30a**      **RECORDS**

**30a00**      **Statutory basis.**

Certain of the laws enforced by the Wage and Hour Division (WHD) provide for recordkeeping regulations.  Section 11(c) of the Fair Labor Standards Act (FLSA) requires

**CHAPTER 30 TABLE OF CONTENTS**

the Solicitor of Labor (SOL) to issue regulations (*i.e.*, 29 CFR 516) prescribing recordkeeping requirements.

**30a01**   **Microfilms and data processing tapes.**

**(a)**   The preservation of microfilms for the periods required by 29 CFR 516 will satisfy the requirements relating to preservation of records, provided that adequate projection or other viewing equipment is available for inspecting the microfilms, and provided the employer is prepared to make any extensions, re-computations, or transcriptions which may be requested regarding the information contained on the microfilms.  The employer should insure that the microfilms are clear reproductions of the original records, are identifiable as to dates or pay periods, and are chronologically arranged before the original records are destroyed.

**(b)**   Situations may be encountered where the original basic source document on which time records are maintained is an automatic word or data processing memory.  The preservation of this data base for the periods required will satisfy 29 CFR 516, provided the employer is able to convert the data, or any part of it, into a form which is suitable for inspection.

**30a02**   **Recording working time.**

**(a)**   In recording working time, insubstantial, or insignificant periods of time outside the scheduled working hours may be disregarded.  The courts have held that such trifles are *de minimis*.  This rule applies only where a few seconds or minutes of work are involved and where the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to pay for any part, however small, of the employee's fixed or regular working time.

**(b)**   It has been found that in some industries, particularly where time clocks are used, there has been the practice of recording the employee's starting and stopping time to the nearest 5 minutes, or to the nearest $\frac{1}{10}$ or $\frac{1}{4}$ of an hour.  For enforcement purposes, this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in the failure to compensate the employees properly for all hours they have actually worked.

**(c)**   If a record is kept with respect to each employee employed on a weekly or monthly basis in an establishment or department thereof operating on a fixed schedule, indicating the exact schedule of hours per day and hours per week which that employee is normally expected to work, and if the payroll (or other) records maintained by the employer indicate for each worker or for each group of workers that such scheduled hours were, in fact, adhered to, this will be considered compliance with 29 CFR 516.  When fewer or more hours than those fixed by the schedule are worked, the employer must supplement this record by showing the exact number of hours worked on the day and week involved.

**(d)**   The records must also contain a statement made each pay period that, except where otherwise recorded, the employees worked neither more nor less than the scheduled hours.  This policy is applicable only where hours of work are actually fixed and it is unusual for the employee(s) to work either more or less than the scheduled hours.

**30a03**   **Long-punching of hours.**

**CHAPTER 30 TABLE OF CONTENTS**

**(a)**     Where time records show elapsed time greater than the hours actually worked because of reasons such as employees choosing to enter their work places before actual starting time or to remain after their actual quitting time, the Wage and Hour Investigator (WHI) shall determine whether any time is actually worked in these intervals.  If an employee came in early for personal convenience and did no work prior to the scheduled beginning time, a recording of the fact that the employee worked, for example, 8 hours that day is all that is required.

**(b)**     The WHI may suggest to the employer, but not require, that the punch-time be kept as close to the work-time as possible to avoid any question that work was performed during such intervals.

**30a04     Boosted hours.**

**(a)**     WHIs may find in the payroll records a single figure (either daily or weekly) which represents the total hours actually worked plus $\frac{1}{2}$ of the overtime hours, in lieu of separate entries for straight-time and overtime hours of work.  This is particularly so where machine posting methods are used.  For example, if an employee works 50 hours in the workweek and is entitled to overtime pay after 40 hours, the boosted hour posting will be 55 hours.  The recordkeeping requirements are met in the case of hourly rate employees by an entry showing boosted hours, provided the payroll or other records contain sufficient information so that it is possible, with a reasonable amount of re-computation, to ascertain weekly straight-time earnings and weekly compensation for overtime.  Such information includes:

     (1)     actual hours worked,

     (2)     regular hourly rate of pay,

     (3)     additions to or deductions from wages, and

     (4)     total wages paid.

**30a05     Items available by extension, re-computation, or transcription.**

**(a)**     No recordkeeping violation shall be charged where the employer is maintaining records in such detail as to be able to ascertain the information in the required individual items in the various sections of the regulation either upon direct review or through extension, re-computation, or transcription, and the employer is preserving the data for the periods specified.  The use of symbols (such as checkmarks to indicate a regular day's work) in lieu of showing the hours worked as numerals is acceptable, provided there is a key to the symbols which will permit a determination of the time actually recorded as hours worked.

**(b)**     The WHI may require an employer to make extensions, re-computations, or transcriptions of records as provided in 29 CFR 516.8 if determination of the employer's compliance status through direct review of the records is impracticable.  Great care must be exercised to avoid making unreasonable demands under the regulations.

**30a06     Postings requirements.**

The recordkeeping regulations under FLSA, Migrant and Seasonal Worker Protection Act (MSPA), and the government contracts programs require the posting of a poster at the

**CHAPTER 30 TABLE OF CONTENTS**

establishment or jobsite which summarizes the laws' basic requirements.  If such a poster is not in place, the WHI shall charge a recordkeeping violation and instruct the employer to correct the situation.

**30a07**    **Photographically reproduced posters.**

(a)    A regional administrator (RA) may approve a request from an employer to post posters photographically reproduced in a reasonable and moderate size, provided there is no attempt to evade the posting requirements and the reproductions are of such size and so placed as to be read easily by the employees.

(b)    If there is doubt as to whether a particular photographic reproduction of a particular poster meets the foregoing requirements, the RA shall submit the reproduction to the National Office (NO) for advice.

**30a08**    **Modification of FLSA poster.**

Any employer of employees to whom section 7 of the FLSA does not apply because of a total establishment exemption from that section may alter or modify the FLSA poster so as to show that the overtime provisions do not apply to employees in the establishment.  This may be done by appending a note to that effect or by superimposing such a notation by a stamp or other means across that part of the poster which pertains to the statutory overtime requirements.  For example, in the case of railroad employees, the notation may be worded as follows:

"OVERTIME PROVISION NOT APPLICABLE TO RAILROAD EMPLOYEES" (section 13(b)(2))."

**30a09**    **Joint employers of an employee.**

In cases where two or more employers are joint employers of an employee, the employer who actually pays the employee the monies intended as compensation for hours of employment is considered responsible for the keeping of records required by the regulation, and is treated as the one who has the primary duty of compliance as to such hours of employment.  Where each employer makes direct payment to the employee, the employer being investigated may be deemed to be the one having the primary duty of compliance.

**30b**    **MINIMUM WAGE**

**30b00**    **FLSA minimum wage.**

(a)    The FLSA minimum wage rate is $3.35 per hour, effective 01/01/1981.

**30b01**    **Monthly salary equivalents.**

(a)    Since the number of regularly scheduled work hours may be greater in long months than in short months, the strict allocation of a regular monthly salary to the hours worked within each month may result in a technical minimum wage violation in the longer months.  However, for enforcement purposes, a regular monthly salary of $580.67 shall be considered as equivalent to a weekly wage of $134.00 and accepted as compliance with the $3.35 minimum wage requirement if it is compensation for 40 hours of work or less in the workweek.  If the

**CHAPTER 30 TABLE OF CONTENTS**

employer rounds out this amount to not more than $585.00 per month, this will not affect the regular rate (*i.e.*, $3.35) for overtime purposes.

**(b)**   Where an employee is paid a salary for a period in excess of a workweek (*e.g.*, on a monthly or semi-monthly basis) and works an alternating schedule of fixed workweeks, and an equal allocation of the salary would result in payment of less than the minimum wage for the long workweeks, there will be compliance with the minimum wage provisions of the FLSA provided:

(1)   the salary is sufficient to meet the minimum wage requirements for all hours worked during the pay period; and

(2)   there is an agreement or understanding between the parties that a larger portion of the salary is to be allocated to the longer workweeks. The employer shall be advised that the firm's records should properly reflect the allocation of the salary on a workweek basis.

**30b02**   **Minimum rate of pay for non-overtime weeks.**

*In non-overtime workweeks or in workweeks in which the overtime provisions do not apply*, an employee subject to section 6 of the FLSA is considered to be paid in compliance *if the overall earnings for the workweek equal or exceed the amount due at the applicable minimum wage*. This is true regardless of whether the employee is paid on the basis of a single hourly rate, different hourly rates, commissions, certain bonuses, or some combination of these methods. In other words, if the employee's total earnings for the workweek (including certain bonuses such as a production bonus, *see* FOH 30b07) divided by compensable hours equals or exceeds the applicable minimum wage, the employee has been paid in compliance with section 6. These principles will also apply where an employee is not compensated for time which is compensable under the FLSA. For example, if an employee subject to the $3.35 minimum wage during a workweek is paid for 32 hours at $5.50 per hour and is paid at a lesser rate or nothing at all for 8 or fewer additional hours worked, this individual is considered to have been paid in compliance with section 6. The WHD position regarding proper payment in workweeks where overtime is due is set out in FOH 32j02.

**30b03**   **Regular rate of pay for overtime weeks.**

**(a)**   The principles in FOH 32j02 shall be followed in determining compensation due employees in overtime workweeks.

**30b04**   **Time of payment.**

Payment of both minimum wage and overtime compensation due an employee must ordinarily be made at the regular payday for the workweek or, when the pay period covers more than a single week, at the regular payday for the period in which the particular workweek ends. However, when it is not possible, prior to preparing the payroll, to ascertain the number of overtime hours worked by an employee in the last workweek of the pay period, the requirements of the FLSA/Walsh-Healey Public Contracts Act (PCA)/McNamara-O'Hara Service Contract Act (SCA)/Contract Work Hours and Safety Standards Act (CWHSSA) will be satisfied if the employer pays the overtime compensation as soon after the regular payday as is practicable. Such a payment should not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for the payment of the

**CHAPTER 30 TABLE OF CONTENTS**

amounts due, but, in any event, not later than the next payday after such computation can be made.

**30b05**     **Employee compensated on a commission basis.**

(a)      Many employers, especially in retail enterprises, compensate certain employees wholly or in part on a commission basis. The methods of computation and payment involving commissions vary widely (*see* 29 CFR 779.413) and the determination of minimum wage/overtime compliance must be made on the facts of each case. The general principles (except in circumstances where section 7(i) is applicable) are as follows:

(b)      If an employee paid wholly or in part on a commission basis is subject to overtime, the principles set out in 29 CFR 778.117 -.122 shall be followed.

(c)      If an employee paid on a commission basis is exempt from overtime, such as salespersons referred to in section 13(b)(10) of the FLSA, the following shall be used in determining whether the employee is paid in compliance with minimum wage requirements:

(1)      There is no requirement that wages be paid weekly, as long as some regular pay period (such as biweekly or monthly) is established by the employer. The only requirement is that employees receive prompt payment of the minimum wage covering all hours worked during the pay period.

(2)      A settlement period does not have to coincide with the regular pay period. However, in the absence of strong evidence to the contrary, it must be assumed that an employer intended that a settlement period for commissions represents the pay period for the affected employees. Where a pay (settlement) period exceeds 1 month, the facts should be developed and the issue submitted to the NO (Attn: Assistant Administrator for Policy) since the *bona fides* of the pay (settlement) period raise serious questions as to the validity of the pay arrangement.

