# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY CRATE,
    Plaintiff,

v.                                                                 Case No. 8:13-cv-2549-T-24 EAJ

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

_____

CHRISTOPHER INSLEY
    Plaintiff,

v.                                                                 Case No. 8:13-cv-2550-T-24 TBM

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

_____

DAMON KOONTZ
    Plaintiff,

v.                                                                 Case No. 8:13-cv-2551-T-24 TGW

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

_____

KRYSTAL DUFAULT
    Plaintiff,

v.                                                                 Case No. 8:13-cv-2552-T-24 TGW

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

_____

JOHN HENSE
    Plaintiff,

v.                                                                                                      Case No. 8:13-cv-2554-T-24 EAJ

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

---

LORIE BROWN
    Plaintiff,

v.                                                                                                      Case No. 8:13-cv-2555-T-24 MAP

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

---

BRANDON AUSTIN
    Plaintiff,

v.                                                                                                      Case No. 8:14-cv-171-T-24 EAJ

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

---

DANIEL HUNKINS,
    Plaintiff,

v.                                                                                                      Case No. 8:14-cv-174-T-24 EAJ

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
    Defendant.

---

2

| | |
|---|---|
| PATRICIA BRYSON,<br>        Plaintiff, | |
| v. | Case No. 8:14-cv-175-T-24 EAJ |
| Q'S RESTAURANT GROUP LLC<br>doing business as Cheddar's Casual Café,<br>        Defendant. | |

---

| | |
|---|---|
| RACHEL BRYSON,<br>        Plaintiff, | |
| v. | Case No. 8:14-cv-176-T-24 EAJ |
| Q'S RESTAURANT GROUP LLC<br>doing business as Cheddar's Casual Café,<br>        Defendant. | |

---

| | |
|---|---|
| KANDACE EISEMANN<br><br>        Plaintiff, | |
| v. | Case No. 8:14-cv-185-T-24 MAP |
| Q'S RESTAURANT GROUP LLC<br>doing business as Cheddar's Casual Café,<br>        Defendant. | |

---

| | |
|---|---|
| GREGORY KENT,<br><br>        Plaintiff, | |
| v. | Case No. 8:14-cv-354-T-24 MAP |
| Q'S RESTAURANT GROUP LLC<br>doing business as Cheddar's Casual Café,<br>        Defendant. | |

---

MELANIE HOEFLING,

      Plaintiff,

v.                                          Case No. 8:14-cv-355-T-24 TBM

Q'S RESTAURANT GROUP LLC
doing business as Cheddar's Casual Café,
      Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss Count II. (Doc. No. 33). Plaintiffs oppose the motion. (Doc. No. 40). As explained below, the motion is granted in part and denied in part.[1]

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels

---

[1] There were twenty related cases filed against Defendant, and currently, thirteen remain pending. The same allegations are contained in the operative complaint filed in each case, and the same motion to dismiss and response thereto was filed in each case. As such, this order applies to all of the currently pending related cases filed against Defendant.

4

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II. Background**

Plaintiffs are servers that work for Defendant, which does business as Cheddar's Casual Café. Plaintiffs allege that Defendant violated the Florida Minimum Wage Act ("FMWA") and the Fair Labor Standards Act ("FLSA") by: (1) failing to pay them for all hours that they worked (Count I); (2) improperly utilizing the tip credit (Count II); (3) failing to pay them overtime (Count III); and (4) improperly engaging in tip pooling (Count IV). In response, Defendant filed the instant motion to dismiss Count II, in which Plaintiffs' claim that Defendant improperly utilized the tip credit.

With respect to Count II, Plaintiffs allege that Defendant improperly took a tip credit from their wages for time spent performing related, non-tipped work. Plaintiffs list various examples of the related, non-tipped work that they were required to do, which Plaintiffs refer to as "side work."[2] Plaintiffs allege that Defendant regularly and consistently required them to

---

[2]The side work included: restocking supplies, stocking ice, sweeping floors, stocking food/condiments on the expo line, brewing tea and coffee, running food to tables for other servers, wiping down/washing trays, stocking lemonade mix, unclogging drains, cleaning soft

5

perform side work before, during, and after their shifts and that the side work exceeded 20% of the time Plaintiffs spent working. As a result, Plaintiffs contend that Defendant owes the full minimum wage (without regard to a tip credit) for the time that they spent performing side work.

In addition to the side work, Plaintiffs allege that Defendant required them to perform tasks belonging to an entirely different category of employment that was unrelated to and not incidental to tipped service. Plaintiffs refer to this type of work as "dual occupation" work, which includes maintenance, cooking, and cleaning. As a result, Plaintiffs contend that Defendant owes the full minimum wage (without regard to a tip credit) for the time that they spent performing the dual occupation work.

