**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **BRADLEY ALVERSON and CASEY HOWIE, Individually and On Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 5:16-cv-00849-OLG-JWP** |
| **V.** | **JURY TRIAL DEMANDED** |
| **BL RESTAURANT OPERATIONS LLC D/B/A BAR LOUIE,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
PURSUANT TO THE FAIR LABOR STANDARDS ACT, FOR COURT-AUTHORIZED
NOTICE TO SIMILARLY SITUATED PERSONS, AND FOR EXPEDITED DISCOVERY.**

## INTRODUCTION

The nationwide chain of Bar Louie restaurants owned and operated by BL Restaurant Operations LLC ("Bar Louie" or "Defendant") unlawfully denies all of its servers, bartenders and other tipped employees (collectively "tipped employees") the proper minimum wages and overtime pay, in violation of the Fair Labor Standards Act ("FLSA"). As a result of Bar Louie's uniform compensation policies, timekeeping practices, and aggressive attempts to reduce labor costs, all tipped employees are: (1) not properly notified of the FLSA tip credit; (2) required to perform a substantial amount of non-tip producing side work while being paid less than the full minimum wage; and (3) engaged in a dual job as a result of performing non-tip producing side work unrelated to the tipped profession.

Through this motion, Plaintiffs seek to protect the rights of themselves and the rights of tipped employees nationwide by sending them a Court-approved notice of this action and allow potential opt-ins to join this action and attempt to recover their unpaid wages. Through Bar Louie's corporate documents and Plaintiffs' declarations, Plaintiffs exceed their low burden on this motion and demonstrate that Defendant subjected all of its tipped employees nationwide to the same unlawful policies.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY.

Plaintiff Bradley Alverson filed his initial class action Complaint on August 26, 2016. Thereafter, the Parties engaged in preliminary discussions concerning the case and the potential for an early resolution. The Parties determined they needed additional time and requested that the Court continue deadlines in the case by approximately 6 months. *See* Docket No. 14. The Court granted the Parties' Joint Motion and allowed Plaintiff Bradley Alverson to amend his Complaint for the first time in this case. *See* Docket No. 15. Subsequently, on April 20, 2017, Plaintiff Casey Howie joined the instant action with the filing of the Amended Complaint. In part, the Amended Complaint alleges that Defendant's FLSA violations are willful and perpetrated through a common policy or plan with respect to all tipped employees at Bar Louie restaurants operated by Defendant nationwide. *See* Docket No. 16, Plaintiffs' Amended Complaint. To date, the case is comprised of 9 tipped employees representing 5 different locations in 5 states.[1] Plaintiffs allege the same policies and practices have been in effect at Bar Louie restaurants nationwide.

---

1    Massachusetts; New Jersey; Pennsylvania; Ohio; and Texas.

## II.    STATEMENT OF FACTS.

### A.    Defendant.

A part of the portfolio of Sun Capital Partners, Inc., Bar Louie is a nationwide chain of casual dining restaurants with approximately 125 locations nationwide.[2]  Throughout the "FLSA Period" (August 26, 2013 to the present), Defendant has employed thousands of tipped employees who were denied minimum wages and overtime compensation as a result of Defendant's common violations of the FLSA.

### 1.    Defendant Centrally Controls, Trains, and Monitors Tipped Employees At All Bar Louie Locations.

Defendant maintains control over its Bar Louie locations nationwide to ensure uniformity. In that regard, all new tipped employees undergo orientation and training with their general manager and utilize Defendant's online tools through the company's "Backstage" database.[3] Through "Backstage," Bar Louie exercises strict control over the brand by providing employees nationwide with access to a plethora of information including, but not limited to, training programs,[4] promotions,[5] food specifications,[6] job descriptions,[7] as well as information related to the "rules or terms and conditions" of an employee's employment.[8]  Moreover, "Backstage" serves as a way for Bar Louie to keep track of their individual employees including what information they have accessed to perform their job.[9]  Defendant's standardized training programs are not only

---

2    Bar Louie - Sun Capital Partners, Inc. at https://suncappart.com/portfolio/bar-louie/ (last visited June 28, 2017); *see also* http://www.barlouie.com/locations/states.
3    Exhibit 1, Bar Louie Employee Handbook at pg. 20.
4    Exhibit 2, Screenshot of Backstage Video - Admin Toolbox; *see also* Admin Toolbox, https://vimeo.com/194933717 (last visited June 28, 2017).
5    Exhibit 3, Screenshot of Backstage Video - Local Admins; *see also* Local Admins, https://vimeo.com/208373768 (last visited June 28, 2017).
6    Exhibit 4, Screenshot of Backstage Video - Reporting and Filters; *see also* Reporting and Filters, https://vimeo.com/208705111 (last visited June 28, 2017).
7    Exhibit 2, Screenshot of Backstage Video - Admin Toolbox; *see also* Admin Toolbox, https://vimeo.com/194933717 (last visited June 28, 2017).
8    Exhibit 1, Bar Louie Employee Handbook at pg. 20.
9    *See e.g.*, Exhibit 2, Admin Toolbox, https://vimeo.com/194933717 (last visited June 28, 2017).