(3)      Periodic draws against commission earnings within the pay (settlement) period need not equal the minimum wage. Employers may credit these draw or guarantee payments against their minimum wage obligation when settling out the amount due employees at the end of the pay (settlement) period. The following examples illustrate this principle. Assume a 4-week month and that a commission salesperson exempt from overtime works 50 hours a week (50 x $3.35 - $167.50):

a.      The employer has established payment of a weekly draw against commissions and a monthly pay (settlement) period. The salesperson draws $125 a week against earned commissions. By the pay (settlement) date, the commission salesperson has earned $950 in commissions. The employer pays the salesperson $450 ($950 - $500 previously paid by weekly draw). This commission salesperson has been paid in compliance with the monetary requirements of the FLSA by being paid at least the minimum wage for all hours of work during the pay (settlement) period.

b.      The circumstances are the same as in FOH 30(c)(3)*a.* above, but the employer only pays the salesperson $170 at the end of the pay (settlement) period in order to bring the individual up to the minimum wage and carries the balance of $280 over, to be paid on the next pay (settlement) period, thus

**CHAPTER 30 TABLE OF CONTENTS**

crediting it toward the minimum wage obligation for that subsequent pay (settlement) period. This salesperson has also been paid in compliance with the FLSA. Commissions earned but not paid on the next pay (settlement) date which are in excess of the amount required to satisfy minimum wage requirements may be carried forward and applied to the minimum wage on subsequent pay (settlement) dates.

c.    The circumstances are the same as in FOH 30(c)(3)*a.* above, except that the salesperson has earned only $500 in commissions and is *paid* an additional $170 at the end of the pay (settlement) period to meet the total minimum wage ($3.35 x 200 - $670) due for the hours worked during that month or pay period. At the end of the following month, the salesperson has earned $1,000 in commissions. The employer deducts from this amount the $170 that was paid the previous month to bring the employee up to the minimum wage. The employer pays the salesperson $670 ($3.35 x 200) and carries the remaining $160 into the next month. This salesperson has also been paid in compliance with the FLSA. If the employer pays an additional amount ($170 the first month) to satisfy the minimum wage, this amount may be recovered from excess commissions earned but *not paid* in subsequent pay (settlement) periods. Similarly, commissions earned but *not paid* in a given pay (settlement) period which are in excess of the amount required to satisfy minimum wage requirements may be carried forward and applied to the minimum wage on subsequent pay (settlement) dates.

d.    A salesperson is paid four weekly draws of $150 each for a total of $600 for the monthly pay (settlement) period. At the end of the month, the salesperson's commission earnings total $1,000. The employer deducts the $600 in draws from this amount and pays the remainder (or excess) of $400 to the salesperson. The following month, the salesperson is paid $600 in draws and earns no commissions. To meet the minimum wage obligation for the salesperson, the employer applies $70 from the $400 excess *earned and paid* the previous month. This practice is not in compliance with the requirements of the FLSA. Any part of a commission that is actually *paid* to the employee may not be carried forward as a credit into subsequent pay (settlement) periods.

e.    Assume the same 50-hour week and that the employer has definitely *established* a weekly pay period and has a monthly settlement period. The salesperson draws $150 a week against earned commissions. This salesperson has *not* been paid in compliance with FLSA since this individual is not receiving the minimum wage for all hours worked *in the pay period* (50 x $3.35 - $167.50).

(Note: in the example in FOH 30(c)(3)e., the pay period is 1 week; in the example in FOH 30(c)(3)a., the pay period is 1 month.)

**30b06    Payment of minimum wage to seamen on American vessels.**

(a)    Section 6(a)(4) of the FLSA permits an employer to calculate wages for seamen on the basis of a period longer than a workweek. For example, wages for such employees may be calculated over a longer period, such as for the entire voyage, on a monthly basis, or, in

appropriate cases, on a yearly basis.  In those cases where wages are calculated on other than a weekly basis, it is the responsibility of the employer to demonstrate that a pay period of such duration is in accordance with the established custom of the industry.  In addition, the employee must receive wages at not less than a rate which will provide, for the period covered by the wage payments, wages equal to the minimum wage for all hours during such period when the employee is on duty.  Thus, if a seaman is paid a monthly salary, the total hours worked in the month, divided into the salary, must yield at least the minimum wage, regardless of the varying number of hours worked during the weeks in the month.  The same principle would apply if the wages were computed on the basis of an entire voyage or on a yearly basis.

**(b)**   It is the custom of some employers in the maritime industry to pay by the month or by the voyage but, for the convenience of the employees, to make two or more partial payments rather than a single payment covering the period involved.  For example, monthly compensation may be disbursed in two partial payments (semi-monthly), or partial payments may be made weekly on the basis of 1/52nd of the annual pay derived by multiplying 12 times the monthly salary.  Such arrangements do not affect the principles stated in FOH 30b06(a) above.

**30b07**   **Crediting a bonus or other payments to a minimum wage deficiency.**

**(a)**   A bonus or other payment which would not be considered a part of the regular rate *may not* be offset against the minimum wage due under the FLSA.  However, where such payments would be considered a part of the regular rate, they are included with other wages for purposes of determining compliance with the minimum wage provisions of the FLSA.  *See* 29 CFR 778.208 -.209.

**(b)**   Situations may be encountered where the wages paid on the regular payday are not sufficient to satisfy the minimum wage, but the employee at some subsequent date is paid additional wages (*e.g.*, a production bonus) for those workweeks included in the bonus payment period.  When the additional wages are added to the wages paid on the regular payday, the results are either that the employee has received not less than the minimum wage for each hour worked during that week or that the amount of the minimum wage deficiency has been reduced.  In such situations, a monetary violation of the minimum wage provisions exists since payment of not less than the minimum wage required by the FLSA must be made on the regular payday for each workweek (*see* FOH 30b04).  However, where the additional wages for a particular workweek have actually been paid prior to the investigation, and they are sufficient to bring the employee's wages up to the minimum wage for each hour worked during that week, no minimum wage violation shall be reported for that workweek.  If such additional wages paid prior to the investigation are not sufficient to bring the employee's earnings up to the minimum wage for each hour worked during that week, the amount of the *remaining* minimum wage deficiency shall be computed and reported.  The employer shall be advised that no less than the minimum wage must be paid on each regular payday and the employer's assurance of future compliance shall be obtained.

**30b08**   **Certain subsistence allowances not to be considered wages.**

**(a)**   Governmental subsistence allowances to veterans for vocational training or to disabled handicapped veterans, as well as allowances furnished by a state to civilians for rehabilitation, are not considered wages and may not be used by the employer to offset wages which the employee is entitled to receive under the law.

**CHAPTER 30 TABLE OF CONTENTS**

**(b)**   No part of a veteran's basic pension award or other grants made by the U.S. Department of Veterans Affairs during a veteran's training period may be considered as wages paid by the employer.

**30b09**   **(Reserved.)**

**30b10**   **State or territorial minimum wage higher than federal minimum wage.**

**(a)**   If no overtime has been worked in a workweek, no attempt shall be made to enforce a state or territorial minimum wage which is in excess of that provided in acts enforced by the WHD. However, the appropriate authorities shall be notified of the underpayment.

**(b)**   Should overtime have been worked, the regular rate of pay cannot be lower than the applicable state, territorial, or federal minimum, whichever is higher. *See* FOH 32j01.

**30b11**   **PCA minimum wage.**

All covered employees performing work on a contract which is subject to PCA must be paid the minimum wage of at least $3.35 per hour for all hours spent in such contract work. *See* 41 CFR 50-202.2.

**30b12**   **Annual salary earned in shorter period: minimum wage.**

Certain employment, such as that in schools, does not normally constitute 12 months of actual work each year. For the convenience of the employee, the annual salary earned during the duty months is often paid in equal monthly installments throughout the entire year. In determining whether the statutory minimum wage has been paid in such cases, the annual salary is considered in relation to the duty months rather than in relation to the entire year. Thus, for example, a school bus driver may receive an annual salary of $6,000 for 10 months' duty but be paid 12 equal monthly installments of $500 each. In such case, the employee is considered as being paid at the salary rate of $600 per month or $138.46 per week. Compliance with the statutory minimum wage is determined in the usual manner based on this weekly salary. *See* FOH 22b11 and FOH 32b08.

**30b13**   **Minimum wage rate applicable to public agency employees.**

Individuals employed by a public agency are subject to the FLSA minimum wage standard, including federal non-appropriated fund employees who are subject to section 6(a)(l) pursuant to section 18 of the FLSA. The WHD has no authority under the FLSA for the enforcement of the provisions of section 18; such matters are within the authority of the Office of Personnel Management. 5 USC 5341 requires the section 6(a)(1) rate for prevailing rate system (so called "blue collar" or Wage Board) federal employees.

**30b14**   **Minimum rates due domestic service employees.**

**(a)**   Domestic service employees are within FLSA coverage by virtue of section 6(f).

**(b)**   Under section 6(f)(1), an employee must receive cash wages of at least $50 in a calendar quarter from a single employer; for purposes of this test only, cash wages received from a single employer are counted.

**CHAPTER 30 TABLE OF CONTENTS**

(c)   Pursuant to section 3(m) and 29 CFR 531, the reasonable cost to an employer of board, lodging, or other facilities customarily furnished to employees is considered part of wages for purposes of the FLSA.

(d)   Employers are responsible for determining whether persons they employ in domestic service are covered under the FLSA, that is, whether they work more than 8 hours per week in the aggregate for 1 or more employers, or whether they have sufficient earnings to qualify. This may require asking the employee about domestic service with other employers.

**30b15**   **Minimum wage under section 7(k): work period.**

The work period chosen pursuant to section 7(k) (*see* 29 CFR 553.230), rather than the workweek, is to be treated as the unit for minimum wage purposes. The employee's total compensation for the work period is divided by the total number of hours worked in the work period to determine compliance with the minimum wage provisions of the FLSA, notwithstanding that in particular days or weeks within the work period the employee's earnings do not yield the minimum wage for such shorter periods.

**30c**   **PAYMENT OF WAGES**

**30c00**   **Method of payment.**

(a)   Wages may take the form of cash or facilities as defined in 29 CFR 531. An employer who claims furnished facilities (*i.e.*, meals, lodging, or other) as wages must maintain the records required in 29 CFR 516.27.

(b)   The payment of wages through direct deposit into an employee's bank account is an acceptable method of payment, provided employees have the option of receiving payment by cash or check directly from the employer. As an alternative, the employer may make arrangements for employees to cash a check drawn against the employer's payroll deposit account, if it is at a place convenient to their employment and without charge to them.

**30c01**   **Facilities furnished under section 3(m).**

(a)   Section 3(m) of the FLSA permits an employer, under conditions specified in 29 CFR 531, to count toward its minimum wage obligation, the reasonable cost of furnishing board, lodging, or other facilities which are customarily furnished to employees. Section 3(m) also authorizes the Secretary of Labor to determine the fair value of the board, lodging, or other facilities based upon average cost to the employer or to groups of employers similarly situated, or on the average value to groups of employees. Where reasonable cost under section 3(m) has been established by an employer and appears to be excessive in relation to the facilities furnished, it will be necessary to ascertain whether the fair value of the facilities in question is lower than the reasonable cost. If so, the employer must use the fair value rather than the reasonable cost in determining its wage obligation. In no case will the fair value be utilized where it is greater than the reasonable cost.