### III. Motion to Dismiss

Defendant moves to dismiss Count II, arguing that: (1) the Court should reject the Department of Labor's ("DOL") "20% rule;" (2) the Court should reject Plaintiff's dual occupation argument; and (3) Plaintiffs have not pled sufficient facts to support their claim. Accordingly, the Court will address these arguments.

#### A. Legal Background

A tipped employee is an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Employers are permitted to pay a reduced minimum wage to tipped employees, as low as $2.13 per hour, if the difference between the current minimum wage rate and the reduced rate paid by the employer is

---

drink dispenser nozzles, replacing syrup for the soda machine, cutting/stocking lemons, restocking table condiments, changing light bulbs, washing plates/glasses/silverware, taking out trash, running the expo line, scrubbing walls, cleaning gaskets inside the cooler, dusting, making salads, and cleaning/stocking the salad bar.

made up by the tipped employee's actual tips. 29 U.S.C. § 203(m). "The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a 'tip credit.'" Pellon v. Business Representation International, Inc., 528 F. Supp.2d 1306, 1309-10 (S.D. Fla. 2007).

The regulations provide guidance regarding the applicability of the tip credit:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e). Additionally, the DOL's handbook further clarifies this regulation and sets forth the 20% rule:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. **However, where the facts indicate** that specific employees are routinely assigned to maintenance, or **that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.**

7

U.S. Dept. of Labor, Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988)(available at http://www.dol.gov/whd/foh/FOH_Ch30.pdf) (emphasis added).

### B. The DOL's 20% Rule

Defendant argues that Count II should be dismissed to the extent that it is based on the DOL's 20% rule. Defendant points out that the 20% rule is not binding authority, but this Court finds it persuasive in this case because it clarifies a somewhat ambiguous regulation. See Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1255 (11th Cir. 2001)(finding a different rule in the DOL handbook to be persuasive). Other courts have applied the 20% rule. See, e.g., Fast v. Applebees International, Inc., 638 F.3d 872, 880-81 (8th Cir. 2011); See Ash v. Sambodromo, LLC, 676 F. Supp.2d 1360, 1367 (S.D. Fla. 2009)(analyzing "whether the plaintiff's non-tipped duties exceeded twenty-percent of her shift"); Holder v. MJDS Venture, LLC, 2009 WL 4641757, at *3-4 (N.D. Ga. Dec. 1, 2009).

For example, in Fast v. Applebees, the court stated:

> We believe that the DOL's interpretation contained in the Handbook—which concludes that employees who spend "substantial time" (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time without the tip credit—is a reasonable interpretation of the regulation. . . . The regulation places a temporal limit on the amount of related nontipped work an employee can do and still be considered to be performing a tipped occupation. The DOL has used a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA. . . . The 20 percent threshold used by the DOL in its Handbook is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms "part of [the] time" and "occasionally" used in that regulation.

Fast, 638 F.3d at 880-81

This Court notes that Defendant relies heavily on the opinion in Pellon v. Business

8

Representation International, in which the court characterized the 20% rule, as applied to skycaps, as "infeasible":

> Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers. First of all, ruling in that manner would present a discovery nightmare. Of greater concern is the fact that under the reasoning proffered by Plaintiffs, nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts.

Pellon, 528 F. Supp.2d at 1313-14. The Pellon court, however, did not need to determine whether the 20% rule would apply in other situations, because the court concluded that the plaintiffs had failed to offer evidence that their non-skycap duties constituted more than 20% of their workday. See id. at 1314. Given that the Pellon court was not required to determine the amount of deference to be given to the 20% rule, this Court finds Defendant's reliance on Pellon to be misplaced.

Accordingly, the Court declines Defendant's invitation to reject the DOL's 20% rule and dismiss Count II. Instead, the Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate. As stated by the lower court in Fast v. Applebees:

> [T]he [DOL] Handbook's twenty percent limitation [is] persuasive and practical. The Department of Labor is charged with enforcing the FLSA on the ground level, and has expertise in the field that the Court lacks. In an area where reasonable minds may disagree about the meaning of the relevant statute and regulations, adopting the Department of Labor's position on this issue provides notice,

> continuity, and certainty throughout the industry. The twenty percent limitation allows employers some cushion in assigning and tracking non-tipped work while still assuring application of the tip credit only to employees who primarily perform customer specific duties. This approach also complies with the intent of Congress when it carved out a special rule for "tipped occupations." A more restrictive interpretation of "waitress" could be argued; i.e., the occupation of a waitress only involves serving food and drinks, handing out menus, taking orders, presenting a bill and setting and cleaning their individual customer's tables. However, given the difficulty of defining an occupation at its margins, the Department of Labor's more generous standard is entitled to deference. Employees may be paid the tipped wage rate for performing general preparation and maintenance duties, so long as those duties consume no more than twenty percent of the employees' working time.