aimed at tipped employees, but also towards the management[10] who implement the policies and practices that affect tipped employees at Bar Louie. Thus through the implementation of standardized training and support, Bar Louie can create a homogeneous environment where tipped employees operate under the same employment conditions.

"Backstage" is just one way in which Bar Louie can implement universal policies and practices that affect tipped employees company-wide. Defendant also supplies each tipped employee with handbooks that provide them with information related to their pay, time keeping policies, and development with Bar Louie.[11] In addition, tipped employees are introduced to the notion that they will be responsible for keeping Bar Louie restaurants "clean and organized" as all team members are required to "pick up trash," "keep storage shelves clean and organized," "keep the rest rooms dry, clean, and stocked" and be "assigned side work to perform daily."[12]

Through Defendant's "cookie-cutter" approach to brand management, Bar Louie employees are able to seamlessly transition from location to location.[13] In fact, one of the opt-in Plaintiffs (Ms. Alissa Tapia) worked at multiple Bar Louie locations operated by Defendant.[14] Furthermore, Plaintiffs' declarations demonstrate that, regardless of the location in which they worked, the policies were essentially identical at each Bar Louie, solidifying the fact that Defendant applies the same policies at Bar Louie restaurants nationwide.

B.     **Plaintiffs.**

Plaintiffs have been employed by Defendant at five Bar Louie locations throughout five states

---

10     Exhibit 2, Screenshot of Backstage Video - Admin Toolbox; *see also* Admin Toolbox, https://vimeo.com/194933717 (last visited June 28, 2017); *see also* Exhibit 5, Bar Louie's Franchise Disclosure Document at pg. 8 (requiring general managers and assistant managers to undergo training program at Bar Louie's "training facility" or other location); *Id*. at pg. 21 (outlining training program topics).
11     Exhibit 1, Bar Louie Employee Handbook at pgs. 37-39.
12     *Id.* at pg. 32.
13     *Id.* at pgs. 15-16.
14     *See* Exhibit 9, Declaration of Alissa Tapia at ¶2 (Ms. Tapia worked at Bar Louie locations in Beavercreek, Ohio and San Antonio, Texas).

during the FLSA Period.[15]  As a result, every individual who has worked as a tipped employee at Bar Louie during the FLSA Period has been similarly affected by Defendant's standardized wage and hour policies.

## III.   NATURE OF THE CLAIMS.

### A.   <u>Defendant Pays Tipped Employees Less Than Full Minimum Wage.</u>

Defendant pays tipped employees less than the full statutory minimum hourly wage by taking advantage of the federal "tip credit" that is only available to employers who satisfy specific criteria.[16]  Defendant's use of the tip credit, however, has been unlawful, as they: (1) failed to provide tipped employees with proper notification of the tip credit;[17] (2) required tipped employees to perform a substantial amount of non-tip producing duties in excess of twenty percent of their shift;[18] and (3) perform duties unrelated to the tipped profession.[19]  *See Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice);

---

15      *See* Exhibits 6-12 at ¶2.
16      *Id.* at ¶3.  *See also,* 29 U.S.C. § 203(m).
17      *See* Exhibits 6-12 at ¶¶4-5.
18      *Id.* at ¶10.
19      *Id.* at ¶11.

*Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate."). Accordingly, Plaintiffs are entitled to the full minimum wage.

### 1. Defendant Failed to Provide Appropriate Notice of the Tip Credit Provisions of the FLSA.

In order for Defendant to utilize the tip credit, Defendant was required to provide tipped employees with the following information: (1) the amount of cash wage Bar Louie is paying tipped employees; (2) the additional amount claimed by Bar Louie as a tip credit which cannot exceed $5.12; (3) that the tip credit claimed by Bar Louie cannot exceed the amount of tips actually received by the tipped employee; (4) that all tips received by tipped employees are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.[20]

Employers bear the burden of showing that they have provided their employees with proper notice of the minimum wage laws. *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010). This can be accomplished, for example, by providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law. *See e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 WL

---

20    *See* Exhibit 13, Department of Labor Fact Sheet #15: Tipped Employees Under the FLSA.