(b)   The cost of board, lodging, or other facilities shall not be included as wages to the extent excluded therefrom under the terms of a bona fide collective bargaining agreement applicable to the particular employee. In most cases, a determination whether such an exclusion exists will be based upon the written provisions of the collective bargaining agreement.

**CHAPTER 30 TABLE OF CONTENTS**

    **(c)**    Employees must receive the benefit of the facility for which the employer is taking a wage credit.  Moreover, the reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's regular rate of pay for the purpose of computing overtime pay.

**30c02**    **Customarily furnished.**

    **(a)**    The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where customarily furnished to the employee.  This requirement is satisfied if either the facilities are furnished regularly by the employer to its employees or if the same or similar facilities are customarily furnished by other employers engaged in the same or similar trade, business, or occupation in the same or similar communities.  However, customarily furnished *does not* require establishing an industry-wide practice with regard to charges being made for facilities furnished to employees.

    **(b)**    Facilities furnished in violation of any federal, state, or local law, ordinance, or prohibition will not be considered facilities customarily furnished (*e.g.*, housing that has been denied an occupancy permit, or which, after inspection, results in MSPA civil money penalties (CMPs)).  Any question as to whether facilities are furnished in violation of any law should be referred to the Assistant Administrator for Policy for resolution.  Any such referral should include a detailed discussion of the facts and a copy of the applicable law.

**30c03**    **Primarily for the benefit of the employee.**

    **(a)**    The crediting by an employer of facilities furnished to employees as wages will depend on whether such facilities are furnished primarily for the benefit or convenience of the employee, as determined by the WHD.  Where the primary benefit of such facilities is to the employer's business interest, credit will be denied.  The following are commonly viewed as furnished primarily for the benefit or convenience of employees:

        (1)    *Meals*

        Meals furnished by the employer are regarded as primarily for the benefit and convenience of the employees.  This rule does not apply, however, to the meal expenses incurred by an employee while traveling away from home on the employer's business.  *See* 29 CFR 778.217(b)(3).

        (2)    *Lodging*

        Lodging, like meals, is ordinarily considered for the benefit and convenience of the employee.  Circumstances may exist, however, where housing is of little benefit to employees, as where an employer requires an employee to live on the employer's premises to meet some need of the employer, or where the employee must travel away from home to further the employer's business.  In such circumstances, the housing will be considered as primarily benefiting the employer.  (Note: while it may be to the employer's advantage to provide such facilities at or near the worksite, courts have consistently taken the view that the employer may take a wage credit when the facilities are primarily for the benefit or convenience of the employee.)

        (3)    *Transportation*

**CHAPTER 30 TABLE OF CONTENTS**

a. Transportation furnished employees between their homes and work (*i.e.*, normal, daily home-to-work travel) where the travel time does not constitute hours worked is generally an "other facility."  However, transportation which is an incident of or necessary to the employment is not an "other facility." *See* FOH 30c13 regarding transportation of migrant and seasonal agricultural workers.

b. Transportation furnished for normal home to work travel from a voluntary assembly point to a job site and vice versa where the time does not constitute hours of work and the transportation is primarily for the benefit of the employees is an "other facility."  In contrast, travel to distant or remote job sites is normally for the employer's benefit and does not qualify as an "other facility."

c. Cars furnished by an employer to employees primarily for the personal transportation use of the employees and not primarily for company business are facilities for which a wage credit may be claimed by the employer.  *See* FOH 30c11 regarding demonstrators used by automobile salespersons.

(4) *Merchandise*

Goods or merchandise, such as clothing and appliances, may be considered "other facilities" under section 3(m) and 29 CFR 531.  Only the actual cost to the employer (not necessarily the retail cost) may be taken as a wage credit.

(5) *Tuition expenses*

Tuition furnished to an employee for courses or training for the individual's own personal benefit is a bona fide facility for which a wage credit may be taken, *unless* the training is related to employment or is required to retain employment.

(6) *Child care*

Child care facilities which are furnished by an employer are bona fide facilities for which a wage credit may be taken.

**30c04    Primarily for the benefit of the employer.**

(a) The following are examples of items not considered bona fide other facilities under section 3(m) and 29 CFR 531, because they are provided primarily for the benefit or convenience of the employer:

(1) Electric power used for commercial production in the interest of the employer.

(2) Telephones used for business purposes.

(3) Taxes and insurance on the employer's building which is not used as lodging furnished to the employees.

(4) Medical services and hospitalization which the employer is obligated to furnish under workers' compensation laws or similar federal, state or local laws.

**CHAPTER 30 TABLE OF CONTENTS**

(5)     Rental of uniforms where the wearing of a uniform is required by law, the employer, or by the nature of the work.

(6)     Business-related travel expenses. *See* 29 CFR 778.217.

(7)     Necessary tools or uniforms used in the employee's work.

**30c05     Reasonable cost of facilities.**

(a)     Reasonable cost cannot exceed the actual cost to the employer.  In deciding whether wage credits for facilities are in amounts permissible under section 3(m) and 29 CFR 531, experience and judgment must be used by WHIs and district directors.  It should be kept in mind that the test in 29 CFR 531.3 is reasonable cost rather than market value or comparable prices.  Reasonable cost does not include a profit to the employer.  The cost of furnishing lodging and/or other facilities must be established based upon available records.  The employer has the burden of establishing such cost and must maintain adequate records to support a determination, as required by 29 CFR 516.27.  Bills, purchase orders, and cash register tapes may be appropriate for such purpose.  A comparison of wage credits for comparable facilities furnished by other employers in the area may also provide guidance.

(b)     The method used by an employer for determining reasonable cost must be based on good accounting practices.  Good accounting practices do not include accounting practices which are not accepted by the Internal Revenue Service (IRS).

(c)     Furthermore, an employer may not take a credit where no cost is incurred.  For example, when a meal is made available to an employee, but is not consumed, and subsequently is retained in the employer's inventory for service to customers, no credit may be taken.

**30c06     Examples of determining reasonable cost.**

(a)     **Meals: food service establishments**

(1)     The reasonable cost of meals furnished by a food service establishment to its employees includes only the actual cost to the employer of the food, its preparation, and related supplies.  Salary or wage costs, as distinguished from material or supply costs, may be claimed only to the extent that such salary or wage costs are shown to be directly attributable to the cost of providing meals to employees.  If food preparation/serving employees of a food service establishment would be paid the same rate of pay even if meals were not provided to the employees of the establishment, their wage costs cannot be included in determining reasonable cost.  Conversely, if it were necessary to hire extra personnel or pay higher wages to existing employees in order for them to assist in furnishing meals to employees, such extra expense would be a legitimate cost which could be included in determining the reasonable cost of meals.

(2)     Costs which a food service employer incurs regardless of whether the employees were furnished meals may not be included in determining the reasonable cost.  In a food service establishment, items such as employee insurance, payroll taxes, menus, decorations, other operating supplies, laundry, telephone, maintenance services, advertising and promotion, building and equipment rental, licenses and taxes, insurance and depreciation, franchise cost, and general administrative costs are a part

**CHAPTER 30 TABLE OF CONTENTS**

of the overall cost of the operation of the employer's business establishment which may not be charged to the reasonable cost of employees' meals.

**(b)**     **Meals: non-food service establishments**

Determination of the reasonable cost of meals furnished to employees of an establishment which is not a food service establishment involves different criteria for expenses for which an employer may take credit. For example, where meals are provided to employees of a non-food service establishment by a catering service and there are no special facilities wherein meals are consumed, the actual cost of the catering service, assuming no rebate to the employer, would be the reasonable cost. In more complex situations where dining areas are provided, the factors discussed in FOH 30c06(a) above must be considered in making a determination of the reasonable cost of meals furnished to employees of a non-food service establishment.

**(c)**     **Lodging**

Employers taking credit for housing as part of wages must show that the amounts charged are not more than the actual cost to the employer. *See* 29 CFR 531.3(a). However, if the actual cost of providing lodging is more than its established rental value, the rental value shall be deemed to be the reasonable cost of lodging. *See* FOH 30c07. The actual cost to the employer generally involves the following factors:

(1)     *Adequate depreciation*

29 CFR 531.3(c) allows an employer to include adequate depreciation as an element of cost. Depreciation is a concept primarily used in and extensively regulated under the tax laws. Depreciation is applicable to certain capital goods (*e.g.*, buildings, vehicles, machines, etc.). It is never applicable to land. For purposes of 29 CFR 531, "adequate depreciation" is not more than the amount of depreciation actually claimed and allowed under the tax laws for the property in question for the period in question. It should be noted that the amount of depreciation allowable on any property may vary from year to year. If the employer declines to provide tax returns or similar evidence as to the claim and allowance of depreciation under the tax laws, no allowance will be made under 29 CFR 531.3(c).

a.     For tax purposes, depreciation might be claimed under several line items for property involved in the furnishing of a facility. For example, an employer furnishing lodging might properly claim the depreciation of the building at one place; the depreciation of the beds at another; and the depreciation of linens at another. The addition of several such items of depreciation could be appropriate. Similarly, an employer might claim, in a single line item, depreciation on a greater piece of property than is involved in furnishing the facility in question. For example, the owner of a 20 unit motel who furnishes one unit for the lodging of an employee might claim depreciation on the entire motel building as a single line item. Under these circumstances, pro rata allocation of the claimed depreciation would be required. In the example, assuming no complications (*e.g.*, no part of building used for other proposes; all units equal size, etc.), the allowable depreciation would be $\frac{1}{20}$ = 5 percent of the total depreciation taken.

**CHAPTER 30 TABLE OF CONTENTS**

     b.     For tax purposes, depreciation is claimed by the year and can be prorated as appropriate.

(2)    *Capital invested*

The computation of "a reasonable allowance (not more than 5 ½ percent) for interest on the depreciated amount of capital invested by the employer" (as referred to in 29 CFR 531.3(c)) is made as follows:

*Step 1*: An amount, V, represents the total depreciable value of the property to the employer. *See* FOH 30c06(c)(1) above. This number is not derived from or necessarily related to fair market value. Ordinarily, this will be the purchase price plus the cost of capital improvements. It should be noted that no part of the cost of land is included.

*Step 2*: Compute the amount, A, by which the depreciable value, V, exceeds the depreciation already taken (or which might have been taken) as a tax deduction (*i.e.*, subtract total allowable depreciation to date from V, the result is A.) This number is required to be reported on the employer's tax returns. If the employer declines to make tax returns available for verification, then A shall be deemed to be 0. If A = 0, no further computation is required; the allowance for this part is 0.

*Step 3*: Determine the amount, E, of the employer's equity in V. This would ordinarily be the sum of the down payment, portions of mortgage payments applied toward principal, and the cash contribution toward any capital improvements included in V.

*Step 4*: Compute (E divided by V) times (A). Conceptually, this is the portion of the equity which has not been returned to the employer through depreciation. A reasonable allowance (*i.e.*, a return on investment of up to 5 ½ percent of this number) may be included in the employer's cost.