Fast v. Applebee's Intern., Inc., 2010 WL 816639, at *7 (W.D. Mo. Mar. 4, 2010).

While this Court concludes that the 20% rule should be applied in this case, this Court agrees with the Pellon court that "[p]ermitting Plaintiffs to scrutinize every day minute by minute, [in an] attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly" would likely be infeasible. Pellon, 528 F. Supp.2d at 1313-14. However, to the extent that there are discrete time periods—such as before the restaurant opens to customers, after the restaurant is closed to customers, or between the lunch and dinner shifts—during which the Plaintiffs can show that they were engaged in related, non-tipped activities, such could be used as evidence to support their claim that they spent more than 20% of their shifts doing related, non-tipped work for which Defendant is not entitled to the tip credit.

### C. Dual Occupation

In addition to the related, non-tipped side work, Plaintiffs allege that Defendant required them to perform tasks belonging to an entirely different category of employment that was unrelated to and not incidental to tipped service. Plaintiffs refer to this type of work as "dual

10

occupation" work, which includes maintenance, cooking, and cleaning. Defendant argues that to the extent that Plaintiffs contend that they performed such unrelated work that rendered them in dual occupation, their claim must be dismissed. As explained below, the Court agrees.

Pursuant to 29 C.F.R. § 531.56(e), there is a distinction between an employee in a dual job (such as a maintenance man in a hotel who also servers as a waiter) and an employee employed in a single job that performs tipped duties and related, non-tipped duties (such as a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses). In this case, Plaintiffs contend that they are employed in a dual occupation due to their maintenance, cooking, and cleaning duties. Given the complete lack of detail in their operative complaints regarding the types of maintenance, cooking, and cleaning duties that Plaintiffs perform, it is not clear that such duties constitute a dual occupation, as opposed to being non-tipped duties related to their occupation as servers (to which the 20% rule would apply). For example, cleaning off a customer's table would be a non-tipped duty related to their occupation as a server, whereas pressure washing the outside entrance to the restaurant would appear to be a non-tipped duty unrelated to their occupation as a server.

The distinction between (1) tipped duties, (2) non-tipped duties related to the tipped occupation, and (3) non-tipped duties unrelated to the tipped occupation is important, because the applicability of the tip credit is based, in part, on which of these types of duties is being performed. Defendant may utilize the tip credit for all of the time the servers spent performing tipped duties. Defendant may also utilize the tip credit for all of the time the servers spent performing non-tipped duties related to the tipped occupation *if* the related, non-tipped work did not exceed 20% of the servers' time. Defendant may not utilize the tip credit for any of the time

11

the servers spent performing non-tipped duties related to the tipped occupation if the related, non-tipped work exceeded 20% of the servers' time. Finally, Defendant may not utilize the tip credit for any of the time the servers spent performing non-tipped duties unrelated to the tipped occupation.

Due to the lack of detail regarding Plaintiffs' alleged dual occupation, the Court dismisses without prejudice Count II to the extent that it is based on the dual occupation theory. However, the Court will give Plaintiffs one final opportunity to amend this claim to provide sufficient factual allegations to support their dual occupation theory.

### D. Factual Sufficiency

Next, Defendant argues that Count II should be dismissed, because it is not pled with sufficient detail. As explained above, the Court agrees that there is not sufficient detail to support the dual occupation theory in Count II.

However, the Court rejects Defendant's argument that there is not sufficient detail to support Plaintiffs' theory that they spent more than 20% of their time performing related side work in Count II, because Plaintiffs do not identify how many minutes they spent performing each type of side work listed in the complaint. The Court is not persuaded that such detail is necessary at the pleading stage, as Plaintiffs have identified the various types of side work that they were required to perform and have alleged that this side work consumed more than 20% of Plaintiffs' time.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)  Defendant's Motion to Dismiss Count II (Doc. No. 33) is **GRANTED IN PART**

**AND DENIED IN PART:** The motion is **GRANTED** to the extent that the Court dismisses the dual occupation theory in Count II; otherwise, the motion is **DENIED**.

(2)   By May 12, 2014, Plaintiffs may file an amended complaint solely to address the deficiencies outlined in this order.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of May, 2014.

Copies to:  Counsel of Record

SUSAN C. BUCKLEW
United States District Judge