4822199, at \*26 (S.D.N.Y. Sept. 10, 2013). "The language of the statute is clear. An employer is obliged to comply with the prerequisites of announcing its intention to take the tip credit[.]" *Pedigo* 722 F. Supp. 2d at 725 (quoting *Bernal v. Vankar Enter., Inc.,* 579 F.Supp.2d 804, 808 (W.D. Tex. Sept.30, 2008)). If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage. *Bernal*, 579 F. Supp. 2d at 809 ("An employer may not take tip credits against their minimum wage obligations 'with respect to any tipped employee unless such employee has been informed by the employer of the [tip credit] provisions.'") (quoting 29 U.S.C. § 203(m)); *Rousseau v. Frederick's Bistro, LTD*, No. 09 Civ. 651 (XR), 2010 WL 1425599, at \*2 (W.D. Tex. Apr. 7, 2010) (". . .if the requirements [of 203(m)] are not satisfied, the full minimum wage must be paid to the employee.").

In the instant matter, Defendant did not inform tipped employees of the provisions of section 203(m). Specifically, Defendant did not explain to tipped employees that they were being paid less than the full minimum wage because they were receiving tips, or that their tips would be used as a credit against the minimum wage that Bar Louie was required to pay them.[21] Moreover, Plaintiffs were never given, nor shown a copy, or a summary of any laws, rules, or regulations regarding the tip credit and minimum wages.[22] As a result, Defendant violated § 203(m) and will be unable to avail itself of the tip credit minimum wage rate.

### 2. Defendant Requires Tipped Employees To Spend A Substantial Amount Of Time Performing Non-Tip Producing "Side Work."

An employer may take the tip credit "only for hours worked by [an] employee in an occupation in which [he] qualifies as a 'tipped employee.'" 29 C.F.R. § 516.59(b). An employer

---

21  *See* Exhibits 6-12 at ¶4.
22  *Id.* at ¶5.

cannot utilize "203(m)'s tip credit for hours that [are not] tip-credit eligible." *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017). Sometimes, an "employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter[,]" 29 CFR § 531.56(e), or where a server spends part of her time performing non-tipped work. *Driver*, 2012 WL 3716482, at *21-22. The employee holding a dual job "is a tipped employee only with respect to his employment as a waiter" and can be paid the tip credit only for that period of time that he worked as a waiter. *Id.*; *see also Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

When a tipped employee is required to engage in activities that are not "directed toward producing tips," the temporal and qualitative nature of the tasks is crucial in determining whether such work may be paid at the tip credit rate. In that regard, if the employer requires a tipped employee to "*spend a substantial amount of time (in excess of 20 percent)* performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.*" Driver*, 2012 WL 3716482, at *2 (quoting and citing *U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e)* (Rev. 563) (Dec. 9, 1988) (emphasis in original) (available at http://www.dol.gov)); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011)("The regulation places a temporal limit on the amount of related nontipped work an employee can do and still be considered to be performing a tipped occupation. The DOL has used a twenty percent threshold to delineate the line between substantial and nonsubstantial work … ").

Where, as here, the duties in question are "unrelated" to the tip producing work, the time spent on these duties can never be paid at the tip credit minimum wage, irrespective of the amount

of time that the server spends doing the work. *See Id.* ("the tip credit may not be taken for time spent in duties unrelated to the tipped occupation"); *see also*, *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) ("But of course if the tipped employees also perform non-tipped duties (provided those duties are unrelated to their tipped duties—an important qualification, as we will see), such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."). Examples of duties that are unrelated to tipped work include silver polishing, cleaning bathrooms, preparing food, laying tables, cleaning up, and preparing the restaurant for business. *Driver*, 2012 WL 3716482, at *21-22 (*citing Dole v. Bishop*, 740 F. Supp. 1221, 1228 (S.D. Miss. 1990)).

An employer must keep track of employees' time spent performing "unrelated" tasks and time spent on related tasks that constitute general preparation work or maintenance, to ensure proper compliance with the minimum wage. *Driver*, 2012 WL 3716482, at *27 n. 13; 29 C.F.R. §516.28(a); *Fast*, 638 F.3d at 882 ("If [Employer] did not maintain sufficient records from which the employees can differentiate between when they performed tipped duties and when they performed related but nontip-producing duties within the meaning of the dual jobs regulation, then the employees can use the relaxed *Mt. Clemens* standard by produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.")

Bar Louie requires employees to perform a substantial amount of non-tipped "side work" at the start and end of their shifts.[23] As a result of this practice, tipped employees spend in excess of twenty percent of their time at work engaged in a non-tipped capacity.[24] Such "side work" duties are similar across the brand and include, but are not limited to: (1) cleaning the bathroom;

---

23  *See* Exhibits 6-12 at ¶¶6-7.
24  *Id.* at ¶10.