**(d)**    **Cost of operation**

(1)    Annual costs of operation incurred in furnishing lodging facilities must be considered in making reasonable cost determinations: these include interest on loans to purchase, maintain, or improve the lodging facility, taxes, repairs and maintenance, insurance, and utilities (*e.g.*, electricity, water, sewers, garbage collection, fuel oil, and so forth.) Repair and maintenance expenses refer to the costs which are not included under capital improvements. Only the portion of those costs which are directly related to the lodging facility used by the employee(s) may be taken into account in determining the actual cost of providing the lodging. As an example, the cost of property insurance should be prorated in proportion to the space of the lodging actually used by the employee(s).

(2)    When the employer leases a property from another person, the amount of rent paid by the employer to the other person is considered part of the reasonable cost provided that the rent charged provides no profit for the employer, directly or indirectly. As an example, if an employer pays a higher rental charge with the promise of a rebate from the property owner as an encouragement to lease certain lodging facilities, such higher rent payment may not be used as a component of the reasonable cost for

**CHAPTER 30 TABLE OF CONTENTS**

leasing the lodging facilities.  The allowable reasonable cost amount would be the rent paid by the employer minus the amount of rebate promised and received by the employer from the property owner.

(3)    When determining the weekly reasonable cost of a lodging facility which may be claimed as a wage credit, the sum of the annual costs (as determined in FOH 30c06(d)(1) -(2) above) is divided by the number of weeks during which the lodging facility is used for occupancy.  Where the facility is used for other purposes, in addition to lodging, the annual cost is first prorated among the uses.  Once the weekly reasonable cost amount has been determined, it should be divided by the actual number of occupants in the lodging facility where each is provided an equal amount of living area.  However, if the living areas within the lodging facility are not equal in size, the weekly reasonable cost amount should be divided by the square feet of the dwelling.  The wage credit which may be claimed per employee in such cases shall be based upon the number of square feet occupied by the employee and /or that individual's family.

## 30c07    Fair value of facilities.

In those cases where cost to the employer is not a true measure of the value of the facilities to the employees, it may be appropriate to apply the fair value provisions of section 3(m).  "Fair value" is not synonymous with "reasonable cost."  The fair value of a facility allowable under section 3(m) as wages may be utilized in lieu of the actual measure of cost in determining the wages paid to any employee.  Such a determination is authorized for defined classes of employees and in defined areas based on average cost or average value.  To obtain a determination of fair value, the facts specified in 29 CFR 531.4 and .5 should be obtained and the issues submitted to the Assistant Administrator for Policy.

## 30c08    Formal determinations of "reasonable cost" and "fair value" of facilities.

29 CFR 531.4 -.5 set forth the procedures to be followed in making a formal determination of "reasonable cost" or "fair value" as these terms are used in section 3(m), whether initiated by the WHD Administrator or any interested person.  When such a request is made, the petitioner should be informed of the procedures and instructed to forward the request and required information to the WHD Administrator.

## 30c09    Facilities: voluntary and un-coerced.

(a)    An employer may credit against cash wages owed employees the lesser of reasonable cost or fair value, in accordance with 29 CFR 531 and the principles in FOH 30c01 -08, of facilities regularly provided to employees.

(b)    29 CFR 531.30 provides that an employee's acceptance of facilities must be voluntary and uncoerced.  The "voluntary and un-coerced" provision has been rejected in several court of appeals and district court decisions regarding *meals* provided to employees.  The WHD no longer enforces the "voluntary" provision with respect to *meals*.  Therefore, where an employee is required to accept a meal provided by the employer as a condition of employment, the WHD will take no enforcement action, provided that the employer takes credit for no more than the actual cost incurred.  *See* FOH 30c05 and 06.

## 30c10    Voluntary assignment of wages, loans, and advances.

**CHAPTER 30 TABLE OF CONTENTS**

(a)    Although sums paid by an employer under voluntary assignment of an employee to a third party for the benefit of the employee are not bona fide facilities, they may be deducted from the employee's wages provided the employer does not directly or indirectly benefit. Deductions for administrative or bookkeeping expenses incurred by the employer in connection with such payments, however, are illegal to the extent that they cut into the minimum wage or overtime pay due under the FLSA.

(b)    While loans and cash advances made by an employer are not facilities the principal may be deducted from the employee's wages even where such a deduction cuts into the minimum wage or overtime due under the FLSA. Deductions for interest or administrative costs on the loan or advance are illegal to the extent that they cut into the minimum wage or overtime pay. The existence of the loan or advance shall be verified to the extent possible.

(c)    In the situation where an employee is granted vacation pay prior to that individual's anniversary date, or the established date of entitlement, with the understanding that such pay constitutes an advance of pay and the employee quits or is terminated before the entitlement date, the employer may recoup the advanced vacation pay, even where such recoupment cuts into the minimum wage or overtime pay required under the FLSA.

**30c11    Demonstrators: automobile salespersons.**

Transportation which the employer provides to an employee is *not* furnished as a facility for purposes of section 3(m) if it is an incident of and necessary to the employment or if the transportation is furnished for travel by the employee which constitutes hours worked compensable under the FLSA (*see* 29 CFR 531.32(a) and (c)). Demonstrators which are provided to automobile salespersons for their personal use as a form of advertising are not primarily for the benefit of employees and do not constitute wages under the FLSA. This is true notwithstanding the fact that IRS may require employers to treat as taxable income any portion of the benefit received by the employee.

**30c12    Cost of furnishing and maintaining uniforms.**

(a)    **Where uniforms are required by law, employer, or type of work**

If the wearing of clean uniforms is required by law, by the employer, or by the nature of the work, the financial burden of furnishing or maintaining these clean uniforms may not be imposed upon the employees if to do so would reduce their wages below the minimum wage (*see* 29 CFR 531.3(d)(2), 29 CFR 531.32(c), and 29 CFR 531.35).

(b)    **Cost of and time spent in maintaining uniforms**

(1)    Where employee uniforms require ironing, drycleaning, daily washing, commercial laundering, or other special treatment, because of heavy soiling in work usage or in order to meet cleanliness or appearance standards set by law, by an employer, or by the nature of the work, the employees must, absent documentation of the greater or lesser cost, be reimbursed for uniform maintenance costs which reduce their wages below the minimum wage in accordance with the amounts set forth in FOH 30c12(b)(3) below.

(2)    However, in those instances where uniforms are

**CHAPTER 30 TABLE OF CONTENTS**

    a.        made of "wash and wear" materials,

    b.        may be routinely washed and dried with other personal garments, and

    c.        do not require ironing or any other special treatment such as drycleaning, daily washing, or commercial laundering,

the WHD will not require that employees be reimbursed for uniform maintenance costs. This position is not applicable where daily washing is required and the employer furnishes or reimburses the employee for a single uniform.

(3)    For enforcement purposes, the WHD will accept the payment to the employee of $3.35 per week or 67 cents per day as satisfying this requirement.

(4)    Since the uniform cost would presumably be the same for any day, regardless of the number of hours worked, allocating this cost on an hourly basis should be avoided except as in FOH 30c12(d)(2) below. However, if an employer pays on a cents-per-hour basis, no monetary violation will exist if the employees receive the full daily and/or weekly amounts in each workweek as indicated in FOH 30c12(b)(3) above.

(5)    Where this enforcement position is followed, the time spent in washing uniforms will not be considered hours worked for either minimum wage or overtime pay purposes.

(6)    Employers or employees are free to establish actual costs, as indicated in FOH 30c12(d) below.

**(c)**    **Employee chooses not to use employer's free laundry service**

Where an employer gives notice to employees that the employer will launder or clean all uniforms required to be worn by employees, free of any charge, and all or some employees elect not to avail themselves of such service, the employer will not be required to reimburse the employees for expenses incurred by them for laundering or cleaning their uniforms on their own.

**(d)**    **Other standards for determination of cost**

(1)    The enforcement position in FOH 30c12(b)(3) above does not prohibit the determination of the cost of laundering or maintaining uniforms from being made on some other basis, so long as the actual cost does not cut into required minimum wage or overtime compensation. For example, where an employer contracts with a laundry or rental service and in turn charges the employees or requires the employees to bear the cost directly, the actual cost may be used if reasonable.

(2)    Similarly, where a specific amount has been negotiated under a bona fide collective bargaining agreement (*e.g.*, 5 cents for each hour worked), this amount may be used, if reasonable.

(3)    Where the employer does not use the flat daily or weekly basis set forth in FOH 30c12(b)(3) above, it is essential that the WHI determine and document in the case file the actual cost incurred by the employee.

**CHAPTER 30 TABLE OF CONTENTS**

(4)    In preparing a case for settlement or for litigation, the enforcement position in FOH 30c12(b)(3) cannot be relied upon as a basis for action where the employer uses another basis for reimbursing employees for uniform maintenance expenses.

**(e)    Cost of purchasing and repurchasing uniforms**

(1)    When an employee is required to purchase a uniform, the employee must be reimbursed for the cost of the uniform to the extent that the expense cuts into the minimum wage or overtime compensation required by the FLSA/PCA/SCA/CWHSSA.

(2)    This reimbursement must be made promptly on the regular payday for the workweek in which the expense was incurred and may not be spread over the life of the garment.

(3)    Further, employers may not avoid such costs by requiring employees to obtain uniforms before starting the job. In such a case, the cost of the uniform is, in effect, an advance of an expense that must be borne by the employer.

(4)    On the other hand, where an employee already has a uniform which has been paid for by the firm, and the employee is paid at least the minimum wage and proper overtime and there is a clear understanding between the employer and the employee that so much per hour will be paid in addition to the minimum wage for the sole purpose of *replacing* an existing uniform, and, in fact, the amount so paid is sufficient to purchase replacement uniforms when worn out or no longer serviceable, no violation would occur.

**(f)    Definition of "uniforms"**

(1)    Although there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms for purposes of section 3(m), the following principles are applicable:

a.    If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress, the garments chosen by the employees would not be considered to be uniforms.

b.    On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work (*e.g.*, where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality), such clothing would be considered uniforms.

c.    Other examples would include uniforms required to be worn by guards, cleaning and culinary personnel, and hospital and nursing home personnel.

**(g)    Employee elects to buy additional uniforms in excess of number required**

Where an employer supplies, free of charge, or reimburses the employees for a sufficient number of uniforms required to be worn, and all or some employees elect to purchase additional uniforms in excess of the number required, the employer will not be required to

**CHAPTER 30 TABLE OF CONTENTS**

reimburse the employees for costs incurred in purchasing uniforms in excess of the required number.

**(h)**     For the application of these principles on uniforms under SCA, *see* FOH 14f01 and 29 CFR 4.168(b).

**30c13**   **Deductions from wages of migrant and seasonal agricultural workers.**

**(a)**     The reasonable cost or fair value of facilities furnished a migrant or seasonal agricultural worker are generally creditable as wages. However, *see* FOH 30c03. Examples of facilities for which deductions or credits are generally permissible include:

> **(1)**   Meals and beverages actually furnished to the worker.

> **(2)**   Off-the-job insurance authorized by the worker.

> **(3)**   Canteen articles purchased by the worker, but not cigarettes or alcoholic beverages sold to the worker, if such sales are determined to be unlawful by appropriate local law enforcement authorities. Apparent violations of state or local licensing laws should be referred promptly to the appropriate enforcement authorities. *See* FOH 52a09, FOH 53g03 and FOH 54: WH-124. Prior to disallowing a deduction or wage credit based upon action by a state or local authority concerning illegal sales, the matter should be discussed through joint review committee (JRC) procedures.