(2) cleaning out coolers; (3) cleaning shelves; (4) washing dishes; (5) polishing brass; (6) cleaning table legs; (7) dusting; (8) wiping down liquor bottles; (9) mopping; (10) cleaning bar mats; (11) cleaning beer wells; (12) cutting fruit; (13) making simple syrup; (14) stocking liquor and wine; (15) sanitizing glasses; and (16) wiping down the bar.[25]

The "side work" duties performed by tipped employees are typically not specific to a particular customer or table and are often performed in mass quantities for the entire shift or future shift.[26] Moreover, many of the duties performed by tipped employees (for example, sweeping, mopping, taking out trash, dusting, and cleaning bathrooms) are clearly unrelated to the tipped profession and thus, no tip credit can be taken when these duties are performed, regardless of the actual amount of time spent performing such duties. *See Driver*, 739 F.3d at 1075.

Furthermore, despite maintaining a time keeping system in which multiple job codes could be tracked, Defendant did not ask tipped employees to keep track of the time they spent performing "side work."[27]

## ARGUMENT

## I. CONDITIONAL CERTIFICATION OF THE NATIONWIDE FLSA COLLECTIVE IS APPROPRIATE HERE.

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Unlike a class action pursuant to Fed. R. Civ. P. 23, an employee in a collective action brought under FLSA § 216(b) is not a class member until he or she affirmatively opts-in to the collective action. 29 U.S.C. § 216(b). Thus, until similarly situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis.

---

25      *See* Exhibits 6-12 at ¶11.
26      *Id.* at ¶12.
27      *Id.* at ¶13.

**A.      The Two-Step Certification Process For FLSA Collective Actions**

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *See e.g.*, *Robinson v. RWLS, LLC*, No. 16 Civ. 00201 (OLG)(JWP), 2017 WL 1535073, at *1 (W.D. Tex. Jan. 11, 2017) (Primomo, J); *Lemmers v. Gary Pools, Inc.*, No. 15 Civ. 00828 (OLG), 2016 WL 7508075, at *1 (W.D. Tex. May 24, 2016) (Garcia, J); *Keppard v. C.C. Forbes, LLC*, No. 15 Civ. 625 (OLG), 2016 WL 6075460, at *1 (W.D. Tex. Feb. 29, 2016) (Garcia, J).

In the first stage, called the "notice stage," the Court must initially determine whether notice of the action should be sent to potential class members. *Id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). "This determination is based solely on the pleadings and affidavits; the standard used is fairly lenient and typically results in conditional certification of a representative class." *Lemmers* 2016 WL 7508075, at *1 (internal citation and quotation omitted); *Robinson*, 2017 WL 1535073, at *2 ("To make this determination, the Court looks only to the pleadings and affidavits") (citation omitted). At the notice stage courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan that violates the FLSA. *Scherrer*, 2008 WL 7003809, at *2. At the second (decertification) stage, the Court re-examines the class after notice, time for opting-in, and discovery have taken place. This second inquiry is subject to a more stringent inquiry. *Pedigo,* 666 F. Supp. 2d at 697.

**B.      Plaintiffs Have Made The Required Showing That All Tipped Employees Are Similarly Situated.**

At the notice stage, the plaintiff bears the burden of showing that a similarly situated group of potential plaintiffs exists. *Id.* at 698. This burden is very low and has been described as "fairly lenient." *Mooney*, 54 F.3d at 1214. The remedial nature of the FLSA, specifically § 216, militates strongly in favor of allowing cases to proceed collectively. *Pedigo*, 666 F. Supp. 2d at 698.

Therefore, the plaintiffs' positions need not be identical, but only similar in terms of job requirements and payment provisions. *Id.* "[T]he standard for determining whether the potential class of plaintiffs is 'similarly situated' is a lenient one and, generally, the request for conditional certification is granted." *Robinson*, 2017 WL 1535073, at *2 (citing *Mooney*, 54 F.3d at 1214).

Here, Plaintiffs have easily met their minimal initial stage burden. Plaintiffs have made a strong preliminary showing, through their well-plead First Amended Complaint and declarations that Defendant subjected Plaintiffs and all other tipped employees at Bar Louie to nationwide compensation policies, and that these policies violated the FLSA. Specifically, having worked in several Bar Louie locations (five states), Plaintiffs' evidence demonstrates that tipped employees at Bar Louie received the same hourly wages (the tipped minimum wage rate), and were subjected to uniform corporate guidelines, "side work" programs, and time keeping procedures.[28]

Moreover, Plaintiffs need not show the existence of a facially unlawful formal policy in order to meet their burden. Rather, Plaintiffs' evidence of a "*de facto*" policy, which in practice resulted in a pattern of FLSA violations, will suffice. *See Chhab*, 2013 WL 5308004, at *10 (granting nationwide certification on plaintiffs' twenty percent claim despite no formal written side work policy prior to 2011).