> **(4)**   Lodging used by a worker, including utility costs, unless required to be provided free of charge pursuant to the employment contract or applicable law. However, no credit may be taken nor may any charge be made where:

>> a.    workers are required to live on the premises as a condition of employment or where for other reasons the housing primarily benefits the employer rather than the employee, or

>> b.    the housing has been denied an occupancy permit because of failure to meet substantive safety and health standards as determined by an inspection by any agency, or

>> c.    safety and health violations have been found for which MSPA CMPs are being assessed or violations of substantive safety and health standards have been found by Occupational Safety and Health Administration (OSHA), a state, or county agency. If the violations are corrected, a charge may be made or a credit taken for such lodging only during the period of compliance.

**(b)**     DOL Employment and Training Administration (ETA) regulations require that workers placed pursuant to a job service clearance order who are unable to return daily to their permanent residence must receive housing as a term and condition of their employment. Such workers (and accompanying family members) must receive housing at no cost or public housing which meets the federal and state standards (*see* 20 CFR 653.501(d)(2)(xv)). Where it appears that a deduction has been made or a wage credit taken in apparent violation of ETA regulations, the matter should be reviewed through JRC before disallowing the deduction or wage credit.

**CHAPTER 30 TABLE OF CONTENTS**

(c)     An employer who makes deductions from the wages of workers for board, lodging or other facilities or who furnishes such facilities to workers as additions to wages is required to maintain records substantiating the cost of such facilities in accordance with 29 CFR 516.27.

(d)     In *Marshall v. Glassboro Service Association. Inc.*, the Third Circuit affirmed the district court's judgment that money advanced to farm workers for transportation costs from Puerto Rico to the mainland was primarily for the benefit of the employer and therefore could not be deducted from the workers' wages to the extent it reduced the wages below the statutory minimum. The court similarly upheld the district court's conclusion that the FLSA prohibits the employer from taking a wage credit for facilities excluded from wages by the terms of a labor agreement which is the functional equivalent of a collective-bargaining agreement. The U.S. Supreme Court denied review. The Court of Appeals also ruled that, regardless of the manner or method by which the employer sought to pass on to its employees certain transportation costs, where the effect was to bring the wage rate below the statutory minimum, such practice was unlawful.

(e)     It is the WHD position that no deduction that cuts into the minimum wage may be made for transportation of migrant workers from the point of hire and return to that point. This is so since in virtually all situations the transportation is primarily for the benefit of the employer and transportation costs are an incident of and necessary to the employment of migrant workers. Where an employer advances money to migrant workers to cover transportation expenses from the point of hire to a worksite, the employer may not recoup such advances when to do so results in a worker receiving less than the statutory minimum wage. Such remains the case even though the transportation costs so recovered are accumulated and subsequently returned to the worker at some specified time during the season or upon the worker's return to the point of hire, after the individual has worked a full season or specified portion thereof. Further, such transportation costs may not be included as part of an employer's cost of furnishing board, lodging, or other facilities.

(f)     Farm labor contractors and agricultural associations often provide daily transportation to both migrant and seasonal farmworkers as an integral part of their business of supplying agricultural workers to those who use their farm labor contracting services. Agricultural employers also transport their own workers under similar circumstances. Such daily transportation is provided to assure that sufficient workers will be available at the required time and place since the workers being transported are needed to work upon perishable commodities. Their availability for employment often depends upon being provided transportation. Where alternative transportation is readily available which the workers are permitted to use (*i.e.*, personal auto or carpool arrangements) and where they know the location of the place where they are to work, the reasonable cost to an employer (or fair value, whichever is less) in providing transportation may be creditable towards wages.

In contrast, where furnishing transportation to workers is primarily for the benefit and convenience of the employer, and is necessary to and an incident of the employment, it is not considered a facility within the meaning of section 3(m). *See* 29 CFR 531.32(a) and 29 CFR 531.32(c). Accordingly, it is the WHD position that:

(1)     Where the transportation is an incident of and necessary to the employment, it is for the benefit of the employer and no deduction may be made for the transportation of migrant or seasonal farmworkers that cuts into the minimum wage. For example, transportation of migrant or seasonal farmworkers from the pickup point and return

to that point, or from the temporary labor camp to the fields or for the return trip is transportation that is an incident of and necessary to the employment.

(2)   Where the transportation is not incidental to the employment, it is for the worker's benefit and deductions may be made which cut into the minimum wage, provided that if such transportation is subject to MSPA it must be furnished in vehicles which meet all substantive federal and state motor vehicle safety and insurance standards. Transportation which is not incidental to the employment (and thus deductible) includes:

    a.   the transportation of migrant workers to conduct personal business, such as trips from the rural temporary labor camp to a laundry, post office, and grocery store; and

    b.   the daily transportation of migrant and seasonal farmworkers, where alternative transportation is readily available, which the workers have the option to use, and they know where to report to work but choose to use the employer's transportation, provided that the transportation is not required to be furnished by law or regulation.

### 30c14   Employees' taxes paid by employer may constitute wages.

(a)   Pursuant to 29 CFR 531.38, taxes which are assessed against an employee and which are collected by the employer and paid to the appropriate government agency may constitute wages.

(b)   The same principle applies to taxes which, although owed by the employee, are paid by the employer. Thus, an employer may pay an employee's share of social security (*i.e.*, Federal Insurance Contributions Act (FICA)) taxes. Such payment constitutes wages and may therefore be credited toward the minimum wage and overtime requirements.

(1)   Where an employee receives the minimum wage of $3.35, the employer and the employee must each make a FICA contribution of 24 cents an hour ($3.35 x .0715 = .2395). 7.15 percent is the current FICA rate which is, of course, subject to change.

Scenario:

| Description | Calculation |
| --- | --- |
| Employer pays employee | $3.11 |
| Employee pays FICA | +$0.24 |
| Total wages | $3.35 |
| Payroll costs | |
| Employer pays employee | $3.11 |
| Employee pays FICA | $0.24 |

**CHAPTER 30 TABLE OF CONTENTS**

| | | |
|---|---|---|
| Employer pays FICA | +$0.24 | |
| Total payroll costs | $3.59 | |

(2) Where the employer pays the employee's FICA contribution, a smaller direct wage payment to the employee would normally be made. Because the amount of the direct payment to the employee is reduced, the employer's FICA obligation, which is a percentage of that amount, would also be reduced. Since the employee and the employer contribute an equal percentage of FICA, the employee's obligation (which the employer is assuming) has also been reduced. By reducing FICA expenses, this practice permits an employer to reduce payroll costs without reducing an employee's net post-FICA wages.

   a. An employer may pay an employee $3.13 in direct wages and still meet the minimum wage obligation (*$3.35* - $3.13)
   1.0715

   Scenario:

| Description | Calculation |
|---|---|
| Employer pays employee | $3.13 |
| Employee pays FICA for employee | +$0.22 |
| Total wages | $3.35 |
| Payroll costs | |
| Employer pays employee | $3.13 |
| Employee pays FICA for employee | $0.22 |
| Employer pays own FICA | +$0.22 |
| Total payroll costs | $3.57 |

   b. Where this practice is utilized, the employee's direct wages and the FICA contribution paid on behalf of the employee by the employer must meet the statutory minimum wage.

   c. The same principle is applied when crediting the FICA contributions to overtime compensation due. However, FICA contributions paid on the employee's behalf by the employer must be included in the regular rate of pay for overtime purposes.

**30c15   Car expenses: employee's use of personal car on employer's business.**

In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

**CHAPTER 30 TABLE OF CONTENTS**

(a)     *As an enforcement policy*, the IRS *standard business mileage rate* found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.  The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees.  In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rate basis.

(b)     The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes *whether or not* the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

**30c16**     **Deductions in non-overtime weeks.**

Deductions for article that do not qualify as "board, lodging, or other facilities" under FLSA section 3(m), such as tools, equipment, cash register shortages, and other similar items, may be made in non-overtime workweeks (*i.e.,* weeks of 40 hours or less, and weeks in which statutory overtime does not apply) *provided* the employee continues to receive, after the deductions are made, any required minimum wage, free and clear, for all compensable hours worked in the week (*i.e.,* average hourly earnings for the workweek after the deductions are not less than the highest applicable minimum wage enforced by the WHD).  *See* 29 CFR 531.35 and .36.).  Deductions for non-3(m) items that cut into the highest applicable minimum wage enforced by the WHD are illegal in a non-overtime workweek unless the law establishing that minimum wage (*e.g.,* the Davis-Bacon and Related Acts (DBRA), SCA, H-2A, H-1B, *etc.*) allows the particular deduction from wages.  *Note*: if a MSPA contract specifically discloses that the employer will make certain particularized deductions not otherwise prohibited by other law, those deductions would be permitted.  For example, if a MSPA-covered employer disclosed a wage rate of $8.00 per hour and fully disclosed in writing at the time of recruitment that $1.50 per hour would be deducted for non-3(m) items, and the deductions are otherwise legal and not prohibited by other applicable laws, then those fully-disclosed deductions are permitted to reduce the hourly wage to below the $8.00 per hour contracted promised wage (*i.e.,* to $6.50 per hour).  Furthermore, various other federal, state, and local laws regulate payment of wages, prohibit or restrict payment of wages in services or facilities, outlaw kickbacks, restrain assignments, and otherwise govern the calculation of wages and frequency and manner of paying them.  Nothing in the FLSA or other WH-administered statutes, regulations, or interpretations overrides or nullifies any higher standards or more stringent provisions of these other laws.  *See* 29 CFR 531.26.  (WHD enforcement in *non*-overtime workweeks is limited to the highest applicable minimum wage enforced by the WHD, which includes WHD-enforced prevailing wages when they apply (*e.g.,* DBRA, SCA, H-1B, *etc.*).  If no overtime has been worked in a particular week, the WHD will not enforce any other state of local minimum wage higher than the highest minimum wage applicable under the laws enforced by the WHD; the WHI will advise the employer of the apparent violation of such other higher minimum wage standards and notify the appropriate authorities of the employer's deductions policies and possible underpayments that may have occurred.  *See* FOH 30b10.  Permissible deductions in an overtime week are discussed in FOH 32j08.

**30d**     **TIPS AND TIPPED EMPLOYEES**

[12/15/2016]

**CHAPTER 30 TABLE OF CONTENTS**

**30d00**      **General.**

(a)      Tipped employees are subject to the section 6(a)(1) minimum wage.  Section 3(m) of the
FLSA (*see* 29 USC 203(m)) permits an employer to claim a partial credit against its
minimum wage obligation to a tipped employee based on tips received by the employee.
This credit against wages due is called a tip credit.  29 CFR 531 contains further guidance on
this topic.  The cash wage required under section 3(m), when an employer takes a tip credit,
is not a subminimum wage.  Tipped employees are entitled to the full section 6(a)(1)
minimum wage, which may be comprised of both a direct or cash wage and a tip credit as set
forth in section 3(m).  The terms "direct wage" and "cash wage" are used interchangeably in
the FOH when discussing the tip credit.