In a case involving nearly identical facts and claims, the court in *Flood v. Carlson Restaurants Inc.*, granted plaintiffs' motion for conditional certification of a class of tipped employees employed at defendants' T.G.I. Friday's restaurants nationwide. There, the court granted certification of plaintiffs' minimum wage and overtime allegations. Specifically, the plaintiffs there alleged that defendants violated the FLSA when they required tipped employees to spend a more than twenty percent of their shift engaged in non-tipped side work and failed to

---

[28]    *See* Exhibits 6-12 at Section III ¶¶14-18.

provide proper notice of the tip credit. *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436, at \*2-6 (S.D.N.Y. Jan. 20, 2015). Moreover, in finding the *Flood* plaintiffs similarly situated, the court relied on evidence that the side work duties performed at defendants' nationwide restaurants were similar, that defendants' side work practices resulted in an alleged pattern of FLSA violations, and that these violations occurred as a result of defendants' failure to monitor the time tipped employees spent performing non-tipped side work. *See also, Denney v. Lester's, LLC,* No. 12 Civ. 377 (JCH), 2012 WL 3854466, at \*3 (E.D. Mo. Sept. 5, 2012) (granting conditional certification on 20% claim); *Walter v. Buffets Inc.*, No. 13 Civ. 02995 (JMC), 2015 WL 3903382, at \*3 (D.S.C. June 25, 2015) (same).

Similarly, declarations provided by the Plaintiffs here evidence that tipped employees performed substantially similar "side work" duties regardless of the Bar Louie location that they worked.[29] As a result of Defendant's "side work" practices, Plaintiffs and other tipped employees spent more than twenty percent of their shift engaged in non-tipped work in violation of the FLSA.[30] Moreover, Bar Louie failed to monitor or record the amount of time tipped employees were engaged in non-tipped work despite maintaining the ability to do so.[31]

Also analogous to the case at bar is the *Fast v. Applebee's Intern., Inc.* matter. There, the court denied the defendants' motion to decertify a nationwide class of "servers and bartenders at 'corporate' restaurants ... who were/are directed or permitted to perform duties that would not generate tips such as general maintenance and preparatory work in excess of twenty percent (20%) of their shift without paying them at least minimum wage for such work." *Fast v. Applebee's Intern., Inc.*, No. 06 Civ. 4146 (NKL), 2009 WL 2391921, at \*1 (W.D.Mo. Aug. 3, 2009). In so

---

29      *See* Exhibits 6-12 at ¶11, and at Section III ¶¶14-18.
30      *Id.* at ¶10.
31      *Id.* at ¶13.

ruling, the court specifically stated that "Plaintiffs have shown that they are similarly situated with respect to their job requirements and pay provisions," as:

> "First, they have demonstrated that their claims involve substantially similar factual and employment settings, despite minor variances restaurant-to-restaurant. Applebee's applied national uniform policies and practices relevant to its servers and bartenders, including policies concerning the tip credit, manager bonuses for productivity, complaint resolution, and job descriptions. Plaintiffs performed substantially the same job tasks under national guidelines. Plaintiffs were subject to similar pay structures … Second, liability in this case turns on class-wide claims and defenses, most notably whether Applebee's improperly took the tip credit for general maintenance and preparation work done by the class … Third, fairness and other procedural considerations weigh in favor of maintaining class certification."

*Id*. In fact, the Eighth Circuit later reaffirmed the district court's decision denying defendants' motion for summary judgment with respect to the twenty percent claim. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir. 2011) *cert. denied,* 132 S. Ct. 1094 (U.S. 2012). Again, Plaintiffs here were all compensated at the tip credit minimum wage rate and all performed substantially similar non-tipped "side work" duties for periods of time that violated the FLSA. Thus, the weight of evidence supports a finding that Plaintiffs and tipped employees nationwide are similarly situated.

### 3.     A Nationwide Collective Action Is Appropriate

Through Defendant's centralized control over individual Bar Louie locations, the same policies and practices affect all tipped employees nationwide. Tipped employees at Bar Louie all receive documentation from Defendant which outline the terms, conditions and policies they must follow. Moreover, through "Backstage" Defendant can implement standardized policies and procedures at restaurants nationwide.