(b)      Section 3(m) of the FLSA makes clear the intent of Congress to place on the employer the
burden of proving the amount of tips received by tipped employees and the amount of tip
credit, if any, which the employer may claim against its minimum wage obligations.  The
employer may not claim a tip credit greater than the tips received.  If the direct (or cash)
wage paid plus the tips received is less than the section 6(a)(1) minimum wage, the employer is
required to pay the balance on the regular pay day for the pay period so that the employee
receives at least the minimum wage with the combination of wages and tips.

(c)      The language of section 3(m) was amended by the Small Business Job Protection Act of
1996.  Effective 08/20/1996, section 3(m) provides:

"In determining the wage an employer is required to pay a tipped employee, the amount paid
such employee by the employee's employer shall be an amount equal to – (1) the cash wage
paid such employee which for purposes of such determination shall not be less than the cash
wage required to be paid such an employee on August 20, 1996; and (2) an additional amount
on account of the tips received by such employee which amount is equal to the difference
between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of
this title.  The additional amount on account of tips may not exceed the value of the tips
actually received by an employee.  The preceding two sentences shall not apply with respect
to any tipped employee unless such employee has been informed by the employer of the
provisions of this subsection, and all tips received by such employee have been retained by
the employee, except that this subsection shall not be construed to prohibit the pooling of tips
among employees who customarily and regularly receive tips."

The required cash wage to be paid a tipped employee on 08/20/1996 was not less than $2.13
per hour.

(d)      **FLSA 3(m) tip credit**

The "FLSA 3(m) tip credit" is the tip credit an employer is permitted to claim against its
minimum wage obligations as determined by section 3(m).  Under section 3(m), the sum of
the cash wage paid and the FLSA 3(m) tip credit will always equal the section 6(a)(1)
minimum wage.

(e)      **Tip credit principles**

As amended in 1996, section 3(m) limits the tip credit an employer may claim against its
minimum wage obligations to "the difference between the wage specified in paragraph (1)
and the wage in effect under section 206(a)(1)."  Thus, the FLSA 3(m) tip credit is capped at

the difference between the section 6(a)(1) wage and the direct or cash wage paid. The direct wage paid may not be less than the cash wage required to be paid a tipped employee on 08/20/1996, which was $2.13 per hour. Under section 3(m), the direct wage paid may be comprised of cash, board, lodging, or facilities in accordance with 29 CFR 531 and FOH 30c. Because the FLSA limits the section 3(m) tip credit to the difference between the cash wage paid and the federal minimum wage, for purposes of the FLSA, employees who are paid using the 3(m) tip credit are paid the minimum wage for each hour they work in a non-overtime workweek.

29 CFR 531.50

(1)     *Definition of tipped employee*

A "tipped employee," as defined in section 3(t) of the FLSA (*see* 29 USC 203(t)), is any employee engaged in an occupation in which the individual customarily and regularly receives more than $30.00 a month in tips.

Although some states define "tipped employee" differently, the definition in section 3(t) is used for FLSA enforcement purposes.

Tip provisions apply on an individual employee basis. An employer may claim the tip credit for some employees even though the employer cannot meet the requirements for others.

29 CFR 531.50(b)

(2)     *Tips are the property of the employee*

A tip is a sum presented by a customer to the tipped employee as a gift or gratuity in recognition of some service performed for him or her. *See* 29 CFR 531.52. The only ways in which an employer may use its employee's tips are through a valid tip pool, as defined in FOH 30d04, or as a partial wage credit. *See* FOH 30d00(d) and FOH 32j18(h). These restrictions on an employer's use of its employees' tips apply even when the employer has not taken a tip credit; in such a case, the employer may only use its employee's tips in furtherance of a valid tip pool.

(3)     *Notice requirement*

An employer cannot take an FLSA 3(m) tip credit unless it informs the tipped employee of the provisions of section 3(m) prior to taking a tip credit. Where an employer does not inform the tipped employee of the use of the tip credit, the full minimum wage is due. *See* FOH 30d01(b).

29 CFR 531.59(b) states that the employer must inform its tipped employees, in advance of taking the FLSA 3(m) tip credit, of the following requirements in section 3(m):

a.     The amount of the cash wage that is to be paid to the tipped employee by the employer, which may not be less than $2.13 per hour

**CHAPTER 30 TABLE OF CONTENTS**

b.    The additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer

c.    The amount of the tip credit claimed may not exceed the value of the tips actually received by the employee

d.    All tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips

e.    An employer may not claim a tip credit for any employee who has not been informed of these provisions

The WH-1088: Employee Rights under the FLSA (minimum wage poster) alone is not sufficient to meet these regulatory requirements.  *See* 29 CFR 531.59(b) and WHD Opinion Letter FLSA (January 21, 1997).

(4)    *Deductions*

a.    <u>Non-3(m) deductions when employer claims an FLSA 3(m) tip credit</u>

When the employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation; however, for overtime hours the employee's regular rate may exceed the FLSA minimum wage.  Because section 3(m) caps a tipped employee's hourly wage in a non-overtime workweek at the minimum wage, an employer that claims an FLSA 3(m) tip credit may not take deductions for non-3(m) costs (*e.g.*, walkouts, cash register shortages, breakage, cost of uniforms, etc.), because any such deduction would reduce the tipped employee's wages below the minimum wage.  Even when an employer pays more than the $2.13 minimum direct wage, the employee will have only received the minimum wage, and non-3(m) deductions cannot be made.  For example, if an employer pays a direct wage of $3.13, the FLSA 3(m) tip credit will be $4.12 ($7.25 - $3.13 = $4.12), and the employee will have only received the minimum wage for all non-overtime hours.

b.    <u>Non-3(m) deductions when the employer does not claim an FLSA 3(m) tip credit</u>

Non-3(m) deductions may only be made from a tipped employee's wages when the employer does not claim an FLSA 3(m) tip credit *and* pays a direct wage in excess of the minimum wage.  For example, if an employee receives $10.00 per hour in cash wages, the employer cannot claim an FLSA 3(m) tip credit, and the employer may take up to $2.75 ($10.00 - $7.25 = $2.75) in non-3(m) deductions from the employee's hourly wage. *See* 29 CFR 531.37.

(5)    *Other laws*

**CHAPTER 30 TABLE OF CONTENTS**

Where the FLSA and a state or local law regulating wages for tipped employees are concurrently applicable, it is the employer's responsibility to comply with the more protective wage standard.

**(f)**      **Dual jobs**

     (1)      When an individual is employed in a tipped occupation and a non-tipped occupation, for example, as a server and janitor (dual jobs), the tip credit is available only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

     (2)      29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

     (3)      However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

     (4)      Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

[12/15/2016]

**30d01**      <u>Retention of tips by employee.</u>

**(a)**      **General**

As noted above, tips are the property of the tipped employee who receives them, regardless of whether or not the employer claims a tip credit. All tips received (*i.e.*, given to or designated for the employee by a patron) by a tipped employee must be retained by the employee, and the employer may only utilize the employee's tips as a partial credit against its wage payment obligations or in furtherance of a valid pooling arrangement. An employer and employee cannot agree to waive such employee's right to retain all tips received. An employer's use of an employee's tips for any other purpose will be treated as a deduction from the employee's wages and would be an FLSA violation to the extent that it reduces total compensation below what the Act requires. *See* WHD Opinion Letter FLSA (October 26, 1989).

Tips in excess of the FLSA 3(m) tip credit may not be credited toward an employer's minimum wage obligations. Where an employer has claimed an FLSA 3(m) tip credit, it has paid the employee only the federal minimum wage for any hours in a non-overtime

**CHAPTER 30 TABLE OF CONTENTS**

workweek, regardless of the amount of tips received by the employee in excess of the tip credit amount.

**(b)**     **3(m) requirements not observed**

Where an employer does not strictly observe the provisions of section 3(m) (the employer fails to provide adequate notice of the use of the tip credit, the employer does not pay a cash or direct wage of at least $2.13 per hour, the tips received by the employee are less than the amount of tip credit claimed and the employer does not make up the difference during the pay period, or the employer utilizes the employee's tips for any purpose other than a valid tip pool) no FLSA 3(m) tip credit may be claimed, and the employee is entitled to receive the full cash minimum wage, in addition to retaining all tips he or she received.

For example, where an employer does not fulfill its obligation under 29 CFR 531.59(b) to inform a tipped employee of the provisions of section 3(m), or pays no wages to an employee who receives tips, the full minimum wage is due and no FLSA 3(m) tip credit will be allowed.

**(1)**     *A tip credit may not be retroactively included in back wage calculations*

The WHD will not allow an employer to claim an FLSA 3(m) tip credit on a retroactive basis where the employer has not met the requirements for taking a tip credit. For example, an employer that pays no wages (*i.e.*, employees received only tips) will be required to pay the full minimum wage and will not be able to claim an FLSA 3(m) tip credit. This same principle applies when the employer pays a cash wage that is less than the minimum required. For example, where the employer pays a cash wage of $2.00 per hour, the employer will be required to pay the full minimum wage, which will be offset by the $2.00 payment, and will not be able to claim an FLSA 3(m) tip credit. Similarly, employers that require tipped employees to contribute tips to an invalid tip pool will be required to pay the full minimum wage and restore to the tipped employees the amount of tips that were improperly used. *See* FOH 30d04.

**(2)**     *Employee retention of tips when no tip credit is claimed*

Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. *See* 29 CFR 531.52. Therefore, the employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted: as a credit against the employer's wage obligations to the employee, or in furtherance of a valid tip pool.

Where the employer does not claim a tip credit under section 3(m) of the act, but requires employees to contribute to a tip pool that includes non-tipped employees (an "invalid tip pool"), a violation will occur if such pooling deprives a tipped employee of any amount of the tips the employee actually received *and* the employer does not pay a sufficiently high cash wage to reimburse the employee for such loss, plus at least the minimum wage. *See* WHD Opinion Letter FLSA (October 26, 1989). When an employee's required contribution to an invalid tip pool in a non-overtime workweek is so great that he or she does not receive all of his or her tips plus the required minimum wage, the employee will be considered to have contributed all

**CHAPTER 30 TABLE OF CONTENTS**

such improperly redistributed tips to the employer, resulting in a minimum wage violation. *See* WHD Opinion Letter FLSA (October 26, 1989).

The following examples demonstrate the application of this principle in a non-overtime workweek. For purposes of these examples, assume that the employer does not take a tip credit against its wage obligations and that the employee is paid an $8.50 hourly wage and averages $15.00 per hour in tips. Note: the closer an employee's wage rate is to the statutory minimum, the greater the chance that diversion of a portion of his or her tips will raise compliance questions under the minimum wage provisions of the act.

Scenario 1:

The employer diverts $1.00 per hour of the employee's tips to non-tipped employees. There would be no minimum wage violation since the net hourly amount received by the employee ($14.00 tips + $8.50 wage = $22.50) is in excess of the total amount of tips plus the current minimum wage of $7.25 ($15.00 + $7.25 = $22.25).

Scenario 2:

The amount of the diversion is $3.00 per hour. Here there is a minimum wage violation since the net amount received by the employee ($12.00 tips + $8.50 wages = $20.50) is less than the total amount of tips plus the current minimum wage of $7.25 ($15.00 + $7.25 = $22.25).