Most importantly, Plaintiffs' declarations describe nearly identical violations of the FLSA. Specifically, Plaintiffs have identified that they spent more than twenty percent of their time at work engaged in similar non-tipped side work at Bar Louie and that they were not informed of the tip credit which Defendant enjoys as an operational overhead windfall. Thus, Plaintiffs' evidence is probative that Defendant applied uniform compensation policies to all Bar Louie restaurants. Courts in this circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work when plaintiffs demonstrate they are subject to the same unlawful policies or plans. *See Coker v. Select Energy Serv., LLC, Doc.* No. 47 Civ. A. 3:15-cv-00136 (S.D. Tex. June 1, 2016) (certifying a nationwide FLSA class based on one declaration from a plaintiff employed at only one location)(Hanks, J.); *See also Flood*, 2015 WL 260436, at *2 (authorizing nationwide notice to over 42,000 employees in case alleging off-the-clock work and excessive non-tipped "side work" where the plaintiffs submitted only six declarations and presented evidence of centralized control over the restaurants); *Chhab*, 2013 WL 5308004 (conditional certification granted to servers and bartenders across 47 Capital Grille restaurants nationwide).

## II.     A THREE YEAR NOTICE PERIOD IS APPROPRIATE.

If a violation of the FLSA is not willful, the limitations period for FLSA claims is limited to two years, while if the violation is willful, the limitations period is three years. 29 U.S.C. § 255(a). An FLSA violation is willful if the employer " 'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.' " *Singer v. City of Waco, Tex.,* 324 F.3d 813, 821 (5thCir. 2003) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988)). The plaintiff bears the burden of showing a willful FLSA violation. *Id.; see also Samson v. Apollo Res., Inc.,*

242 F.3d 629, 636 (5th Cir.2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim.").

According to precedent set by Texas courts, "where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period." *Walker v. Honghua America, LLC,* 870 F.Supp.2d 462, 472 (S.D. Tex. 2012) (citing *Albanil v. Coast 2 Coast, Inc.,* 2008 WL 4937565, at *8 (S.D. Tex. Nov. 17, 2008)). "FLSA plaintiffs are not required to prove willfulness prior to discovery." *Id.*

Here in this case, Plaintiffs have alleged a willful violation. *See* Docket No. 16 at ¶¶ 41, 78 and 79. Even absent this precedent, Plaintiffs have alleged sufficient facts in their complaint to establish their entitlement to a three year notice period based on the willful conduct of Defendant. *Id.* At this early stage, Plaintiffs have certainly alleged sufficient information for this Court to deem a three year notice period appropriate. The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act. *See* 29 U.S.C. § 255(a). While Defendant will argue that that their violations were not willful and that notice covering a two-year period is appropriate, such argument is without merit at this stage where the willfulness of a defendant's violations of the FLSA is pled by a plaintiff. *See e.g.*, *Fonseca,* 2014 WL 1487279, at *4 ("[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'")(citation omitted); *Guzelgurgenli v. Prime Time Specials Inc.*, No. 11 Civ. 4549 (ADS)(WDW), 2012 WL 3264314, at *14 (E.D.N.Y. Aug. 8, 2012) ("Where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage.").

## III. COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE.

Attached as Exhibit 14 is Plaintiffs' proposed Judicial Notice. Additionally, attached as Exhibit 15 is Plaintiffs' proposed Reminder Letter. By notifying potential plaintiffs that their right to join this lawsuit is limited, the Reminder Letter promotes the FLSA's broad remedial purpose, as well as the goal of court-authorized notice, by promoting efficient case management through notification and joinder of claims. *See e.g.*, *Page v. Crescent Directional Drilling, L.P.*, No. 15 Civ. 93 (RP), 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015); *Gronefeld v. Integrated Prod. Services, Inc.*, No. 16 Civ. 55, 2016 WL 8673851, at *6 (W.D. Tex. Apr. 26, 2016).

Plaintiffs request that Defendant be ordered to produce within ten (10) days of the granting of this Motion in an electronic format such as an excel spreadsheet, the names, all known addresses, all phone numbers (home, mobile, etc.), all known email addresses (work and personal), social security numbers, dates of employment, and locations employed for all the class members employed from three years prior to the filing of this lawsuit to the present.[32] Such information