WHD Opinion Letter FLSA (October 26, 1989)

In *Oregon Restaurant and Lodging Ass'n et al. v. Solis*, 948 F. Supp. 2d 1217 (D. Or. 2013), the U.S. District Court for the District of Oregon declared the DOL's 2011 regulations that limit an employer's use of its employees' tips when the employer has not taken a tip credit against its minimum wage obligations to be invalid, and imposed injunctive relief. That litigation is still ongoing. Therefore, the DOL is currently prohibited from enforcing its tip retention requirements against the Oregon Restaurant and Lodging Association plaintiffs (which include several associations, one restaurant, and one individual) and members of the plaintiff associations that can demonstrate that they were a member on 06/24/2013. The plaintiff associations in the Oregon litigation were the National Restaurant Association, Washington Restaurant Association, Oregon Restaurant and Lodging Association, and Alaska Cabaret, Hotel, Restaurant, and Retailer Association. As a matter of enforcement policy, the Department decided that while the injunction is in place it will not enforce its tip retention requirements against any employer that has not taken a tip credit in jurisdictions within the Ninth Circuit. The Ninth Circuit has appellate jurisdiction over California, Nevada, Washington, Oregon, Alaska, Idaho, Montana, Hawaii, Arizona; Guam; and the Northern Mariana Islands.

[12/15/2016]

**30d02     Tip credits in subminimum wage situations.**

Subminimum wages authorized under section 14 of the FLSA are considered to be the applicable minimum wage in determining amounts creditable toward the minimum wage for tips for purposes of section 3(m). For example where an employee is subject to a

**CHAPTER 30 TABLE OF CONTENTS**

subminimum wage of $6.00 per hour, the maximum permissible FLSA 3(m) tip credit against the subminimum wage would be $3.87 ($6.00 subminimum wage - $2.13 direct or cash wage = $3.87).

[12/15/2016]

**30d03     Service charges.**

A compulsory service charge (generally noted on the menu) which is added to a customer's bill is not part of the server's (*i.e.*, waiter and/or waitress) tip income but, rather, is included with the employer's gross receipts.  Therefore, the employer has complete discretion in choosing the manner in which the compulsory service charge is used, which would include using it to pay servers and/or bussers.  Where the service charges are paid to employees, they are considered wages that must be included in the regular rate of pay.  Where service charges are imposed and the employees receive no tips, the employees are not tipped employees and the employer must pay the entire minimum wage and overtime required by the FLSA.  If, in addition to service charge income, the servers receive tips from customers, such tip income may be credited toward the minimum wage in the usual manner if the employee qualifies as a tipped employee and the employer has met all obligations to claim a tip credit.  The employer, for example, may use the service charge amount to pay the minimum $2.13 cash wage, or when an employee does not receive sufficient tips to make up the difference between the cash wage payment and the minimum wage, the employer may also use the service charge to increase the cash wage rate to make up the difference.  *See* 29 CFR 531.55.

The WHD's policy is to consider all of the facts in assessing whether an amount added to a bill is a tip or a service charge, particularly evidence indicating whether the payment is mandatory or optional, including whether the customer exercises discretion regarding whether the quality of the service merits the payment and the amount of the payment; whether the customers (and/or the recipients of the service) are informed that the payment is optional, and may be increased or decreased at their discretion; and whether in fact there is some variation in the amounts paid.  There must be evidence of actual discretion over the fact of and amount of the payment in order for the amount to be considered a tip and not a service charge.  Such evidence may take any form, including a notation on an invoice, a "chit", a signature on a bill, an email, telephone message, or other notation reflecting directions to adjust the amount of the payment as appropriate.

29 CFR 531.52 and 29 CFR 531.55

WHD Opinion Letter FLSA 2005-31

WHD Opinion Letter FLSA (July 12, 1999)

WHD Opinion Letter FLSA (August 29, 1997)

WHD Opinion Letter FLSA (June 5, 1996)

[12/15/2016]

**30d04     Tip pooling.**

**CHAPTER 30 TABLE OF CONTENTS**

**(a)**   The requirement that an employee must retain all tips does not preclude tip-splitting or pooling arrangements among employees who customarily and regularly receive tips. Employer-required, or mandatory, tip pools may only include employees who customarily and regularly receive tips.

**(b)**   The following occupations have been recognized as those in which employees customarily and regularly receive tips:

    (1)   Waiters and waitresses

    (2)   Counter personnel who serve customers

    (3)   Bellhops

    (4)   Bussers (*i.e.*, server helpers)

    (5)   Service bartenders

In addition to the above-listed occupations, the WHD has recognized the following occupations as ones in which employees customarily and regularly receive tips:

    (6)   Sushi chefs or teppanyaki chefs, who are similar to counter personnel because they have direct contact and interact with customers and prepare and serve meals to customers in the bar area or customer tables.

    (7)   Bartender assistants or barbacks, who are similar to bussers because they learn bartending under the tutelage of a bartender, have the primary duty of supporting the bartender, and receive their tips from the bartender.  Barbacks work primarily in the bar area and have the opportunity to occasionally interact with customers.

    (8)   Sommeliers who explain the wine list, bring the selected bottle of wine to the table, and serve the wine to the customers.

WHD Opinion Letter FLSA 2009-12

WHD Opinion Letter FLSA 2008-18

WHD Opinion Letter FLSA (June 28, 1985)

There may be court decisions in a particular region that address the parameters of what constitutes a customarily and regularly tipped employee. The DD and/or the ADD should inform WHIs of any cases that may apply.  If the DD and/or the ADD is in need of further guidance, he or she should consult with the respective regional solicitor's office.

**(c)**   It is not required that all employees who receive tips from a mandatory tip pool themselves receive tips from customers as long as they work in an occupation recognized as one in which employees customarily and regularly receive tips.  The amounts retained by the employees who actually receive the tips, and those given to other pool participants, are considered the tips of the individuals who ultimately retain them, in applying the provisions of sections 3(m) and 3(t).

**CHAPTER 30 TABLE OF CONTENTS**

(d)     The FLSA does not restrict the amount of tips an employee can be required to contribute to a valid tip pool.  The employer must notify the employees of any required tip contribution amount, may only take a tip credit for the amount of tips the employee ultimately receives, and may not retain any of the employee's tips for any other purpose.  *See* 29 CFR 531.54.

(e)     Tips contributed to a mandatory tip pool must not lower the rate of the employee below the minimum wage.  Only those tips that are retained by the employee, either those not contributed to a tip pool or those received from the tip pool, are considered in determining if the employee has received the minimum wage.

(f)     Tipped employees may not be required to share their tips with employees who are not working in occupations in which they customarily and regularly receive tips.  The following employees would therefore *not* be eligible to participate in a mandatory tip pool:

    (1)     Janitors

    (2)     Chefs or cooks (other than performance chefs)

    (3)     Dishwashers

    (4)     Laundry room attendants

    (5)     Salad preparers

    (6)     Prep cooks

(g)     However, it does not appear that Congress, even in requiring as a general principle that tipped employees retain all their tips, intended to prevent tipped employees from deciding, free from any coercion whatever and outside of any formalized arrangement or as a condition of employment, what to do with their tips, including sharing them with whichever co-workers they please.  Therefore, a tipped employee may voluntarily share tips with whichever co-workers the tipped employee chooses.  Tips received by co-workers who are not tipped employees may not, however, be used as a tip credit.

(h)     **Tip jar**

A tip jar is a form of tip pooling and should be handled in accordance with the tip pooling provisions set forth above.

(i)     Questions from WHD field staff regarding eligibility of employees to share in tip pooling arrangements that cannot be answered on the basis of these guidelines should be submitted through channels to the NO, Division of Enforcement Policy and Procedures, Fair Labor Standards Branch, for resolution.  In the case of a host or hostess, head waiter, seater/greeter, and other employees not referred to above, facts should be developed showing the practices regarding their sharing of tips in the locality and type of establishment involved.

(j)     **Remedying an invalid tip pool**

    (1)     If an employer includes ineligible employees in a mandatory tip pool, or the employer retains tips from the pool, the tip pool is invalid.  An employer may not utilize a 3(m) tip credit for an employee who contributes tips to an invalid mandatory

**CHAPTER 30 TABLE OF CONTENTS**

tip pool.  The employer must pay such an employee the full minimum wage, and must reimburse the employee in the amount of tips that were improperly utilized.

(2)     When an employee who is ineligible to share in tip pooling arrangements receives funds from an employer-imposed, invalid tip pool, those monies are wages and must be included in calculating the non-tipped employee's regular rate of pay for purposes of overtime compensation.  *See* WHD Opinion Letter FLSA (October 26, 1989).

[12/15/2016]

## 30d05     Tips charged on credit cards.

(a)     When tips are charged to credit cards, the employer may reduce the amount of tips paid to the employee by the percentage charged by the credit card company (*i.e.*, transactional fee).  However, the employer cannot reduce the amount of tips paid to the employee by any amount greater than the transactional fee.  For example, where a credit card company charges an employer 3 percent on all sales charged to its credit service, the employer may pay the employee 97 percent of the tips without violating FLSA.  *See* WHD Letter FLSA (March 28, 1977).

(b)     Payment of both minimum wage and overtime compensation, including the charged tips, due a "tipped employee" must ordinarily be made at the regular payday for the workweek, or when the pay period covers more than a single workweek, at the regular payday for the period in which the particular workweek ends.  The procedures required to process charges made by customers through credit cards may delay actual receipt of the funds by the employer for one or two months.  Nevertheless, the employer is required to pay over the charged tips to the employee on the employee's next regular payday.

(c)     In some situations, a credit card transaction is not collected from a credit card company.  In such cases, the employer is not required to pay a tipped employee the amount of tips specified on the credit card slip.  Of course, this assumes the inability to collect is not a result of the employer's failure to submit the slip for reimbursement, etc.  *See* WHD Opinion Letter FLSA (February 23, 1983).

(d)     Where a credit card charge is uncollectible, the employer is not required to pay the employee the amount of tip specified on such credit card slip.  Instead, the employer may recover from a tipped employee those tips that have been paid to the employee when the credit card charge is uncollectible; however, such recovered tips may not reduce the tips retained by the employee below the amount of the tip credit claimed in the workweek in which the credit card tip was paid to the employee.

Where there are tip pools, tip pool recipients are responsible for reimbursing the employer for the share of tips from an uncollected credit card transaction which was allocated into the tip pool.  The tipped employee who contributed the uncollected tip to the tip pool can only be held accountable for the portion of the uncollected tip the employee received back from the tip pool.  For example, the tipped employee contributed $20.00 in tips from a credit card transaction that ultimately is uncollected to the tip pool and received back from the tip pool 70 percent of the tips contributed to the pool.  The tipped employee can only be required to reimburse the employer for the 70 percent of the $20.00 of the uncollected tip that the employee received from the tip pool ($20.00 × 0.70 = $14.00).

**CHAPTER 30 TABLE OF CONTENTS**

**(e)**   **Cost of collecting tips charged on credit cards, over and above the amount charged by the credit card company**

Costs incurred by the employer related to credit card use, other than the fee charged by a credit card company for processing, may not be used to reduce the amount of the tips the employer must distribute to the tipped employee.  Such costs include, but are not limited to:

    (1)   the "time value of credit card collections,"

    (2)   the cost of the credit card terminal, and

    (3)   the cost of dedicated phone lines.

Any employer attempt to deduct an average standard composite amount for tip liquidation that exceeds the amount charged by the credit card companies is not acceptable.