---

[32]    *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012); *See Eggelston v. Sawyer Sportsbar, Inc.,* 2010 WL 2639897, at *4 (S.D. Tex. June 28, 2010) (order conditionally certifying class of bartenders and granting expedited discovery of telephone numbers and emails); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, at *6 (S.D. Tex. Oct. 11, 2012) ("must provide … e-mail addresses, telephone numbers …of the members of the collective action class."); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("ORDERS the Defendants to provide…names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses, if available, of the potential class members."); *Beall v. Tyler Technologies, Inc.*, 2009 WL 1766141, at *4 (E.D. Tex. June 23, 2009) ("orders defendants to provide …names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses ..."); *Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report and recommendation adopted, 2012 WL 6743559, at *10 (S.D. Tex. Dec. 28, 2012) ("disclosure to Plaintiffs' counsel of employees' … phone numbers, and email addresses … is not unduly invasive."); *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("orders that Defendant produce …phone numbers, and e-mail addresses…"); *Davis v. Mostyn Law Firm, P.C.*, 2012 WL 163941, at *11 (S.D. Tex. Jan. 19, 2012) ("shall provide …all email addresses (personal and work) for all class members as defined above."); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 473 (S.D. Tex. 2012) ("Defendant to produce, … work email addresses …"); *Bullard v. Camin Cargo*, Civil Action No. 4:13-cv-00027, Doc. 27 at page 4 (S.D. Tex. Aug. 9, 2013) (granting class notice via email and requiring production of email addresses and phone numbers); *See, Jones*, 2012 WL 6928101, at *5 (rep. and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013)); *Eggleston v. Sawyer Sportsbar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897, at *4 (S.D. Tex 2010) (Court granted class notice via email); *Watson, et al. v. Konica Minolta Bus. Solutions USA, Inc.*, No. Civ. A. H-10-986, at page 21 (S.D. Tex. Nov. 22, 2010); *Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (court granted class notice via email and later compelled the employer to produce all email addresses, both personal and work).

allows Plaintiffs to confirm current addresses and/or to locate those persons who may have moved from their last known addresses. Defendant and its counsel have this information and are allowed to use it. Plaintiffs should be afforded the same right.

Further, Plaintiffs propose that the notice and consent forms be mailed by first class mail, electronic mail, and via text message within twenty (20) days from the day the Court approves notice to the potential class members.[33] Plaintiffs' counsel will oversee the mailing (via regular mail, electronic mail, and text) of such notices and pay the up-front charges for same (postage, copying, etc.). Further, Plaintiffs' counsel requests that it be permitted to hire, if necessary, a third party class action administration company to conduct the actual mailing, emailing and text messaging of the notice and forms if it deems appropriate.

The benefits of sending notice in a conditional certification case "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, (1989). The point of sending out Notice to Class Members is for them to receive it, become aware of the pending litigation, and make a decision regarding joining the case.

---

[33]     *See Phelps v. MC Communications*, Inc., No. 2:11-CV-00423-PMP-LRL, 2011 WL 3298414, 6 (D. Nev. Aug. 1, 2011) (The Court will permit Plaintiffs to email the notice…; *Goudie v. Satellite Communications, Inc.*,  No. 08-CV-507-AC, 2008 WL 4628394, at *9 (D. Or. Oct. 14, 2008)("The court concludes that the names, addresses, phone numbers, and e-mail addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action."); *Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (Court granted class notice via email.); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D. N.Y. Jan. 17, 2012); *White v. Integrated Elec. Technologies, Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) ("Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members."); *Butler*, 876 F. Supp. 2d at, 575 ("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email..."); *Pippins v. KPMG LLP,* 2012 WL 19379, at *14 (S.D. N.Y. January 3, 2012) ("[G]iven the reality of communications today ... the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.,* 2011 WL 3235628, at *3 n. 3 (E.D.N.Y. July 27, 2011) ("[T]he Court sees email as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC*, 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012) ("Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail..."); *Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at * 8 (N.D. Cal. Dec. 19, 2011) (Notice shall be "disseminated via electronic mail.."); *Altier v. Worley Catastrophe Response, LLC,* 2012 WL 161824, at *27 (E.D. La. Jan.18, 2012); *Nobles v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 3794021, at *10 (W.D. Mo. Aug.25, 2011).

Sending email notice only increases the chance of the class members receiving and reading the notice. The convenience of technology dictated that the federal court system adopt an electronic case filing system. Likewise, email notice is appropriate precisely because it is an affordable, instantaneous, and reliable way for important legal issues to be communicated to large groups of people. For these reasons, email notice has become a common form of notification in FLSA cases. *See Phelps v. MC Communications, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011). "With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'" *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012). "Email is an efficient, reasonable, and low-cost supplemental form of notice." *Phelps v. MC Communications, Inc.,* 2011 WL 3298414 *6 (D. Nev. Aug. 1, 2011).