WHD Opinion Letter FLSA 2006-1

[12/15/2016]

**30d06**   **Determining the tip credit an employer may claim against its minimum wage obligations.**

**(a)**   **General**

Section 3(m) limits the tip credit an employer may claim against its minimum wage obligations to the difference between the section 6(a)(1) minimum wage and the cash wage paid by the employer.  Under this formula, the direct or cash wage paid by the employer, which may not be less than $2.13 per hour, plus the FLSA 3(m) tip credit (*i.e.*, the difference between the section 6(a)(1) wage and the cash wage paid) always equals the section 6(a)(1) minimum wage.  Under the 3(m) formula, payment of a higher cash wage by the employer will result in a lower FLSA 3(m) tip credit.  An employee paid with the FLSA 3(m) tip credit has only been paid the FLSA minimum wage in non-overtime workweeks, and therefore the employer may not take non-3(m) deductions for shortages, breakage, cost of uniforms, etc.

**(b)**   **Examples**

For purposes of these examples, assume: the section 6(a)(1) wage rate is $7.25 per hour, the employee worked no overtime hours, the employee meets the section 3(t) definition of tipped employee, the employer properly advised the employee in advance of the requirements outlined in 29 CFR 531.59(b), and that the employer maintained appropriate payroll records.

    (1)   These examples illustrate that the amount of the FLSA 3(m) tip credit will vary depending on the cash or direct wage paid to the employee.

        a.   If the employer pays a cash wage paid of $2.13 per hour, it may claim a tip credit of $5.12 per hour ($7.25 - $2.13 = $5.12).

        b.   If the employer pays a cash wage paid of $3.63 per hour, it may claim a tip credit of $3.62 per hour ($7.25 - $3.63 = $3.62).

**CHAPTER 30 TABLE OF CONTENTS**

c.   If the employer pays a cash wage paid of $4.86 per hour, it may claim a tip credit of $2.39 per hour ($7.25 - $4.86 = $2.39).

d.   If the employer pays a cash wage of less than the minimum required by the FLSA ($2.13 per hour), it may not claim an FLSA 3(m) tip credit and must pay the difference between the minimum wage and the cash wage that was paid.  For example, if an employer pays a cash wage of $2.00 per hour, it would not be entitled to claim an FLSA 3(m) tip credit and must also pay $5.25 per hour as the difference between the minimum wage and the cash wage paid ($7.25 - $2.00 = $5.25).

(2)   When the state minimum wage is higher than the section 6(a)(1) wage, the formula in section 3(m) still limits the amount of the FLSA 3(m) tip credit the employer may claim to the difference between the cash wage paid and the federal minimum wage.  As illustrated in the examples below, where the state recognizes a higher tip credit than the FLSA 3(m) tip credit, there will not be a FLSA minimum wage violation as long as the employer has paid a cash wage of at least $2.13 per hour and the employee receives sufficient tips to satisfy the section 6(a)(1) minimum wage.

a.   The state minimum wage is $7.40 per hour.  The employer pays a cash wage of $2.89 per hour as required by the state law and claims a tip credit of $4.51 per hour as permitted under state law ($7.40 - $2.89 = $4.51).  However, the employer is limited to an FLSA 3(m) tip credit of $4.36 ($7.25 - $2.89 = $4.36).

$7.25 (FLSA minimum wage) - $2.89 (cash wage paid) = $4.36 (FLSA 3(m) tip credit)

$7.40 (state minimum wage) - $2.89 (cash wage paid) = $4.51 (state tip credit)

Even though the employer has paid a direct wage in excess of the required minimum of $2.13, for FLSA purposes the employee has received only $7.25 per hour.

b.   The state minimum wage is $8.15 per hour.  The employer pays a cash wage of $3.95 as required by state law and claims a tip credit of $4.20 per hour as permitted under state law ($8.15 - $3.95 = $4.20).  The employer is limited to an FLSA 3(m) tip credit of $3.30 ($7.25 - $3.95 = $3.30).

$7.25 (FLSA minimum wage) - $3.95 (cash wage paid) = $3.30 (FLSA 3(m) tip credit)

$8.15 (state minimum wage) - $3.95 (cash wage paid) = $4.20 (state tip credit)

**CHAPTER 30 TABLE OF CONTENTS**

Even though the employer has paid a direct wage in excess of the required minimum of $2.13, for FLSA purposes the employee has received only $7.25 per hour.

c.   The state minimum wage is $7.50 per hour, and the state requires a cash wage of at least $2.13 per hour. The employer claims a tip credit of $5.37 per hour ($7.50 - $2.13 = $5.37) as permitted under state law. The employer is limited to an FLSA 3(m) tip credit of $5.12 ($7.25 - $2.13 = $5.12).

$7.25 (FLSA minimum wage) - $2.13 (cash wage paid) = $5.12 (FLSA 3(m) tip credit)

$7.50 (state minimum wage) - $2.13 (cash wage paid) = $5.37 (state tip credit)

For FLSA purposes, the employee has received only $7.25 per hour.

[12/15/2016]

**30d07**   **FLSA 3(m) tip credit in overtime hours.**

An employer may not take a higher FLSA 3(m) tip credit against its minimum wage obligations during overtime hours than is taken during non-overtime hours. *See* FOH 32j18 regarding overtime computations for tipped employees. Under certain circumstances, an employer may be able to claim an additional overtime tip credit against its overtime obligations.

[12/15/2016]

**30d08**   **IRS tip allocation rules.**

Where an employer withholds taxes from a tipped employee based upon a percentage of sales, rather than on reported tips, a reduction in an individual employee's net pay may result, but this is not an FLSA violation.

[12/15/2016]

**30e**   **FLSA SECTION 6(e)(1): CONTRACT SERVICES OTHER THAN LINEN SUPPLY**

**30e00**   **General provisions: section 6(e)(1), contract services (other than linen supply services).**

Section 6(e)(1) of the FLSA provides: "Notwithstanding the provisions of section 13 of this act (except subsections (a)(1) and (f) thereof), every employer providing any contract services (other than linen supply services) under a contract with the United States or any subcontract thereunder shall pay to each of his employees whose rate of pay is not governed by the Service Contract Act of 1965 (41 USC 351-357) or to whom subsection (a)(1) of this section is not applicable, wages at rates not less than the rates provided for in subsection (b) of this section." (Effective 12/31/1977, subsection (b) provided for payment of wage rates not less than those provided in subsection (a)(1).)

**CHAPTER 30 TABLE OF CONTENTS**

**30e01**   **Application of section 6(e)(1): establishment basis.**

As an enforcement policy, the minimum wage standard provided by section 6(e)(1) of the FLSA will be applied only within an establishment in which work is performed on a government service contract. Thus, where an employer operated more than one establishment but performs on government service contracts in only certain of these establishments, the WHD will not assert application of section 6(e)(1) to those establishments which do not perform on government service contracts.

**30e02**   **Application of section 6(e)(1): workweek basis.**

The application of section 6(e)(1) of the FLSA depends on the performance of contract services and not on the coverage or exemption status of the establishment under the act. Thus, during *any workweek* in which the establishment is engaged in the performance of contract services, the wage rate provided in section 6(b) of the FLSA would be applicable to all employees of the establishment other than those specifically exempt under section 13(a)(1) of the FLSA or those subject to a higher wage rate pursuant to the SCA.

**30e03**   **Application of section 6(e)(1): contract services.**

Section 6(e)(1) of the FLSA applies to every employer providing *any contract service* (other than linen supply services) under a contract with the United States or any subcontractor thereunder. It is not necessary that the contract be subject to the SCA.

**30e04**   **Overtime and section 6(e)(1).**

Section 6(e)(1) of the FLSA contains no reference to overtime standards and section 7 makes no provision for overtime for employees covered by section 6(e). Overtime compensation for employees covered on a traditional or enterprise basis may be required under section 7(a) of the FLSA or under the CWHSSA.

**30f**   **FLSA SECTION 6(e)(2): GOVERNMENT CONTRACT LINEN SUPPLY SERVICES**

**30f00**   **General provision: section 6(e)(2), government contract linen supply services.**

Section 6(e)(2) of the FLSA provides: "Notwithstanding the provisions of section 13 of this act (except subsections (a)(1) and (f) thereof) and the provisions of the Service Contract Act of 1965, every employer in an establishment providing linen supply services to the United States under a contract with the United States or any subcontract thereunder shall pay to each of his employees in such establishment wages at rates not less than those prescribed in subsection (b), except that if more than 50 per centum of the gross annual dollar volume of sales made or business done by such establishment is derived from providing such linen supply services under any such contracts or subcontracts, such employer shall pay to each of his employees in such establishment wages at rates not less than those prescribed in subsection (a)(1) of this section." (Effective 12/31/1977, subsection (b) provided for payment of wage rates not less than those provided in subsection (a)(1).)

**30f01**   **Linen supply services.**

CHAPTER 30 TABLE OF CONTENTS

(a)     The application of section 6(e)(2) of the FLSA is determined by the type of service contracted for and not by the type of establishment performing the service. Thus, for example, a laundry may provide linen supply service within the meaning of section 6(e)(2).

(b)     The term linen supply services as used in section 6(e)(2) of the FLSA refers to the supplying of various items to the government on a rental basis by a contractor who owns the item being supplied. On the other hand, the mere laundering of items which are owned by the government is a laundering service and is not a linen supply service within the meaning of section 6(e)(2).

(c)     The term "linen supply services," in addition to including such services as the rental of tablecloths, sheets, and pillowcases, would also include contracts for such items as dresses, uniforms, other wearing apparel, bibs aprons, etc., of the type used by barbers, doctors, waitresses, waiters, nurses, food workers, beauticians, etc. It would not include services for such items as diapers, laundry, or dry cleaning (family or commercial), nor services for such items as industrial wiping towels, safety equipment and salvage, dust control – including treated dust tool covers and cloths, treated dust mops or rugs, or for industrial work uniforms, such as those worn by mechanics and production workers in heavy industry, machine shops, garages, service stations, and the like.

**30f02     Application of section 6(e)(2): establishment basis.**

The minimum wage standard provided by section 6(e)(2) of the FLSA applies only within an establishment in which work is performed on a government linen supply contract. Thus, where an employer operates more than one establishment but performs on government linen supply contracts in only certain of the establishments, the WHD will not assert application of section 6(e)(2) to the establishments which do not perform on government linen supply contracts.

**30f03     Application of section 6(e)(2): workweek basis.**

The application of section 6(e)(2) of the FLSA depends on the performance of linen supply services to the government and not on the coverage or exemption status of the establishment under the Act. Thus, during *any workweek* in which the establishment is engaged in the performance of linen supply services, the wage rate provided in section 6(b) of the FLSA would be applicable to all employees of the establishment other than those specifically exempt under section 13(a)(1) of the FLSA or those subject to a higher wage rate pursuant to the SCA.

**30f04     Application of section 6(e)(2): linen supply services.**

Section 6(e)(2) of the FLSA applies to every employer providing linen supply services under a contract with the United States or any subcontract thereunder. It is not necessary that the contract be subject to the SCA.

**30f05     Overtime and section 6(e)(2).**

Section 6(e)(2) of the FLSA contains no reference to overtime standards and section 7 makes no provision for overtime for employees covered by section 6(e). Overtime compensation for employees covered on a traditional or enterprise basis may be required under section 7(a) of the FLSA or under the CWHSSA.

**CHAPTER 30 TABLE OF CONTENTS**