Further, Plaintiffs propose that class members be allowed to execute their consent form electronically via a service called Right Signature,[34] which tracks the IP address and email address from which the form is being accessed and executed. This service allows class members to sign their consent forms electronically[35] by clicking on a link in an encrypted email designated only for that user, which in turn takes them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and address.[36] Users are instantaneously provided with a PDF copy of the form they signed and a copy of the form is made accessible to Plaintiffs' counsel who

---

[34]    *See* Exhibit 16 - Example of a Right Signature executed consent form with electronic authentication.
[35]    In Texas, under the Tex. Bus. & Com. Code Ann. § 322 *et. al.* (Vernon), the law recognizes the validity of electronic signatures. Specifically, it states that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Tex. Bus. & Com. Code Ann. § 322.007 (Vernon). Further, it proceeds to state that "if a law requires a signature, an electronic signature satisfies the law." In this instance, the FLSA requires a plaintiff to file a written consent form in order to join the lawsuit. *See* 29 U.S.C.A. § 216 (West) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *See also*, 29 U.S.C.A. § 256 (West). Consequently, Texas law allows for the use of electronic signatures to be used to execute FLSA consent forms.
[36]    *See* Exhibit 16 - Example of a Right Signature executed consent form with electronic authentication.

will, in turn, file same with the Court, just as if such document had been received via regular mail. This would merely be an additional option for signing the consent form.

Other courts have approved the use of online electronic signature opt-in forms.[37] *See also White v. Integrated Elec. Tech., Inc.*, 2013 WL 2903070 (E.D. La. June 13, 2013); *Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012). Both *Jones* and *White* permitted this method of response over the objection of the Defendant. In addition, the Western District of Pennsylvania noted that this method of joining a collective action is appropriate. *See Bland v. Calfrac Well Servs. Corp.*, 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013).

With the goal of timely notice in mind, like emails, text messaging has also become an increasingly effective method of effectuating notice in FLSA Collective Actions. This method of distribution is routinely approved by courts and should be approved here. *See e.g.*, *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (listing cases permitting text message notice); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (permitting text message notice where the nature of the employer's business facilitated a high turnover rate among employees). Therefore, Plaintiffs request that the Court allow notice to be sent to the putative Class Members via text message.

Finally, Plaintiffs request that class members be given 60 days to opt into the lawsuit. Such amount of time is reasonable, and will not delay the proceedings. Further, Plaintiffs request that a second notice (the "Reminder Notice" attached as Exhibit 15) go out thirty days (30) prior to the

---

[37] *Kelly v. Bank of Am., N.A.,* 2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011) ("[C]lass members may submit a Consent to Join form for this case by electronically providing their name, date of birth, and last four digits of their social security number."); *Jones*, 2012 WL 6928101, at *5 ("Class members should be provided the option of executing their consent forms online via an electronic signature service.").

deadline to opt-in, but only to those individuals who have not opted in to the lawsuit. Plaintiffs also request that the Court order Defendant to post the Notice and Consent forms at all of its restaurants for 60 days in an open and obvious location, such as in an employee breakroom. In addition, Plaintiffs request an order that states: "Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former tipped employee about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Defendant shall so instruct all of its managers. This order shall not restrict Defendant from discussing with any current employee matters that arise in the normal course of business."

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; and (2) order Defendant to provide the names, last known addresses, social security numbers, telephone numbers, e-mail addresses, work locations, and dates of employment of all putative class members.

Dated: Thursday, July 06, 2017.

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP

By:     */s/ Ricardo J. Prieto*_____
        Mark G. Lazarz
        Texas Bar No. 12069100
        mlazarz@eeoc.net
        Ricardo J. Prieto
        Texas Bar No. 24062947
        rprieto@eeoc.net
        11 Greenway Plaza, Suite 1515
        Houston, Texas 77046
        Telephone: (713) 621-2277
        Facsimile: (713) 621-0993

        FITAPELLI & SCHAFFER, LLP
        Joseph A. Fitapelli, admitted *pro hac vice*
        Frank J. Mazzaferro, admitted *pro hac vice*
        28 Liberty Street, 30th Floor
        New York, New York 10005
        Telephone: (212) 300-0375
        Facsimile: (212) 481-1333
        ATTORNEYS FOR PLAINTIFF AND
        CLASS MEMBERS

## CERTIFICATE OF CONFERENCE

I have conferred with opposing counsel regarding the relief sought in this motion.  Defendant is opposed.

*/s/ Ricardo J. Prieto*_____
Ricardo J. Prieto

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2017, a true and correct copy of the foregoing document was electronically filed.  Notice of this filing will be served on all parties by operation of the Court's Electronic Filing System.

*/s/ Ricardo J. Prieto*_____
Ricardo J. Prieto